Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal. Bar No. 333540)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON CROWDER, JOEL LUMIAN, ROBERT SMITH, AMANDA GOLDWASSER, and MARK ELKINS, each individually and on behalf of all others similarly situated, | Case No. 5:23-cv-02331-NC |
| *Plaintiffs*, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF LAW IN SUPPORT THEREOF** |
| v. | Hon. Nathanael M. Cousins |
| THE SHADE STORE, LLC, | **(REDACTED VERSION)** |
| *Defendant*. | |

**Table of Contents**

I. Introduction. ........................................................................................................................ 1

II. Background. ......................................................................................................................... 1

    A. Fake discounts are illegal. ...................................................................................... 1

    B. The Shade Store's fake discounts. .......................................................................... 3

    C. Plaintiffs' claims. ................................................................................................... 4

III. The proposed class and subclasses. ..................................................................................... 4

IV. The proposed class and subclasses satisfy Rule 23(a). ........................................................ 5

V. Because Rule 23(b)(3) is satisfied, the Court should certify a damages class. ................... 7

    A. Common issues predominate liability. .................................................................... 7

        1. All class members were shown the same deceptive statements, in the same format. ........................................................................................ 8

        2. Liability for the deception-based claims can be established classwide. ................. 9

        3. Liability for the FAL section 17501 claim can be established classwide. ............ 12

        4. Liability for the contract and warranty claims can be established classwide. ...................................................................................... 12

        5. Liability for the quasi-contract claim can be established classwide. .................... 13

    B. Common questions predominate materiality and reliance. ...................................... 13

    C. Common questions predominate damages. ............................................................. 15

        1. Price premium damages model (all claims). ...................................................... 16

        2. Expectation damages (legal claims). ................................................................. 19

        3. Rescission and restitution (equitable claims only). ............................................ 21

    D. A class action is a superior way to resolve this controversy. .................................. 23

VI. Because Rule 23(b)(2) is satisfied, the Court should certify an injunction class, too. ................. 24

VIII. Conclusion. ...................................................................................................................... 24

**Table of Authorities**

**Cases**

*Alcantar v. Hobart Serv.*,
800 F.3d 1047 (9th Cir. 2015) ......................................................................................... 6

*All. Mortg. Co. v. Rothwell*,
10 Cal. 4th 1226 (Cal.4th 1995) ..................................................................................... 17

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......................................................................................................... 7

*Astiana .v Kashi Co.*,
291 F.R.D. 493 (S.D. Cal. 2013) ..................................................................................... 13

*B.K. v. Snyder*,
922 F.3d 957 (9th Cir. 2019) ........................................................................................... 24

*Bally v. State Farm Life Ins. Co.*,
335 F.R.D. 288 (N.D. Cal. 2020) ................................................................................. 5, 15

*Banks v. R.C. Bigelow, Inc.*,
2024 U.S. Dist. LEXIS 119458 (C.D. Cal. July 8, 2024) .......................................... 15, 19

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007) ........................................................................................... 24

*Bradach v. Pharmavite, LLC*,
735 F. App'x 251 (9th Cir. 2018) ..................................................................................... 14

*Branca v. Nordstrom, Inc.*,
2015 U.S. Dist. LEXIS 176888 (S.D. Cal. Oct. 9, 2015) .................................................. 2

*Brazil v. Dell Inc.*,
No. 5:07-cv-01700-RMW (N.D. Cal. Dec. 21, 2010) ...................................................... 14

*Broomfield v. Craft Brew Alliance, Inc.*,
2018 U.S. Dist. LEXIS 177812 (N.D. Cal. Sept. 25, 2018) ............................................. 14

*Brown v. Hain Celestial Grp., Inc.*,
2015 U.S. Dist. LEXIS 67912 (N.D. Cal. May 26, 2015) ................................................ 15

*Bush v. Rust-Oleum Corp.*,
2024 U.S. Dist. LEXIS 20131 (N.D. Cal. Feb. 5, 2024) .................................................. 24

*Cabrera v. Bayer Healthcare LLC*,
2024 U.S. Dist. LEXIS 31709 (C.D. Cal. Feb. 23, 2024) ................................................ 13

*Calderon v. Kate Spade & Co., LLC,*
   2020 U.S. Dist. LEXIS 38510 (S.D. Cal. Mar. 5, 2020) ................................................................. 22

*Capaci v. Sports Rsch. Corp.,*
   2022 U.S. Dist. LEXIS 72856 (C.D. Cal. Apr. 14, 2022) ................................................................ 7

*Chapman v. Skype Inc.,*
   220 Cal. App. 4th 217 (Cal. Ct. App. 2013) ................................................................................ 20

*Clevenger v. Welch Foods Inc.,*
   342 F.R.D. 446 (C.D. Cal. Sept. 13, 2022) .................................................................................. 10

*Comcast Corp. v. Behrend,*
   569 U.S. 27 (2013) ............................................................................... 15, 16, 18, 19, 21, 23

*Datta v. Asset Recovery Sols., LLC,*
   2016 U.S. Dist. LEXIS 36446 (N.D. Cal. Mar. 18, 2016) ............................................................. 6

*Dickey v. Advanced Micro Devices, Inc.,*
   2019 U.S. Dist. LEXIS 8740 (N.D. Cal. Jan. 17, 2019) ........................................................ 5, 23

*DZ Rsrv. v. Meta Platforms, Inc.,*
   96 F.4th 1223 (9th Cir. 2024) ...................................................................................................... 14

*Ellis v. Costco Wholesale Corp.,*
   657 F.3d 970 (9th Cir. 2011) .......................................................................................................... 7

*Ewert v. eBay, Inc.,*
   2010 U.S. Dist. LEXIS 108838 (N.D. Cal. Sept. 30, 2010) ........................................................ 12

*Gold v. Lumber Liquidators, Inc.,*
   323 F.R.D. 280 (N.D. Cal. 2017) ........................................................................................ 5, 9, 10

*Golikov v. Walmart Inc.,*
   2025 U.S. Dist. LEXIS 35739 (C.D. Cal. Feb. 27, 2025) ............................................................ 16

*Grace v. Apple, Inc.,*
   328 F.R.D. 320 (N.D. Cal. 2018) ................................................................................................. 16

*Gunaratna v. Dennis Gross Cosmetology LLC,*
   2023 U.S. Dist. LEXIS 60796 (C.D. Cal. Apr. 4, 2023) .............................................................. 18

*Hadley v. Kellogg Sales Co.,*
   324 F. Supp. 3d 1084 (N.D. Cal. 2018) ............................................................................. 9, 14, 18

*Hansen v. Newegg.com Americas, Inc.,*
   25 Cal. App. 5th 714 (Cal. Ct. App. 2018) .................................................................................. 15

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013) ............................................................................................... 15

*In re Conagra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014).............................................................................................. 24

*In re Pepperdine Univ. Tuition & Fees Covid-19 Refund Litig.*,
2023 U.S. Dist. LEXIS 178028 (C.D. Cal. Sept. 26, 2023) ..................................................... 13

*In re Pfa Ins. Mktg. Litig.*,
2021 U.S. Dist. LEXIS 244526 (N.D. Cal. Nov. 3, 2021) ........................................................ 23

*In re Scotts EZ Seed Litig.*,
304 F.R.D. 397 (S.D.N.Y. Jan. 26, 2015)................................................................................. 19

*Jacobs v. La-Z-Boy Inc.*,
2024 U.S. Dist. LEXIS 208219 (C.D. Cal. Nov. 14, 2024)........................................................ 9

*Just Film, Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017) ............................................................................................... 15

*Knapp v. Art.com, Inc.*,
2016 U.S. Dist. LEXIS 78128 (N.D. Cal. June 15, 2016) .......................................................... 2

*Krommenhock v. Post Foods, LLC*,
334 F.R.D. 552 (N.D. Cal. 2020)..................................................................................... 14, 15

*Kumandan v. Google LLC*,
2022 U.S. Dist. LEXIS 247427 (N.D. Cal. Dec. 16, 2022)...................................................... 17

*Kumar v. Salov N. Am. Corp.*,
2016 U.S. Dist. LEXIS 92374 (N.D. Cal. July 15, 2016)...................................................... 9, 13

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (Cal. 2011)..................................................................................................... 21

*Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,
244 F.3d 1152 (9th Cir. 2001) .................................................................................................. 7

*Lytle v. Nutramax Labs., Inc.*,
114 F.4th 1011 (9th Cir. 2024) ..................................................................... 13, 15, 17, 18

*Makaeff v. Trump Univ., Ltd. Liab. Co.*,
309 F.R.D. 631 (S.D. Cal. 2015) ............................................................................................ 16

*McMorrow v. Mondelēz Int'l, Inc.*,
2021 U.S. Dist. LEXIS 42885 (S.D. Cal. Mar. 8, 2021) ........................................................ 16, 18, 19

*Mueller v. Puritan's Pride, Inc.*,
2021 U.S. Dist. LEXIS 226103 (N.D. Cal. Nov. 23, 2021) ............................................... 20

*Munning v. Gap, Inc.*,
2016 U.S. Dist. LEXIS 149886 (N.D. Cal. Oct. 28, 2016)........................................ 2, 9, 14

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ............................................................................................. 24

*Openwave Sys. v. Myriad Fr. S.A.S.*,
2011 U.S. Dist. LEXIS 69797 (N.D. Cal. June 29, 2011) .................................................. 12

*Prescott v. Reckitt Benckiser LLC*,
2022 U.S. Dist. LEXIS 135329 (N.D. Cal. July 14, 2022) ................................................. 16

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) ............................................................................................. 16

*Real v. Y.M.I. Jeanswear, Inc.*,
2017 U.S. Dist. LEXIS 237643 (C.D. Cal. Sept. 1, 2017) .................................................... 2

*Romero v. Cal. Rehab. Inst., LLC*,
2022 U.S. Dist. LEXIS 254442 (C.D. Cal. Jan. 24, 2022) ................................................... 7

*Safransky v. Fossil Grp., Inc.*,
2018 U.S. Dist. LEXIS 60946 (S.D. Cal. Apr. 9, 2018)........................................................ 2

*Sharpe v. Puritan's Pride, Inc.*,
466 F. Supp. 3d 1066 (N.D. Cal. 2020) ............................................................................. 20

*Simon v. Carter's, Inc.*,
2020 U.S. Dist. LEXIS 265097 (N.D. Cal. July 13, 2020)................................................. 22

*Spann v. J.C. Penney Corp.*,
2015 U.S. Dist. LEXIS 42545 (C.D. Cal. Mar. 23, 2015)................................................. 21

*Spann v. J.C. Penney Corp.*,
307 F.R.D. 508 (C.D. Cal. 2015)........................................................ 6, 10, 12, 14, 17, 21

*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 (9th Cir. 2011) ........................................................................................... 14

*Swartz v. Dave's Killer Bread, Inc.*,
2024 U.S. Dist. LEXIS 198028 (N.D. Cal. Sept. 20, 2024) .............................................. 19

*Vaccarino v. Midland Nat'l Life Ins. Co.*,
2013 U.S. Dist. LEXIS 88612 (C.D. Cal. June 17, 2013) ................................................. 12

*Vizcarra v. Michaels Stores*,
710 F. Supp. 3d 718 (N.D. Cal. 2024) ............................................................................ 2, 9

*Vizcarra v. Unilever United States*,
339 F.R.D. 530 (N.D. Cal. 2021) ..................................................................................... 18

*Wiener v. Dannon Co.*,
255 F.R.D. 658 (C.D. Cal. 2009) ..................................................................................... 17

*Wolph v. Acer Am. Corp.*,
272 F.R.D. 477 (N.D. Cal. 2011) ....................................................................................... 7

**Statutes**

Cal. Bus. & Prof. Code § 17200 .......................................................................................... 2

Cal. Bus. & Prof. Code § 17500 .......................................................................................... 2

Cal. Bus. & Prof. Code § 17501 .......................................................................................... 2

Cal. Civ. Code § 1770 ............................................................................................... 2, 4, 15

Cal. Civ. Code § 1780 ........................................................................................................ 20

**Regulations**

16 C.F.R. § 233.1(a) ............................................................................................................. 2

**Other Authorities**

Restatement (Second) of Contracts § 344 (1981) .............................................................. 20

## NOTICE OF MOTION AND MOTION

Please take notice that on March 24, 2025, Plaintiffs Sharon Crowder, Joel Lumian, Robert Smith, Amanda Goldwasser, and Mark Elkins will and hereby do move the Court to certify this case as a class action. Plaintiffs seek to certify a class and subclasses as defined in the memorandum of law. Plaintiffs also move for their appointment as class representatives and for the appointment of Dovel & Luner LLP as class counsel. The motion is based on the attached memorandum of law, and the declarations, exhibits, and expert reports submitted herewith.

## MEMORANDUM OF LAW

## I. Introduction.

The Shade Store sells custom window treatments such as shades, drapes, and blinds. For nearly four straight years, The Shade Store advertised promotions of at least 15%-20% off all its products. These purported promotions were prominently advertised across its website and were shown to all customers in a price quote or a shopping cart webpage before they placed an order. Customers were told that the regular price of a selected window treatment was, say, $500, but because of a 15% discount, they would pay only $425. But these advertised discounts were not discounts at all. A discount of at least 15-20% was always available, to every customer, at all times during the class period. As a result, the overwhelming majority of transaction during the class period—███████████████—received a discount at least ██ off The Shade Store's advertised regular prices. So customers who bought during The Shade Store's supposed sales did not really get a discount on their purchase. The supposed discount price they paid *was* the regular price that everyone else paid, too.

Plaintiffs Sharon Crowder, Joel Lumian, Robert Smith, Amanda Goldwasser, and Mark Elkins bring multiple claims on behalf of themselves and other California consumers who bought supposedly discounted window treatment products from The Shade Store. The proposed Class, and each proposed subclass, include thousands or tens of thousands of customers. The Shade Store made materially similar misrepresentations—that customers would be receiving "X%" off of a fictitious regular price—to all of class members, including Plaintiffs. Plaintiffs and their counsel have and will continue to adequately represent the proposed classes. And Plaintiffs propose several valid classwide damages models, and seek an injunction that would provide classwide relief against The Shade Store's future deceptive discount-and-price advertising. As a result, Plaintiffs' claims meet all the requirement for class certification. The Court should certify a Rule 23(b)(3) damages class and a Rule 23(b)(2) injunction class.

## II. Background.

### A. Fake discounts are illegal.

Consumers love to get a good deal. Expert Report of Bruce G. Silverman ("Silverman") ¶¶ 37, 53, 82. If consumers believe that they are getting a discount, they are more interested; they become more

likely to make a purchase, and willing to pay more for it. *Id.* ¶ 78; *id*. ¶¶ 54-55 (providing sample of research on this topic).

Because customers love discounts, companies have long used limited-time percent-off sales to boost their sales. *E.g.*, *id.* ¶¶ 56-58 (giving examples); 16 C.F.R. § 233.1(a) ("One of the most commonly used forms of bargain advertising is to offer as reduction from the advertiser's own former price for an article."). And some companies have taken advantage of customers' love for discounts by making up fake, inflated prices for their products and then offering fake discounts off those inflated prices.

California, however, has long prohibited fake discounts. California's Consumer Legal Remedies Act (CLRA) prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Cal. Civ. Code § 1770(a)(13). California's False Advertising Law (FAL) prohibits advertising any price "as a former price of any advertised thing" unless that price "was the prevailing market price" in the three months before the advertisement. Cal. Bus. & Prof. Code § 17501. And, because fake discounts are unfair and deceptive, they also run afoul of California's more general prohibitions on unfair and deceptive practices. Cal. Bus. & Prof. Code § 17500 (prohibiting "untrue or misleading" advertising); Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 (UCL) (prohibiting "unlawful, unfair or fraudulent" business practices including deceptive, untrue, or misleading advertising); *see, e.g.*, *Knapp v. Art.com, Inc*., 2016 U.S. Dist. LEXIS 78128, at *8-13 (N.D. Cal. June 15, 2016) (fake discounts violate FAL section 17501's specific prohibitions and also FAL section 17500's more general prohibition on untrue or misleading advertising); *Real v. Y.M.I. Jeanswear, Inc*., 2017 U.S. Dist. LEXIS 237643, at *15 (C.D. Cal. Sept. 1, 2017) (plaintiff's fake discount allegations stated claims under the FAL, CLRA, and UCL); *Branca v. Nordstrom, Inc.*, 2015 U.S. Dist. LEXIS 176888, at *26 (S.D. Cal. Oct. 9, 2015) (same); *Safransky v. Fossil Grp., Inc.*, 2018 U.S. Dist. LEXIS 60946, at *38 (S.D. Cal. Apr. 9, 2018) (alleged fake discount scheme violated multiple provisions of CLRA); *see also Munning v. Gap, Inc*., 2016 U.S. Dist. LEXIS 149886, at *23 (N.D. Cal. Oct. 28, 2016) (alleged fake discount scheme violated the UCL and FAL and breached contract and warranty); *Vizcarra v. Michaels Stores*, 710 F. Supp. 3d 718, 731 (N.D. Cal. 2024) (same).

**B.      The Shade Store's fake discounts.**

The Shade Store sells custom window treatment products like shades and blinds. Ex.[1] 1 ("Dominick") at 9:20-10:10.[2] The Shade Store advertises list prices for each of its products. It also advertises discounts off those list prices. But the discounts are not limited in time, or limited to certain products. They are always available on all products. *See id.* at 97:13-98:10 (discussing The Shade Store's publicly available discounts), 155:13-17 (discussing discounts made available to trade professionals such as interior designers); Declaration of Colin B. Weir ("Weir") at pp. 49-52 (summarizing transaction data). And, because of this, the overwhelming majority of The Shade Store's sales—███████████—are made at a significant discount from the list price. *See, e.g.*, Weir at pp. 49-52; Franzini Decl. ¶ 22 (throughout the class period, ███████████ of products were sold at a discount of at least ███ off the list price, and the average discount ranged from ███ to over ███). *Id.* As a result, the list prices that The Shade Store advertises are not true prices that people usually and customarily pay to buy their window treatments products. They are made up prices at which only a vanishingly small number of sales are made. Silverman ¶ 90. And, consumers who receive a supposed "discount" or buy during a supposed "sale" do not actually receive the discounts or savings that were advertised and promised to them. They simply pay full price. *Id.*

Consumers can buy window treatments from The Shade Store in two ways. Most purchases are made through The Shade Store's "design consultants." Dominick at 13:17-18. Design consultants are employees of The Shade Store who help consumers decide what products to buy, schedule window measurements, and so forth. Dominick at 14:17-15:2, 16:3-6. The remaining purchases are made directly by the consumer through The Shade Store's online store. *Id.* at 14:17-15:2. Whichever method is used, before completing their purchases, consumers are presented with an order summary. *Id.* at 79:24-80:8 ("All customers are given either a final quote or . . . are going to have a shopping cart page to review before they're able to order."); *id.* at 75:10-76:4 (quotes and shopping cart page contain the same

---

[1] All Exhibits are exhibits to the Declaration of Simon Franzini in Support of Plaintiffs' Motion for Class Certification unless specifically stated otherwise.

[2] Suzanne Dominick is The Shade Store's Chief Revenue Officer and testified as The Shade Store's 30(b)(6) witness in this matter. *Id.* at 6:5-20; 7:8-13.

information in the same format). The order summary summarizes all the important information about the products in the order (including the product type, color, size, and so forth). *Id.* at 80:19-23. It also includes a supposed list price for each product in strikethrough font; the supposed discount that applies to the order; and the supposed savings the consumer will enjoy because of the supposed discount. *Id.* at 80:24-82:5; *see* Exs. 2-6 (showing examples of order summaries, both in price quotes given to consumers who purchased through a design consultant and on checkout pages shown to consumers who bought directly from the web store).[3]

Throughout the class period, this same information was provided to each class member, in the same format, on the order summary they were shown to confirm their order details before they placed their order. Dominick at 79:24-80:18.

### C.    Plaintiffs' claims.

Plaintiffs are all customers who bought window treatment products from The Shade Store at a supposed discount. All were deceived by The Shade Store's fake discounts. They assert claims under section 1770(a)(13) of the CLRA and section 17501 of the FAL, both of which specifically prohibit fake discounting. Third Amended Complaint ("3AC") ¶¶ 95 (FAL § 17501), ¶ 111 (CLRA § 1770(a)(13)). They also assert claims under California's broader consumer protection statutes generally prohibiting unfair, false, and deceptive practices (each prong of the UCL, section 17500 of the FAL, and sections 1770(a)(5) and (a)(9) of the CLRA), which courts have repeatedly found to prohibit fake discounts. *See id.* ¶¶ 90-101 (FAL), ¶¶ 102-123 (CLRA), ¶¶ 124-140 (UCL). And they assert common law fraud, breach of contract, breach of warranty, and quasi-contract claims. *See id.* ¶¶ 141-151 (contract), ¶¶ 152-167 (express and implied warranty), ¶¶ 168-174 (quasi-contract), ¶¶ 175-184 (fraud).

## III.    The proposed class and subclasses.

Plaintiffs seek to certify the following class: All persons who, from May 21, 2020, until the date class notice is disseminated, purchased one or more The Shade Store products advertised at a discount

---

[3] Because The Shade Store's products are customizable, the actual list price depends on the height, width, material, and so forth. These list prices are determined by a formula and displayed to consumers after the product is configured. No matter what list price the formula yields, The Shade Store displays both the list price and a supposed discounted price to consumers in their order summary. *Id.*

from Defendant while in the State of California.

Plaintiffs also seek to certify the following subclasses:

- All Class Members who received a trade discount (the "trade discount" subclass).
- All Class Members who received a discount available to the general public (*i.e.*, any discount other than a trade discount) (the "public discount" subclass).

Excluded from the Class are persons who received a full refund on their purchase, or who purchased The Shade Store products in question for resale. Also excluded are any Judge or Magistrate presiding over this case, Defendant and its employees or affiliates, anyone who opts out, anyone who has previously released their claims, and Plaintiffs' and Defendant's counsel and experts.

## IV. The proposed class and subclasses satisfy Rule 23(a).

A certified class and subclasses must meet the requirements of Rule 23(a). Each requirement is met here.

### A. The proposed class and subclasses are sufficiently numerous.

Numerosity is satisfied "when the class comprises 40 or more members." *Dickey v. Advanced Micro Devices, Inc.*, 2019 U.S. Dist. LEXIS 8740, at *7 (N.D. Cal. Jan. 17, 2019) (internal quotations omitted). Here, the proposed class, and each subclass, comprises tens of thousands of people. Franzini Decl. ¶ 21 (The Shade Store's transactional data shows that there have been ███████████ by customers who received a discount during the class period, including ███████████ and ███████████ subject to a discount other than a trade discount). So numerosity is satisfied.

### B. There are many common questions of law and fact.

Rule 23(a)(2) requires "questions of law or fact common to the class.'" *Dickey*, 2019 U.S. Dist. LEXIS 8740, at *7. "Commonality is satisfied where claims . . . depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288, 301 (N.D. Cal. 2020) (quotes omitted). The required showing is "relatively minimal." *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 288 (N.D. Cal. 2017) (quotes omitted). A "single common question will do." *Alcantar v. Hobart Serv.*, 800 F.3d 1047,

1052 (9th Cir. 2015).

Here, as described in detail in the predominance section below, there are numerous issues of law and fact common to the proposed class and subclasses. *See* Section V. For example, each of Plaintiffs' claims turn on whether The Shade Store's advertised list prices were fake, made-up prices or were bona fide regular prices at which The Shade Store's products were usually sold. *See Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 518 (C.D. Cal. 2015) (ruling commonality satisfied in similar fake discount case due to numerous common questions of law and fact). So commonality is met here.

**C.      Plaintiffs are typical.**

"Typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability. This requirement is permissive and requires only that the representative's claims be reasonably coextensive with those of the absent class members; they need not be substantially identical." *Datta v. Asset Recovery Sols., LLC*, 2016 U.S. Dist. LEXIS 36446, at *8 (N.D. Cal. Mar. 18, 2016) (cleaned up).

Here, Plaintiffs and absent class members' claims all arise from the same course of events: The Shade Store's practice of advertising supposed list prices for its window treatment products; supposed discounts off those supposed list prices; and supposed savings from those supposed discounts. *See* Section II(A)-(B); Section V. Plaintiffs and absent class members will make the same legal arguments to prove The Shade Store's liability: that because The Shade Store's discounts are *always* available on all its products, and because The Shade Store's products are rarely, if ever, sold at the supposed list prices, The Shade Store's supposed list prices, supposed discounts, and supposed savings are fake. And that as a result, The Shade Store's advertising is deceptive, unfair, and illegal.

So, Plaintiffs' claims are reasonably coextensive with those of the proposed class. Plaintiffs are typical. *See Spann*, 307 F.R.D. at 519 (typicality was met in a fake discount case because all claims were based on the same facts and same legal theories).

**D.      Plaintiffs and their counsel are adequate.**

To assess adequacy, courts ask: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 985 (9th Cir.

2011).

Here, Plaintiffs and their counsel have no conflicts of interest with other class members. *See* Declaration of Sharon Crowder ¶ 3, Declaration of Joel Lumian ¶ 3, Declaration of Robert Smith ¶ 3, Declaration of Amanda Goldwasser ¶ 3, and Declaration of Mark Elkins ¶ 3 (collectively "Plaintiff Declarations")[4]; Franzini Decl. ¶ 6. And, they will vigorously prosecute the case. *Id.* Moreover, Plaintiffs' counsel has substantial experience (and success) litigating consumer class actions and deceptive discount cases. Franzini Decl. ¶¶ 2-5. So, Plaintiffs and their counsel are adequate.

**V.      Because Rule 23(b)(3) is satisfied, the Court should certify a damages class.**

   **A.      Common issues predominate liability.**

Predominance "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Capaci v. Sports Rsch. Corp.*, 2022 U.S. Dist. LEXIS 72856, at *26-27 (C.D. Cal. Apr. 14, 2022) (internal quotations omitted); *see Olean*, 31 F.4th 651 at 664 (predominance asks whether common issues "are more prevalent or important" than individual issues).

Some "variation among" class members' claims or "potential difficulty in proof" does not "defeat predominance." *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (internal quotations omitted). And, any "doubts regarding the propriety of class certification generally should be resolved in favor of certification." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 481 (N.D. Cal. 2011). "Predominance is a test readily met in certain cases" like this one "alleging consumer . . . fraud." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

---

[4] Plaintiff Smith made his purchase subject to a trade discount. Smith Decl. ¶ 4. The remaining Plaintiffs made purchases subject to a publicly available discount. Crowder, Lumian, Goldwasser, and Elkins Declarations ¶ 4. So at least one proposed class representative is a member of each subclass. *See Romero v. Cal. Rehab. Inst., LLC*, 2022 U.S. Dist. LEXIS 254442, at *7-8 (C.D. Cal. Jan. 24, 2022) ("[A]t least one named class representative must be a member of each subclass.").

Here, for all of Plaintiffs' claims, liability turns exclusively on common questions that can be answered with common proof.

### 1. All class members were shown the same deceptive statements, in the same format.

To start, all of Plaintiffs' claims arise from the same allegedly deceptive advertising: The Shade Store's representations about its supposed regular prices, its supposed discounts, and the supposed savings its customers received by purchasing during a supposed sale. And, those same statements were made to each and every class member, in the same format, right before they placed their order.

For the entire class period, The Shade Store made the same representations to each and every class member about the list prices, discounts, and supposed savings associated with each product in their order. For the entire class period, no matter how the consumer first learned of The Shade Store or what sales process the consumer went through, at the end of the process, The Shade Store gave every one of its customers an order summary to review before they placed their order—either in a price quote or on a shopping cart webpage (depending on how the order was placed). As The Shade Store admitted, "[a]ll customers [were] given either a final quote or are . . . going to have a shopping cart page to review before they're able to order." Dominick at 79:24-82:5; *see id.* 61:4-17; *see* Exs. 2-4 (price quote examples); Exs. 5-6 (shopping cart webpage example). For the entire class period, the order summaries provided to each customer—whether price quote or shopping cart page—included all the same information, in the same format. Dominick at 49:11-52:8 (summarizing the information on the shopping cart page and admitting it remained the same from November 2018 to present); *id.* 67:1-11 (from November 2018 to present, price quotes included materially the same information); 78:13-19 (price quotes look the same regardless of the type of promotion applied); 79:13-19 (same); *see id.* at 75:10-20 (price quotes and shopping cart page include the same information as each other), 75:21-76:4 (formats of the price quotes and shopping cart pages "are similar and represent the same information for each customer"); Exs. 2-6 (examples of price quotes and shopping cart page). And for the entire class period, the information in the price quotes and shopping cart pages included the supposed regular prices in strikethrough font, the supposed discounts, and the supposed savings from purchasing during a supposed sale. Dominick at 79:24-82:5 (summarizing format and information contained in price quotes and

shopping cart page); *see id.* at 67:25-68:5, 68:6-12, 68:18-25, 69:1-6, 69:8-12, 69:13-21, 70:2-71:12, 71:13-72:2, 72:6-16, 75:10-20.

So in short, for the entire class period, each class member was exposed to the same allegedly deceptive advertising, in the same format.

**2.      Liability for the deception-based claims can be established classwide.**

For most of Plaintiffs' claims—under the CLRA, section 17500 of the FAL, the fraudulent prong of the UCL, and for misrepresentation—Plaintiffs' central contention is that The Shade Store's classwide advertising deceptive. Plaintiffs contend that The Shade Store's classwide statements about its list prices, discounts, and savings falsely conveyed that its customers were getting genuine discounts off of the real prices that The Shade Store usually charges for its products, when in fact they were not. So, for those claims, liability will turn on:

- what The Shade Store's advertising conveys (*i.e.*, whether it conveys that the advertised list prices are the prices at which The Shade Store usually sells its products and that consumers are getting a genuine a discount off those regular prices); and

- whether this is true or not.

And, each of these questions can be answered classwide.

What an advertisement conveys to consumers is based on the "reasonable consumer" standard. This is an "objective test" that turns on how a reasonable consumer would perceive an advertisement. *Gold*, 323 F.R.D. at 290. It ignores "the subjective understandings of individual plaintiffs." *Kumar*, 2016 U.S. Dist. LEXIS 92374, at *21. And under this test, there is "no need to inquire into each class member's unique circumstances." *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1101 (N.D. Cal. 2018) (internal quotes omitted). So, what The Shade Store's advertisements convey can be decided classwide using common evidence about how a reasonable consumer would perceive its price advertising. *See id.* at 1116 ("[D]eception . . . under the FAL, CLRA, and UCL [is] governed by an objective 'reasonable consumer' test."); *Jacobs v. La-Z-Boy Inc.*, 2024 U.S. Dist. LEXIS 208219, at *12 (C.D. Cal. Nov. 14, 2024) (applying reasonable consumer test to fake discount claims); *Munning v. Gap, Inc.*, 2016 U.S. Dist. LEXIS 149886, at *11 (N.D. Cal. Oct. 28, 2016) (same); *Vizcarra v. Michaels Stores, Inc.*, 710 F. Supp. 3d 718, 726 (N.D. Cal. 2024) (same); *Spann v. J.C. Penney Corp.*, 307 F.R.D.

at 523 (certifying fake discount class action and recognizing that "Courts often find that common questions predominate in FAL actions because they call for analysis under an objective reasonable consumer test"); *Gold*, 323 F.R.D. at 290 (California consumer protection claims are "particularly amenable to class certification" due to this "objective test"); *Clevenger v. Welch Foods Inc.*, 342 F.R.D. 446, 460 (C.D. Cal. Sept. 13, 2022) ("[T]he reasonable consumer test is inherently an objective analysis," so "may be decided on a class-wide basis."). And in fact, Plaintiffs have already put forward such classwide evidence: the expert testimony of Bruce Silverman, a well-regarded marketing expert. Mr. Silverman testified that The Shade Store's representations in its order summaries are "fundamentally misleading" because the "strikethrough price" in the order summaries "is clearly intended to communicate to customers that it is the regular price for the advertised product" and that "[o]rdinary consumers understand a strikethrough price to be a product's regular price." Silverman ¶¶ 86-89. And he testified that reasonable consumers viewing these representations "believe and expect that they are getting product worth the advertised list price, when in fact they are getting a product worth 15-20% less." *Id.* at ¶ 90.

Likewise, whether The Shade Store's list prices and discounts off those list prices are false, can be proven classwide, too. The Shade Store maintains a promotional calendar that keeps track of its publicly available (supposed) promotions. Ex. 7 (promotional calendar); *see* Dominick at 108:22-109:6 (discussing promotional calendar). The promotional calendar summarizes, for each promotion, the promotion name, the supposed discount, and the supposed start and end date. *Id.* at 109:17-19; *see id.* at 111:20-112:24 (summarizing information in the promo chart), 113:4-23 (explaining what the information conveys), 115:14-23 (discounts shown on promotional calendar were offered to consumers), 33:23-34:6, 35:5-21 (publicly available sitewide discounts shown on the promotional calendar automatically apply to all orders, through all channels, not just ones made on the website). And, the promotional calendar shows that, throughout the class period, The Shade Store consistently offered discounts of 15-20%. Ex. 7; *see* Dominick at 97:13-98:10 (sitewide discounts were available from the

beginning of the class period until at least November of 2023); *id.* at 102:21-103:9 (from November 2023 until The Shade Store's 30(b)(6) deposition, design consultants could offer 15% off all products).[5]

In addition, The Shade Store maintains transaction records—called "line-item reports"—showing the details of each transaction it entered during (and before) the class period. Dominick at 141:17-142:14; *see id.* 124:13-140:20 (describing the contents of the line-item reports in detail); Ex. 12 (excerpt of line-item report); Dominick at 154:21-155:12 (The Shade Store has this same information for transactions receiving a trade discount); *id.* (contents of trade discount line-item report have same meaning); Ex. 13 (excerpt of trade discount line-item report). Those line-item reports include the supposed list price, discount price, and savings that were advertised to class members in connection with each transaction. Dominick at 134:2-5 (list price), 134:21-135:12 (savings), 135:19-24 (discount price); *see, e.g.*, Ex. 12 (excerpt of line-item report) col. AO, AQ, AS. And they show that, throughout the class period, ▇▇▇▇▇▇▇▇ of products were sold at a discount of at least ▇▇ off the list price, and that the average discount ranged from ▇▇ to over ▇▇. Franzini Decl. ¶ 22; *see* Weir ¶¶ 87-88 & pp. 49-52 (explaining that, using The Shade Store's transactional data, it is possible to calculate historical discounts off of the list price of The Shade Store's products).

This evidence applies classwide, to all products purchased by class members throughout the entire class period. And it shows that, throughout the class period, The Shade Store's supposed list prices, supposed discounts, and supposed savings were false. Because The Shade Store always offered discounts of at least 15% off the list prices, the advertised list prices were not The Shade Store's true regular prices; the true regular prices were much lower. And, class members did not receive the advertised discounts or savings on their order.

So, in short, for the deception-based claims, Plaintiffs can establish liability classwide, using The Shade Store's records and expert testimony that applies classwide. For those claims, common questions predominate liability.

---

[5] On the promotional calendar, there is a gap showing no promotion from November 10, 2022 to January 3, 2023. However, other documents produced by the Shade Store show that The Shade Store was running a 15% promotion during that timeframe. Exs. 8-11; *see* Dominick at 116:4-119:15.

### 3. Liability for the FAL section 17501 claim can be established classwide.

Liability can be proven classwide for Plaintiffs' FAL section 17501 claims, too. Under section 17501, whether consumers interpret The Shade Store's advertised strikethrough list prices as "former prices" depends on the reasonable consumer standard and, therefore, is subject to common proof for the same reasons just discussed. *See Spann*, 307 F.R.D. at 528 (ruling, in fake discount case, that no individualized inquiry was required to determine whether defendant advertised an improper price comparison under section 17501); *e.g.*, Silverman ¶¶ 44, 61, 71, 84 (reasonable customers would understand strikethrough prices to be regular (former) prices).[6] Likewise, whether the advertised strikethrough list prices were the prevailing market prices in the three months leading up to each class member's purchase can be calculated classwide using The Shade Store's own transaction data.[7] *See* Weir ¶¶ 16, 88-89; *Spann*, 307 F.R.D. at 527 (defendant's sales data "provides an appropriate basis upon which to determine their prevailing market prices."). So common questions predominate liability on this claim, too.

### 4. Liability for the contract and warranty claims can be established classwide.

For the breach of contract and warranty claims, Plaintiffs contend that The Shade Store promised and warranted goods worth the advertised list price, but delivered goods worth less. 3AC ¶¶ 73-77. Like for the statutory consumer protection claims, what The Shade Store's advertisements promised or warranted is governed by the objective, reasonable consumer standard and can therefore be decided classwide. *Openwave Sys. v. Myriad Fr. S.A.S.*, 2011 U.S. Dist. LEXIS 69797, at *9 (N.D. Cal. June 29, 2011) ("Under California law" contract interpretation is an "objective" standard that "does not depend on the parties' subjective intents" (emphasis omitted)). This is why courts "have long found" that these claims "present the classic case for treatment as a class action." *Vaccarino v. Midland Nat'l Life Ins. Co.*, 2013 U.S. Dist. LEXIS 88612, at *57-58 (C.D. Cal. June 17, 2013); *Ewert v. eBay, Inc.*, 2010 U.S. Dist. LEXIS 108838, at *20-21 (N.D. Cal. Sept. 30, 2010) (predominance requirement satisfied because

---

[6] Section 17501 applies to "former prices." Cal. Bus. & Prof. Code § 17501.

[7] Section 17501 prohibits advertising former prices "unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement." Cal. Bus. & Prof. Code § 17501

the "court need not delve into the actual knowledge of individual class members" to interpret the contract terms); *Cabrera v. Bayer Healthcare LLC*, 2024 U.S. Dist. LEXIS 31709, at *22-23 (C.D. Cal. Feb. 23, 2024) (predominance satisfied for express warranty claims). And, whether The Shade Store's contractual promises and warranties were fulfilled—whether it delivered products worth the advertised list price—turns on whether the goods were in fact typically sold at the advertised list price or not, which again can be decided classwide using The Shade Store's data. *See* above.

### 5. Liability for the quasi-contract claim can be established classwide.

Finally, for the quasi-contract claims, Plaintiffs must establish "(1) [The Shade Store's] receipt of a benefit and (2) unjust retention of that benefit at the [Plaintiffs'] expense." *In re Pepperdine Univ. Tuition & Fees Covid-19 Refund Litig.*, 2023 U.S. Dist. LEXIS 178028, at *26 (C.D. Cal. Sept. 26, 2023). These elements turn on The Shade Store's "conduct and raise the same legal issues for all class members." *Astiana .v Kashi Co.*, 291 F.R.D. 493, 505 (S.D. Cal. 2013) (certifying quasi-contract claim in false advertising case and collecting cases). That The Shade Store received a benefit (more money) from the challenged representations can be established classwide. *See, e.g.*, discussion of price premium in Section V(C)(1) below. And whether it is unjust for The Shade Store to retain that benefit likewise does not depend on any individual question, but rather whether The Shade Store's fake discounting scheme is unfair or fraudulent on the whole. *See Cabrera*, 2024 U.S. Dist. LEXIS 31709, at *25-26 (ruling that common issues predominate for quasi-contract claim in consumer fraud class action); *see* above (falsity can be established classwide).

\* \* \*

In sum, for all claims, liability turns on issues that can be decided classwide, using common proof. Common questions predominate liability.

### B. Common questions predominate materiality and reliance.

For each of Plaintiffs' claims, "questions of materiality and reliance are determined based upon the reasonable consumer standard, not the subjective understandings of individual plaintiffs." *Kumar v. Salov N. Am. Corp.*, 2016 U.S. Dist. LEXIS 92374, at *21 (N.D. Cal. July 15, 2016) (UCL, FAL, and CLRA claims); *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1034 (9th Cir. 2024) ("A misrepresentation is material if a reasonable [person] would attach importance to its existence or

nonexistence in determining his choice of action in the transaction in question." (internal quotations omitted)); *Munning v. Gap, Inc.*, 2016 U.S. Dist. LEXIS 149886, at *22-23 (N.D. Cal. Oct. 28, 2016) (assessing materiality for breach of contract claim on a classwide basis) ("[T]his Court finds the Defendants' advertised price reductions were material."); *DZ Rsrv*. 96 F.4th at 1238 (applying reasonable consumer test to materiality for a California fraud claim and affirming district court's finding that common questions predominate); *Broomfield v. Craft Brew Alliance, Inc.*, 2018 U.S. Dist. LEXIS 177812 at *39 (N.D. Cal. Sept. 25, 2018) ("[M]ateriality and reliance standards appl[y] equally to consumer law, common law fraud, and negligent misrepresentation claims." (citation omitted)); Ex. 14 (*Brazil v. Dell Inc.*, No. 5:07-cv-01700-RMW, Dkt. 306) at 6-9 (in a deceptive discount case, finding predominance satisfied for a California "intentional misrepresentation" claim). And if a plaintiff establishes that "material misrepresentations have been made to the entire class, an inference of reliance arises as to the class." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011) (cleaned up). So, materiality and reliance will turn on whether the uniform misrepresentations The Shade Store made to all class members were "objectively material to a reasonable consumer." *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 565 (N.D. Cal. 2020).

Because that question "will not require the court to investigate class members' individual interaction[s]," and will instead be decided based on an objective standard, it can be decided classwide. *Bradach v. Pharmavite, LLC*, 735 F. App'x 251, 254-55 (9th Cir. 2018) (cleaned up) (noting that such claims are "ideal for class certification" for this reason); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2018) (same); *Spann*, 307 F.R.D. at 522-23 (ruling in fake discount case that causation and materiality are determined under the reasonable consumer standard and predominate over common questions). And, although proof of materiality is not required at this stage, *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1235 (9th Cir. 2024), Plaintiffs already have come forward with classwide evidence that The Shade Store's misrepresentations are material to reasonable consumers. This includes testimony from marketing expert Bruce Silverman that The Shade Store's fake claims of discounting and fake list prices are important to reasonable consumers in deciding whether to purchase products from The Shade Store. Silverman ¶¶ 79-84; *Hadley,* 324 F. Supp. 3d at 1115 (Silverman's testimony is common evidence of materiality); *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 565

(N.D. Cal. 2020) (same); *see also* Dominick at 87:4-17 ("The information that's all displayed" in price quotes, including the "strike price and the discount price" "is all information that [The Shade Store has] determined are relevant pieces of information for both internal and external purposes.").

Plus, "the legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts must defer to that determination." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013). And, "both state and federal law specifically prohibit retailers from advertising false 'sales.'" *Id.* (citing CLRA § 1770(a)(13), FAL §17501, and 16 C.F.R. § 233.1(a) (Federal Trade Commission regulations); *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 731 (Cal. Ct. App. 2018) ("[O]ur legislature's decision to prohibit the use of false and misleading former price information shows that it has deemed such misrepresentations to be material."). So, there will be no need for classwide expert testimony regarding materiality in the first place. By establishing that The Shade Store advertised its fake sales classwide, Plaintiffs will establish materiality classwide, too. *See Banks v. R.C. Bigelow, Inc.*, 2024 U.S. Dist. LEXIS 119458, at *20-21 (C.D. Cal. July 8, 2024) ("While materiality is generally a question of fact, when the legislature has seen fit to specifically outlaw certain statements in order to protect consumers, such statements are material as a matter of law"); *Brown v. Hain Celestial Grp., Inc.*, 2015 U.S. Dist. LEXIS 67912, at *19-23 (N.D. Cal. May 26, 2015) (summarizing the relevant case law).

**C.     Common questions predominate damages.**

If a plaintiff "present[s] a model of damages that (1) identifies damages that stem from the defendant's alleged wrongdoing and (2) is 'susceptible of measurement across the entire class,'" predominance is satisfied at this stage. *Bally*, 335 F.R.D. at 304 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34-38 (2013)); *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1121 (9th Cir. 2017); *see Lytle v. Nutramax Labs., Inc.,* 114 F.4th 1011, 1027 (9th Cir. 2024) (quotes omitted) (*Comcast* has "generally been construed to stand for the unremarkable proposition that plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability.").

To run afoul of *Comcast*, a damages model must be so "untethered from plaintiff's theory of liability" that it "has no possibility of demonstrating the amount of damages in a particular case." *Lytle*, 114 F.4th at 1027. Said differently, a model only violates *Comcast* if it is so disconnected from the

liability theory that it is "arbitrary." *See Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015) (quotes omitted); *see Grace v. Apple, Inc.*, 328 F.R.D. 320, 340 (N.D. Cal. 2018) (a defendant's assertions that a model is "flawed" cannot defeat certification when the model is "tied to plaintiffs' theory of liability" (quotes omitted)); *Makaeff v. Trump Univ., Ltd. Liab. Co.*, 309 F.R.D. 631, 637 (S.D. Cal. 2015) (a damages model satisfies *Comcast* so long as it is not an "arbitrary measurement" wholly divorced from the liability theory); *see also Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1183 (9th Cir. 2017) ("[c]lass wide damages calculations" under California's consumer protection statutes are "particularly forgiving," and "California law requires only that some reasonable basis of computation of damages be used").

Here, Plaintiffs have three alternative damages models. Each proposed model measures harm to the class that stems directly from The Shade Store's alleged fake discount scheme. And each is susceptible to measurement across the entire class. So *Comcast* is satisfied here.

### 1. Price premium damages model (all claims).

Plaintiffs allege that The Shade Store's fake discounting harms the class in several ways. One is that it artificially increases demand for The Shade Store's products. This allows The Shade Store to charge more than it otherwise could, causing class members to pay extra. 3AC ¶ 55. The "extra" is commonly known as a "price premium." And, in false advertising class actions, courts routinely hold that class members can recover the amount of a price premium attributable to the false advertising, either as damages (for legal claims) or as restitution (for equitable claims). *See Golikov v. Walmart Inc.*, 2025 U.S. Dist. LEXIS 35739, at *22 (C.D. Cal. Feb. 27, 2025) (certifying false advertising class action with a price premium model of damages and restitution); *Prescott v. Reckitt Benckiser LLC*, 2022 U.S. Dist. LEXIS 135329, at *30 (N.D. Cal. July 14, 2022) (concluding that the price premium is an appropriate measure of restitution (for UCL, CLRA, and quasi-contract claims) and damages (for CLRA claims)); *Stathakos v. Columbia Sportswear Co.*, 2017 U.S. Dist. LEXIS 72417, at *33 (N.D. Cal. May 11, 2017) ("[A] proper measure of restitution could be the delta between the price plaintiffs actually paid and the price a reasonable consumer would have paid absent the [deceptive] reference price."); *McMorrow v. Mondelēz Int'l, Inc.*, 2021 U.S. Dist. LEXIS 42885, at *40 (S.D. Cal. Mar. 8, 2021) (certifying a price premium model of "actual damages" under the CLRA); *Wiener v. Dannon Co.*, 255

F.R.D. 658, 670 (C.D. Cal. 2009) ("Actual damages" are available for "breach of express warranty claims"); *All. Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1241 (Cal.4th 1995) ("[R]ecovery in a tort action for fraud is limited to the actual damages suffered"); *Kumandan v. Google LLC*, 2022 U.S. Dist. LEXIS 247427, at *35 (N.D. Cal. Dec. 16, 2022) (certifying a price premium model for a breach of contract claim).

Plaintiffs' first damages model measures just this: the price premium attributable to The Shade Store's fake discount advertising. Weir ¶ 17. Using a survey technique called "conjoint analysis," Plaintiffs' expert, economist Colin Weir, will calculate "the portion of the market price of the Products solely attributable to The Shade Store's conduct," *i.e.*, the price premium that The Shade Store was able to charge class members directly as a result of its deceptive price advertising. *Id.*; *id.* ¶ 64 (attesting that, using conjoint analysis, Mr. Weir will be able to "calculate the overpayment attributable to the Sales Discount as the total price of the Products"); *see id.* at ¶¶ 18-31 (describing conjoint analysis and its applications).

To do so, Mr. Weir will first administer a consumer survey.[8] *Id.* ¶¶ 32-63 (describing methodology and survey design in detail). The survey will present respondents with a series of "choice tasks." *Id.* ¶ 41. During each choice task, respondents will be shown three window treatment products. *Id.* Respondents will be told the attributes of each product, such as brand, type, and material. *Id.* ¶¶ 37, 41; *see id.* ¶ 79 (showing attributes). Respondents will also be told, for each product, the list price of the product; and what discount, if any, applies. *Id.* ¶ 41, ¶ 79. Respondents will then be asked to select their preferred product among the three options. *Id.* ¶ 36. In this way, Respondents will reveal information about how they value and trade off different product attributes—including the existence of a discount. *See id.* ¶¶ 23-25 (examples of conjoint analysis being used to determine the value of an attribute).

---

[8] Mr. Weir has not yet run his conjoint survey or price premium calculation because under controlling law, "class action plaintiffs may rely on an unexecuted damages model to demonstrate that damages are susceptible to common proof so long as the district court finds, by a preponderance of the evidence, that the model will be able to reliably calculate damages in a manner common to the class at trial." *Lytle* 114 F.4th at 1024; *Spann*, 307 F.R.D. at 529 (certifying class based on unexecuted damages model). Mr. Weir will run the conjoint at the merits stage.

After collecting this data from a large sample of potential The Shade Store customers, Mr. Weir will then use statistical techniques to analyze this data. *Id.* at ¶¶ 50-63 (describing the data analysis Mr. Weir will perform in detail); *see id.* at ¶ 47 (discussing sample selection). In this way, he will generate a "statistically robust estimate of any price premium that purchasers paid solely as a result of the challenged Sales Discounts," *i.e.*, the price premium attributable to The Shade Store's advertised "sales offering a discount of at least 15-20% off of Defendant's list prices." *Id.* ¶¶ 4 & n.3, 60. The premium will be expressed "as a percentage of the total price of the Products to be applicable to the various retail price points in the marketplace." *Id.* ¶ 64. "The price premium can be applied to every sale of the product, and to every Class Member, respectively." *Id.* ¶ 65. Using this calculated price premium and the transactional data in The Shade Store's line-item reports, Mr. Weir can calculate the price premium damages classwide, both in the aggregate and for each individual class member. *Id.* ¶¶ 64-65, 83; ¶ 16 (summarizing information in line-item reports); Exs. 12-13 (line-item report excerpts).

Plaintiffs' proposed price premium model indisputably identifies damages that stem from The Shade Store's wrongdoing. It measures "any price premium that purchasers paid solely as a result of the challenged Sales Discounts," *id.* ¶ 60, *i.e.*, The Shade Store's advertised "sales offering a discount of at least 15-20% off of Defendant's list prices," *id.* ¶ 4 & n.3. And, it is susceptible to measurement across the entire class: it can be measured classwide, for each class member, using common survey evidence and The Shade Store's transactional data. *Id.* ¶¶ 64-65, 83; *see, e.g.*, *Gunaratna v. Dennis Gross Cosmetology LLC*, 2023 U.S. Dist. LEXIS 60796, at *70 (C.D. Cal. Apr. 4, 2023). ("If there was a premium, all who purchased the Products were economically harmed."). Thus, Plaintiffs' proposed price premium model satisfies *Comcast*.

Notably, the Ninth Circuit has recognized that "conjoint analysis is a well-accepted technique that is frequently used to establish damages in [consumer protection] actions." *Lytle*, 114 F.4th at 1033; *see Vizcarra v. Unilever United States*, 339 F.R.D. 530, 553 (N.D. Cal. 2021) ("[Courts] routinely hold that choice-based conjoint models … satisfy *Comcast's* requirements."). Courts regularly approve of using conjoint analysis to calculate the price premium caused by a misrepresentation. *E.g.*, *McMorrow v. Mondelez Int'l Inc.*, 2021 U.S. Dist. LEXIS 42885, at *43 (S.D. Cal. Mar. 8, 2021) (certifying class with price premium model); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1110 (N.D. Cal. 2018)

("[C]onjoint analysis is widely-accepted as a reliable economic tool for isolating price premia."); *see also* Weir ¶ 18 n.15 (collecting cases). And Mr. Weir is indisputably qualified to perform this analysis. In fact, his analysis has been accepted by numerous other courts in certifying consumer class actions. *E.g.*, *McMorrow*, 2021 U.S. Dist. LEXIS 42885, at *43 (price premium model created in part by Mr. Weir satisfies *Comcast* and meets the predominance requirement); *Swartz v. Dave's Killer Bread, Inc.*, 2024 U.S. Dist. LEXIS 198028, at *22-23 (N.D. Cal. Sept. 20, 2024) (certifying class and finding that Mr. Weir's conjoint and price premium model satisfied *Comcast*); *Banks v. R.C. Bigelow, Inc.*, 2023 U.S. Dist. LEXIS 135167, at *22-23 (C.D. Cal. July 31, 2023) (same); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413-14 (S.D.N.Y. Jan. 26, 2015) (same).

* * *

In short, for all claims, Plaintiffs can recover the price premium attributable to The Shade Store's fake discounting. Plaintiffs have put forward a damages model that measures just that, on a classwide basis, using proof common to the entire class. And Plaintiffs' proposed model has been accepted by numerous courts in indistinguishable circumstances. Plaintiffs satisfy *Comcast*.

### 2. Expectation damages (legal claims).

Plaintiffs allege that The Shade Store's fake discounting harms class members a second way: it deprives class members of the benefit of their bargain. *See* 3AC ¶¶ 73-77. Plaintiffs allege that, on its website and in its price quotes, The Shade Store promises to provide class members with products having a certain list price and value (the strikethrough price) for a lower, discounted price (the purchase price). *Id.* ¶ 73. The Shade Store also promises to provide class members with a specified percent discount (for example, 20%) off its regular prices, *id.*, and specified savings (for example, "-$2,867.80"). *Id.* ¶ 65. But—because its list prices, discounts, and savings are fake—The Shade Store does not fulfill its promises. *E.g.*, *id.* ¶ 39, 77. Instead of providing class members with products worth the strikethrough price as promised, The Shade Store provides products worth less. *Id.* ¶ 77. And instead of providing class members with the promised discounts and savings, The Shade Store provides them lower discounts and savings, or none at all. *Id.* ¶¶ 39, *e.g.*, *id.* ¶ 60. So the difference between what class members were promised and expected and what they actually got—their lost expectancy interest—is a second harm that stems from The Shade Store's fake discounting. And it is well established that for

Plaintiffs' legal claims such as those under the CLRA, for breach of contract, and for breach of warranty such expectation or "benefit-of-the-bargain" damages are recoverable. *See Sharpe v. Puritan's Pride, Inc.*, 466 F. Supp. 3d 1066, 1076 (N.D. Cal. 2020) (in a deceptive discount case, the CLRA allows for "benefit-of-the-bargain" damages, *i.e.*, "satisfying the expectancy interest of the defrauded plaintiff." (internal quotation marks omitted))[9]; *ALLTEL Info. Servs. v. FDIC*, 194 F.3d 1036, 1039 (9th Cir. 1999) (quoting Restatement (Second) of Contracts § 344 (1981)) (contract damages may be measured through an "individual's interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed." (cleaned up)); *Martin v. Monsanto Co.*, 2017 U.S. Dist. LEXIS 135351, at *22-23 (C.D. Cal. Mar. 24, 2017) (warranty damages measured by the difference between the value of the goods accepted and the value they would have had if they had been as warranted).

Plaintiffs' second proposed damages model—which applies only to its legal claims[10]—will measure class members' lost expectancy interest. It will calculate this by comparing the value of what class members were promised and expected (a product worth the list price in strikethrough font) with the

---

[9] The *Sharpe* court later rejected the plaintiffs' proposed expectation damages model at class certification. *Sharpe v. Puritan's Pride, Inc.*, 466 F. Supp. 3d 1066, 1075 (N.D. Cal. 2020). The reason, however, was not that that court changed its mind and decided expectation damages are not available in fake discount cases after all. It was that the plaintiffs' proposed model did not actually measure the plaintiffs' or the class's expectation damages. Indeed, that case was a buy-one-get-one-free case, not a percentage discount case. So the percentage-based calculation the plaintiffs proposed was "a poor fit with the case because nothing in the record indicates that [class members] thought about [their] purchases in the way the model assumes" and "did not account for plaintiffs' deposition testimony, which indicated that they did not have an expectation of a percentage discount." *Mueller v. Puritan's Pride, Inc.*, 2021 U.S. Dist. LEXIS 226103, at *19-20 (N.D. Cal. Nov. 23, 2021). Here, by contrast, The Shade Store promises percent-off discounts, so Plaintiffs' percentage-based calculation closely matches expectations. And this is precisely what Plaintiffs' proposed damages model will measure.

[10] Expectation damages measure damages and, therefore, are not restitutionary. *See Sharpe*, 466 F. Supp. 3d at 1075-76 (distinguishing benefit of the bargain damages from restitution). They are not available for equitable claims, and so Plaintiffs present the expectation damages model only for their legal claims. These are, the CLRA claim (Count 1); the breach of contract claim (Count 4); and the breach of warranty claims (Counts 5 and 6). The CLRA provides for legal and equitable remedies, so Plaintiffs can seek both damages and restitution through the CLRA. Cal. Civ. Code § 1780; *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 230 (Cal. Ct. App. 2013) (consumers "can sue for damages, restitution, and an injunction" under the CLRA). Plaintiffs do not seek expectation damages for their fraud claims.

value of what class members actually received (a product that, because it is always on sale for at least 15-20%, is worth at least 15-20% less than the list price).

These damages stem from the alleged wrongdoing here: the reason class members have an expectancy interest that was not satisfied is that The Shade Store represented that its products were worth the list price, when in fact they were worth less. Weir ¶¶ 29, 84 (according to research on reference pricing, a "'comparative price advertisement, regular price $10.00, on sale $7.99, suggests a monetary worth of $10.00 and a savings of $2.01'"); Silverman ¶¶ 74, 90; Dominick at 92:8-17 ("The Shade Store . . . is showing what the full price, what the list price is of the product, and it's showing the discount applied to it and what the benefit the customer is getting from that specific discount."). And, these damages are susceptible to measurement across the entire class. As Mr. Weir attests, "Defendant's line item reports include all of the information needed to perform this calculation for each product sold to class members, including the date of the order and the list price for each product in the order. It also includes information showing whether a discount was applied to the order." Weir ¶ 85. So, using this common evidence, it will be "possible to calculate the difference between the 'list price' and the price with either a 15% or 20% discount applied, or a combination of both based upon a date range." *Id.* ¶ 84. It will also be possible to determine, for the entire class period, what The Shade Store's true regular prices were. *Id.* at pp. 49-52 (calculating aggregate statistics about The Shade Store's discounts, on a monthly basis from November 2018, until April 2024). So, for the legal claims, Plaintiffs satisfy *Comcast* in this second way, too.

### 3. Rescission and restitution (equitable claims only).

Plaintiffs also allege that The Shade Store's fake discounting harmed them and class members in a third way: by inducing them to buy window treatments they otherwise would not have bought. *E.g.*, 3AC ¶ 14; Plaintiff Declarations ¶ 5. This too is a cognizable harm for which consumers can seek redress. *See, e.g., Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 327-28 (Cal. 2011) (plaintiffs were injured when they made purchases they otherwise would not have made based on misrepresentations); *Spann v. J.C. Penney Corp.*, 2015 U.S. Dist. LEXIS 42545, at *15 (C.D. Cal. Mar. 23, 2015) ("Rescission with complete restitution can be an appropriate remedy" in a fake discounting case when plaintiff made purchase based on the fake discount); *Spann*, 307 F.R.D. at 530-31 (certifying class with

rescission and refund model); *see Krueger v. Wyeth, Inc.*, 396 F. Supp. 3d 931, 952-54 (S.D. Cal. 2019) (full refund restitution available when plaintiff would not have made the purchase absent the alleged misrepresentations); *FTC v. Figgie Int'l*, 994 F.2d 595, 606 (9th Cir. 1993) (full refund restitution available when "had [customers] been told the truth, perhaps they would not have brought [the products] at all or only some").

Plaintiffs present a third model—applicable only to their equitable claims (the UCL, unjust enrichment, FAL, and CLRA claims)—to measure this harm: a rescission and full refund model. Under this model, class members who were induced to make a purchase they otherwise would not have made would have the option to return the products they purchased and, in exchange, receive a full refund. *See* Weir ¶ 86.

Permitting class members to return the products they purchased for a full refund plainly measures alleged harm stemming from The Shade Store's wrongdoing. The alleged harm is that Plaintiffs and class members bought a product they would not have bought and spent money they would not have spent. And the remedy directly measures and addresses that harm by letting Plaintiffs and class members return the product they would not have bought and get the money they would not have spent back. Moreover, Plaintiffs can use common evidence—The Shade Store's transactional data showing what products each class member purchased and how much they spent—to measure the amount of the refund for each classmember, classwide. Exs. 12-13 (excerpts of line-item reports); *see* Weir ¶ 86. And, implementing this remedy is feasible: As The Shade Store testified, The Shade Store already has processes in place to allow customers to return window treatments for a refund. Dominick at 176:24-177:10 (allowing returns), 180:7-11 (explaining spreadsheet produced by The Shade Store showing its returns and corresponding refunds).

Notably, several courts have recognized that this type of damages model is available in fake discount cases. *See Calderon v. Kate Spade & Co., LLC*, 2020 U.S. Dist. LEXIS 38510, at *22 (S.D. Cal. Mar. 5, 2020) ("[T]he Court could fashion a remedy [in a deceptive discount case] by rescinding the transactions and refunding the amounts."); *Simon v. Carter's, Inc.*, 2020 U.S. Dist. LEXIS 265097, at *10 (N.D. Cal. July 13, 2020) (noting, in a deceptive discount case, the availability of recission and return as a monetary remedy). And in *Spann*, the court accepted the rescission and refund model when

certifying the class because the remedy can be "readily calculated using Defendant's sales numbers," and because requiring a return avoids the need to measure and offset by the value of what was received. 307 F.R.D. at 530-31 (citation omitted); *see In re Pfa Ins. Mktg. Litig.*, 2021 U.S. Dist. LEXIS 244526, at *64-65 (N.D. Cal. Nov. 3, 2021) ("[P]laintiffs have adequately shown that LSW's transactional data … can be employed to effectuate any requests for rescission in a manner that would not defeat predominance.").

***

In sum: Plaintiffs present three separate damages models that each satisfy *Comcast*. So common issues predominate damages, too.

### D. A class action is a superior way to resolve this controversy.

Courts consider "four non-exclusive factors" to determine superiority: "(1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action." *Dickey,* 2019 U.S. Dist. LEXIS 8740, at *19 (cleaned up). Here, all factors support certification: (1) individual claims are small relative to the cost of individual litigation and so there is little incentive for individual class members to bring claims;[11] (2) there is no other litigation against The Shade Store commenced by the Class; (3) it makes sense to concentrate the litigation here, as all class members are in California; and (4) as addressed above, because common issues predominate, there are no management difficulties that would foreclose a class action (in fact, concentration of the claims is desirable due to the economies of scale involved in proving that The Shade Store's discounts and list prices are fictitious). A class action is superior.

---

[11] For example, Plaintiffs' purchases vary in cost from approximately $1,600 to approximately $13,500. But even at the high end, the few thousand dollars in recovery any one individual could receive as a best-case scenario would not justify the extensive litigation costs—including the costs of experts— necessary to prove up these claims individually.

**VI.  Because Rule 23(b)(2) is satisfied, the Court should certify an injunction class, too.**

The Court may certify a damages class under Rule 23(b)(3) and, also, an injunction class under Rule 23(b)(2). *In re Conagra Foods, Inc.*, 302 F.R.D. 537, 573 (C.D. Cal. 2014). That is what the Court should do here.

"Rule 23(b)(2) applies … when a single injunction … would provide relief to each member of the class." *B.K. v. Snyder*, 922 F.3d 957, 971 (9th Cir. 2019) (internal quotes omitted). In deciding whether to certify an injunction class under Rule 23(b)(2), courts do not "examine the viability or bases of class members' claims"—they only look to "whether class members seek uniform relief from a practice applicable to all of them." *Bush v. Rust-Oleum Corp.*, 2024 U.S. Dist. LEXIS 20131, at *17-18 (N.D. Cal. Feb. 5, 2024) (quotes omitted). Nor does it matter if "some class members may have suffered no injury or different injuries," *id.* (quotes omitted), as long as at least one Plaintiff has standing to seek an injunction, *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n.32 (9th Cir. 2022) (citing *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc)). There is no predominance and no cohesiveness requirement for a Rule 23(b)(2) class. *Bush*, 2024 U.S. Dist. LEXIS 20131, at *16-18. And "questions of manageability and judicial economy are irrelevant." *Id.* (internal quotes omitted).

Here, Plaintiffs seek to enjoin The Shade Store from continuing to advertise fake discounts. 3AC ¶ 82; Plaintiff Declarations ¶ 6. And that single injunction would provide relief to each member of the class: it would stop the practice that misled each class member, and allow each class member to trust The Shade Store's price-and-discount advertising going forward. *Cf.* Plaintiff Declarations ¶ 6.[12]

**VIII.  Conclusion.**

The Court should certify the class and each subclass under Rule 23.

---

[12] And Plaintiffs seek only injunctive relief—no monetary relief—through the Rule 23(b)(2) class. Notably, the primary (and only) classwide relief Plaintiffs seek under Rule 23(b)(2) is injunctive. *See Ang v. Bimbo Bakeries USA, Inc.*, 2018 U.S. Dist. LEXIS 149395, at *30-31 (N.D. Cal. Aug. 31, 2018) (explaining that a Rule 23(b)(2) injunction class is appropriate where the primary relief sought under Rule 23(b)(2) is injunctive even when damages are sought through a Rule 23(b)(3) class). So it is proper for the Court to certify an injunction class, even though Plaintiffs also seek classwide damages under Rule 23(b)(3). *Id.*

Dated: March 24, 2025

Respectfully submitted,

By: */s/ Martin Brenner*
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal. Bar No. 333540)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiffs*