UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON CROWDER, JOEL LUMIAN, ROBERT SMITH, AMANDA GOLDWASSER, and MARK ELKINS, each individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE SHADE STORE, LLC,<br><br>Defendant. | Case No. 5:23-cv-2331 |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LEE FITZGERALD and KATHERINE ADLER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE SHADE STORE, LLC,<br><br>Defendant. | Case No. 2:23-cv-01435-RSM |

Declaration

of

**COLIN B. WEIR**

January 23, 2025

REFERENCES MATERIALS DESIGNATED "CONFIDENTIAL" AND "HIGHLY

CONFIDENTIAL " UNDER PROTECTIVE ORDER

I, Colin B. Weir, declare as follows:

I am President at Economics and Technology, Inc. ("ETI"), 100 Franklin Street, 6th Floor, Boston, Massachusetts 02110. ETI is a research and consulting firm specializing in economics, statistics, regulation and public policy.

## I. QUALIFICATIONS, BACKGROUND, AND EXPERIENCE

1. I hold a Masters of Business Administration, with honors, from the High Technology program at Northeastern University, Boston, Massachusetts. I hold a Bachelor of Arts degree cum laude in Business Economics from The College of Wooster, Wooster, Ohio. I have provided expert testimony before federal and state courts, the Federal Communications Commission, and state regulatory commissions, and have contributed research and analysis to numerous ETI publications and expert testimony at the state, federal, and international levels. I have consulted on a variety of consumer and wholesale products cases, calculating damages relating to food products, health/beauty care products, automobiles, household appliances, herbal remedies, electronics, and computers. My Statement of Qualifications, which outlines my professional experience, publications, and record of expert testimony during the last four years, is attached hereto as Exhibit 1. This includes a list of all cases in which, during the previous four years, I have testified as an expert at trial or by deposition.

2. I received graduate level training in conjoint analysis as part of my MBA. I take continuing education in advanced conjoint design, execution, and analysis through Sawtooth Software, a leading provider of conjoint analysis software. In addition, I have more than 16 years of experience using conjoint analysis professionally.



ECONOMICS AND TECHNOLOGY, INC.

## II.  ENGAGEMENT

3.    I provide this declaration in connection with the cases filed by Plaintiffs Sharon Crowder, Joel Lumian, Robert Smith, Amanda Goldwasser, and Mark Elkins in *Crowder et al. v. The Shade Store, LLC*, Case No. 5:23-cv-2331-NC, and Plaintiffs Lee Fitzgerald and Katherine Adler in *Fitzgerald et al. v. The Shade Store, LLC*, Case No. 2:23-cv-01435-RSM (hereinafter, "Plaintiffs") on behalf of themselves and all others similarly situated, in the above-captioned actions against The Shade Store, LLC ("Defendant").[1,2]  I make this declaration based upon my own personal knowledge and, if called as a witness in this action, I would be able to competently testify as to the facts and opinions set forth herein.

4.    Plaintiffs allege that The Shade Store advertises storewide and sitewide sales offering a discount of at least 15-20% off of Defendant's list prices.[3]  Plaintiffs allege that these sales are deceptive because, in truth, the sales are always available.  Plaintiffs allege that, as a result, the listed reference price is not the price that consumers typically must pay, or what most consumers pay, and is therefore misleading.[4]

5.    The proposed class (defined below) includes purchasers of The Shade Store's own products, including but not limited to, blinds, shades, and drapes.[5]  Those products are manufactured by The Shade Store and are sold exclusively by The Shade Store and its resellers.[6]

---

[1] Based on my review of the operative complaints in the California and Washington actions, I understand that the allegations regarding Defendant's conduct in the two are materially similar.  For convenience, I cite to Plaintiffs' Third Amended Class Action Complaint in the California case for allegations common between the two cases, but my opinions apply equally to the Washington case.

[2] Third Amended Class Action Complaint, filed in Case No. 5:23-cv-2331-NC on December 6, 2024, (the "Complaint"); Second Amended Class Action Complaint, filed in Case No. 2:23-cv-01435-RSM on November 21, 2024 (the "Washington Complaint").

[3] Hereinafter the "Deceptive Sales Discounts" (encompassing the allegedly misleading list price); Complaint at paras 8-12, 33-40.

[4] Complaint, at paras 39, 42.

[5] Complaint, at para 7.

[6]  Deposition of Suzanne Dominick, December 4, 2024 ("Dominick Deposition"), at 10:6-10; 10:12-17; 12:2-16.



ECONOMICS AND
TECHNOLOGY, INC.

6. I have been advised that Plaintiffs seeks to certify the following classes in the California and Washington Actions, respectively:

> California Action: all persons who, from May 21, 2020, until the date class notice is disseminated, purchased one or more The Shade Store Products advertised at a discount from Defendant while in the state of California.

> Washington Action: all persons who, from May 21, 2020, until the date class notice is disseminated, purchased one or more The Shade Store Products advertised at a discount from Defendant while in the state of Washington.

7. I have been asked by Counsel for Plaintiffs to ascertain whether it would be possible to calculate damages arising from Plaintiffs' theories of liability on a class-wide basis using common evidence, and if so, to provide a framework for the calculation of damages suffered by the proposed class of consumers as a result of the Deceptive Sales Discounts.

8. ETI is being compensated at the rate of $900 per hour for my work on this case. The opinions expressed in this declaration are my own, and my compensation is not dependent upon the substance of these opinions or the outcome of the litigation.

9. The documents, data and other materials that I relied upon in forming my opinions are identified throughout my report, and in Exhibit 2, attached hereto. In addition, I have relied upon my educational background and 21 years of experience.

## III. FRAMEWORKS FOR DAMAGES

10. As a threshold matter, it is my opinion that it is possible to determine class-wide damages in this case using Defendant's own available business records, third-party records, industry resources, and/or a conjoint analysis.

11. In connection with this case, Defendant produced transaction-level data showing sales of The Shade Store products sold by Defendant to members of the proposed class during the class period. Below, I first summarize certain aspects of this data.


ECONOMICS AND
TECHNOLOGY, INC.

12.  I then propose to calculate Price Premium Damages[7] using conjoint analysis (wherein consumers would receive the difference in value between what they paid and the value of what they received that is solely attributable to Defendant's challenged conduct).

13.  I also propose the calculation of expectation damages based upon available data about the class products.

14.  I also propose a Return and Refund, wherein consumers would be allowed to return class products for a refund.

15.  These methodologies can determine the damages across the relevant time period and geographic regions, for the liability theories in this litigation.

## IV.  DEFENDANT'S TRANSACTIONAL DATA

16.  I have reviewed two "line item reports" produced by Defendant.[8]  Those line item reports contain detailed information about each order for The Shade Store products shipped by Defendant into California and Washington during the relevant timeframe.[9]  The line item reports set forth, for each order, what products were included in the order and their configuration.[10] They also set forth, for each product within each order, the list price shown to consumers on the website and in price quotes; the percentage of any promotional discounts off the list price that were applied to that product; the dollar amount of any promotional discounts off of the list price that were applied to that product; and the amount paid for each product after any discount.[11]

---

[7] I understand that Plaintiffs are seeking price premium damages and restitution in the form of price paid minus value received.  For brevity, I refer only to price premium damages in this report, but the calculation of price premium damages and restitution in the form of price paid minus value received would be the same in this case.

[8] TSS 0012284; TSS 0038115.

[9] *Id*.; *see* Dominick Deposition, at 140:21-142:14; *see generally id*., at 125:3-155:12.

[10] Dominick Deposition, at 133:7-13.

[11] Dominick Deposition, at 134:21-135:24.

 ECONOMICS AND TECHNOLOGY, INC.

They also identify the promotion that was applied to the order that resulted in any discount, as well as additional information about that promotion (such as its end date, if any).[12]

## V. PRICE PREMIUM DAMAGES

17. In this litigation, Price Premium Damages for the Class are the portion of the market price of the Products solely attributable to Defendant's conduct of using the Deceptive Sales Discounts, or in other words, the difference in market value solely attributable to the Deceptive Sales Discounts.

### Conjoint Analysis: Overview of the Methodology

18. Conjoint analysis is a representative survey technique that permits an economist to analyze the value of various product attributes.[13] Conjoint analysis can be used to determine market valuation/attribute information for a given product or attribute. Conjoint analysis is founded on rigorous statistical and economic principles.[14] Indeed, conjoint analysis has been used in litigation contexts to calculate damages for years.[15]

---

[12] Dominick Deposition, at 138:5-140:20.

[13] Conjoint analysis as a discipline is quite broad, and can be used to facilitate many other sorts of research beyond the specific application that I discuss here.

[14] *See, e.g.*, Sawtooth Software technical papers, available online at https://www.sawtoothsoftware.com/support/technical-papers; *When "All Natural" May Not Be*, Analysis Group Forum (Winter 2013), https://www.analysisgroup.com/when-all-natural-may-not-be (last accessed December 3, 2024).

[15] *Applying Conjoint Analysis to Legal Disputes: A Case Study*, Wind, Yoram, *et al.*; *see, e.g., Khoday v. Symantec Corp.*, 2014 WL 1281600, at *10 (D. Minn. Mar. 13, 2014); *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 538-39 (S.D. Fla. 2015); *In re Lenovo Adware Litig.*, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016); *Guido v. L'Oreal, USA, Inc.*, 2014 WL 6603730, at *5, *10-14 (C.D. Cal. July 24, 2014); *Brown v. Hain Celestial Grp., Inc.*, 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18, 2014); *Microsoft v. Motorola, Inc.*, 904 F. Supp. 2d 1109, 1119-20 (W.D. Wash. 2012); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413-15 (S.D.N.Y. 2015); *Dzielak v. Maytag*, 2017 WL 1034197, at *6 (D.N.J. Mar. 17, 2017); *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1022 & n.6 (N.D. Cal. 2013); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 2018 WL 3126385 (N.D. Cal. June 26, 2018); *In re Arris Cable Modem Consumer Litig.*, 2018 WL 3820619, at *25-31 (N.D. Cal. Aug. 10, 2018); *Hadley v. Kellogg Sales Co.*, 2018 WL 3954587, at *11-16 (N.D. Cal. Aug. 17, 2018); *Martinelli v. Johnson & Johnson*, 2019 WL 1429653, at *3-4 (E.D. Cal. Mar. 29, 2019);


ECONOMICS AND
TECHNOLOGY, INC.

19. It is well known that conjoint analysis has a long history of use in the consumer goods industries.[16]

20. In a typical conjoint analysis, survey panelists are confronted with various choices of product attributes, prices, and other alternatives, and asked either to rank their preferences, or to choose the most preferred attribute or combination thereof.

21. Through conjoint analysis, by systematically varying the attributes of the product and observing how respondents react to the resulting product profiles, one can statistically measure information about the individual attributes.

22. Statistical methods (including regression analysis) are then applied to the survey responses to calculate attribute value.[17]

---

*Krommenhock v. Post Foods, LLC*, 2020 U.S. Dist. LEXIS 40463 (N.D. Cal. Mar. 9, 2020); *Hudock v. LG Elecs. USA, Inc.*, 2020 U.S. Dist. LEXIS 54994 (D. Minn. Mar. 30, 2020); *Koenig v. Vizio, Inc.*, No. BC702266 (Cal. Super. Ct. Aug. 24, 2020); *Banh v. American Honda Motor Co., Inc.*, 2020 WL 4390371 (C.D. Cal. July 28, 2020); *Kaupelis v. Harbor Freight Tools, Inc.*, 2020 U.S. Dist. LEXIS 186249 (C.D. Cal. Sept. 23, 2020); *McMorrow v. Mondelez Int'l Inc.*, 2021 WL 859137 (S.D. Cal. Mar. 8, 2021); *de Lacour v. Colgate-Palmolive Co.*, 2021 WL 1590208 (S.D.N.Y. Apr. 23, 2021); *Bailey v. Rite Aid Corp.*, 2021 WL 1668003 (N.D. Cal. Apr. 28, 2021); *Cardenas v. Toyota Motor Corp.*, No. 18-cv-22798, 2021 U.S. Dist. LEXIS 152920 (S.D. Fla. Aug. 12, 2021); *Prescod v. Celsius Holdings, Inc.*, No. 19STCV09321 (Cal. Super. Ct. Aug 2, 2021); *Bechtel v. Fitness Equipment Svcs., LLC*, No. 1:19-CV-726, 2021 WL 4147766 (S.D. Ohio Sept. 12, 2021); *Milan v. Clif Bar & Co.*, 2021 WL 4427427 (N.D. Cal. Sept. 27, 2021); *Testone v. Barlean's Organic Oils*, 2021 U.S. Dist. LEXIS 185896 (S.D. Cal. Sept. 28, 2021); *Johnson v. Nissan N. Am., Inc.*, 2022 WL 2869528, at *5 (N.D. Cal. July 21, 2022); *Sonneveldt v. Mazada*, 2022 WL 17357780 (C.D. Cal. Oct. 21, 2022); *Willis v. Colgate Palmolive Co.*, No. 19-cv-8542 JGB (RAOx) (C.D. Cal Jan. 5, 2023); *Chapman v. General Motors*, 2023 WL 2745161 (E.D. Mich. Mar. 31, 2023); *Gunaratna v. Dennis Gross Cosmetology LLC*, 2023 WL 2628620 (C.D. Cal. Mar. 15, 2023); *.Banks v. R.C. Bigalow, Inc.*, 2023 U.S. Dist. LEXIS 135167 (C.D. Cal. Jul. 31, 2023); *Bush v. Rust-Oleum Corp.*, 2024 U.S. Dist. LEXIS 20131 (N.D. Cal. Feb. 5, 2024); *Corbett v. Pharmacare U.S. Inc.*, 2024 U.S. Dist. LEXIS 58336 (S.D. Cal. Mar. 29, 2024); *Vancleave v. Abbott Laboratories*, Case No. 19CV345045 (Cal. Super. Ct., Santa Clara County Apr. 5, 2024); *Sinatro v. Barilla America, Inc.*, No. 22-cv-03460-DMR, Dkt. No. 78 (N.D. Cal. May 28, 2024); *Cadena v. Am. Honda Motor Co., Inc.*, No. CV 18-4007-MWF (PJWx), 2024 WL 4005097 (C.D. Cal. Jul. 2, 2024); *Swartz v. Dave's Killer Bread, Inc.,* No. 4:21-cv-10053-YGR (N.D. Cal. Sept. 20, 2024) (order granting class certification) (Dkt. No. 193); *Wallenstein v. Mondelez Int'l, Inc.*, No. 22-cv-06033-VC, 2024 WL 4293904 (N.D. Cal. Sept. 25, 2024); *Lessin, et al. v. Ford Motor Co.*, Case 3:19-cv-01082-AJB-AHG, ECF No. 202 (S.D. Cal. Nov. 7, 2024) (Order re: Summary Judgment and Class Cert).

[16] *See, e.g.*, *Getting Started with Conjoint Analysis: Strategies for Product Design and Pricing Research*, Bryan K. Orme, Research Publishers 2014 ("Getting Started with Conjoint").

[17]*See Getting Started with Conjoint*.

 ECONOMICS AND TECHNOLOGY, INC.

23. Conjoint analysis can be, and indeed has been, used to analyze the value and importance of product attributes. One recent study used conjoint analysis to determine "whether health claims (claims of health-promoting effects) of food products positively influence product price and consumer choices."[18] Prior to conducting the conjoint survey, the study finds that "[i]n general, consumers consider health and wholesomeness as important aspects of food quality."[19] The study then uses choice-based conjoint analysis to measure the effects of various product attributes on the price of a single product, green tea. The study examines only four product attributes: health claim, country of origin, the size of the product, and price. The study finds that the health claim on green tea is a positive, statistically significant purchase driver, and results in a price premium of approximately 20%.

24. In light of proposed FDA front-of-pack nutrition labeling standards, another study sought "to estimate the relative contribution of declared amounts of different nutrients to the perception of the overall 'healthfulness' of foods by the consumer."[20] The study determined that claims such as "this product has no saturated fat," "this product is fat free," and "this product is low in total fat" were among the 22 most important nutrient content claims. The study concluded that "[c]onjoint analysis can lead to a better understanding of how consumers process information about the full nutrition profile of a product, and is a powerful tool for the testing of nutrient content claims."

---

[18] *Estimating Consumers' Willingness to Pay for Health Food Claims: A Conjoint Analysis*, Mitsunori Hirogaki, International Journal of Innovation, Management and Technology, Vol. 4, No. 6, December 2013.

[19] *Id.*

[20] *Testing Consumer Perception of Nutrient Content Claims Using Conjoint Analysis*, Drewnowski, Adam *et al.*, Public Health Nutrition: 13(5): 688–694.



25.  An application of conjoint analysis to orange juice was used to evaluate which attributes of orange juice consumers value most.  Results of the study showed that vitamin C content was the most important purchase driver besides price.[21]

26.  The use of conjoint analysis in similar applications is too extensive to document exhaustively here.

27.  A paper that considers policy recommendations related to the use of fictious reference pricing notes: "It is now well accepted that many consumers get extra utility, beyond that associated with consuming a product, from purchasing it on deal and that the magnitude of this utility is a function of the size of the deal.  Firms have long known (or at least intuitively known) this; in response, they often feature the selling price relative to a reference price -- for example, a 'former' price -- to increase demand beyond the level solely induced by a lower price.  These two stylized facts have led some firms to artificially inflate reference or comparison prices in sale communications so as to increase consumers' perceived utility in its offerings, which in turn leads to greater demand and profits."[22]

28.  This paper further notes: "There is still a need to develop and refine methods for estimating the impact of fictitious pricing on consumer welfare, both at the individual and aggregate levels.  This could include conjoint analysis, lab studies, and field studies."[23]

29.  Another paper studying reference pricing notes that "Comparative price advertising offers consumers a basis for comparing the relative value of the product offering by suggesting a monetary worth for the product and any potential savings.  For example, the comparative price

---

[21] *Evaluation of Packing Attributes of Orange Juice on Consumers' Intention to Purchase by Conjoint Analysis and Consumer Attitudes Expectation*, Gadioli, I. L. et al., Journal of Sensory Studies 28 (2013):57-65.

[22] *Competition and the Regulation of Fictitious Pricing*, Staelin, R. et al., Journal of Marketing 2023, Vol. 87(6) ("Staelin") at 826 (citations omitted).

[23] *Id.*, at 843.



advertisement, 'regular price $10.00, on sale $7.99,' suggests a monetary worth of $10.00 and a savings of $2.01."[24]

30. Conjoint analysis, as a survey tool, does not rely on an existing data set but rather relies on data generated through the survey process. Common conjoint analysis software permits the administration of a representative sample survey, and the analysis of the results therefrom.

31. No individualized analyses or Class-Member-specific inquiries will be required. All relevant data needed to complete the conjoint analysis will be Class-wide, common evidence.

**Conjoint Survey: Design**

32. Any conjoint survey fielded in this case will follow the same general design principles and analysis plan as detailed below. Later in the report, I specify exemplar attribute and level specifications for conjoint analyses that can be used in this case.

33. It is standard survey practice to avoid indicating the sponsor and/or purpose of the survey to ensure respondents' objectivity and to make the respondent unaware of the sponsor and goal of the survey. No disclosure of the sponsor or the goal of the survey will be made. Because the survey will be administered via the Internet, respondents will not be exposed to human interviewers, thereby eliminating the possibility of the survey administrator communicating the sponsor or purpose of the survey and influencing the outcome.

34. Any survey will begin with an introduction that welcomes respondents to the survey, and asks several screening questions. Respondents will be presented with a CAPTCHA challenge to ensure that responses were not computer-generated. Respondents will be asked for their age and gender, and state of residence. Respondents will be asked a standard screening question about whether they or anyone in their household work for certain types of companies. Respondents who indicate that they or someone in their household work for a market research

---

[24] *Comparative Price Advertising: Informative or Deceptive?*, Grewal, D. et al.. Journal of Public Policy & Marketing, Spring 1992, Vol. 11, No. 1 ("Grewal") at 52.


ECONOMICS AND
TECHNOLOGY, INC.

company or advertising agency, or a company that manufactures or sells custom window treatments, will not be allowed to continue. Next, respondents will be asked if they have purchased, or considered purchasing, from a particular category of class products (custom window treatment product such as window shades, drapes, etc.) during the class period. Respondents that purchased, or considered purchasing, from such a category will be allowed to continue. Those that continue will then be asked to select where they have purchased or considered purchasing the product. Those that indicate a purchase or purchase consideration at The Shade Store or on the The Shade Store's website will be allowed to proceed.

35. The core portion of the survey uses "choice-based conjoint" ("CBC"). CBC is the most widely used type of conjoint.[25]

36. In the main part of the survey, respondents will be presented with a series of instructions and information about the conjoint tasks. The instructions will inform respondents that they should imagine that they are going to purchase a particular type of product, that they will be presented with three product choices, and that they must first select their preferred product among the three choices, and then indicate whether they would actually buy that product if given the chance to do so. Respondents will be instructed to assume:

- Any features not shown in the exercise are assumed to be the same across the possible product choices presented.

- Assume that all of the products shown are available in your preferred color or pattern.

- Pricing shown will be for a standard 30" x 36" window.

37. Next, respondents will be introduced to the product categories that will be included in the choice exercises. In general, these will include: Brand, Product Attributes relevant to the

---

[25] The Sawtooth Software Annual User Survey finds CBC continues to be the most commonly used approach, accounting for 78% of projects.


ECONOMICS AND
TECHNOLOGY, INC.

specific product category, List Price and Sales Discount, and Purchase Price.[26]  Respondents will be instructed that, other than the attributes within each of the above categories, please assume that all other features will be the same across the products that you will be shown.

38.  The main attribute/level of interest is the List Price and Sales Discount.  The other attributes, including other features are distractor attributes, and will be selected to be plausible, believable, and understandable.

39.  Respondents will then be introduced to the levels of each attribute, and provided with some basic information about those levels.

40.  In general, products will always be shown with a purchase price.  In some instances, the products will also be shown with the List Price and Sales Discount.  For example, one product profile might show a purchase price of $404, without showing any List Price or Sales Discount.  Another product profile will be shown with a List Price of $505, Sales Discount of 20% off, and corresponding purchase price of $404.

41.  After this information provision, respondents will move on to complete the CBC choice tasks.  Each respondent will be presented with 13 choice tasks.  Twelve such tasks are generated by the conjoint software in a randomized, balanced, orthogonal design.  One task is the same for all respondents, and is known as a fixed or "holdout" task.  Each choice task presents three class products with attributes at varying levels.  As is common practice, to avoid influencing respondents' answers and survey results, the attributes will be shown in a randomized order that will differ for each respondent, but remain consistent throughout the 13 choices presented to any one individual respondent.  Brand will always be shown first, and price will always be anchored last (with any List Price and Sales Discount shown just above the price).

42.  After completing all 13 choice tasks, respondents will be thanked for their input, and exited from the survey instrument.

---

[26] See para 79 below for additional detail about specific attributes and levels.

ECONOMICS AND
TECHNOLOGY, INC.

**Conjoint Survey: Pretesting the Design**

43. Prior to putting any survey into the field, the conjoint questionnaire will be pretested with 10 respondents. Following administration of the survey, pretest respondents are debriefed about the survey experience and questionnaire. I will conduct the pretest for quality control and quality assurance testing of the survey design; to validate that the survey questionnaire was programmed correctly to my specifications; to identify any survey questions that are unclear to respondents; and to analyze the data collection to identify any problems, such as unexpected missing response data or interview terminations. Pretest interviews will follow a structured script. Pretest response data is not included in the final conjoint analysis.

44. Through pretest interviews, I will test that respondents did not have difficulty with the questions and instructions; that they understood the choice exercise they were asked to perform; and that they looked at all or almost all of the features in making their choices; that they understood the written description of each feature; and that they found the choices realistic or plausible.

45. Additionally, I will test for demand artifacts, asking respondents about their beliefs about the sponsor and purpose of the survey.

46. Pretesting will reveal whether respondents understood the questions, instructions, and descriptions presented in the questionnaire and that the interview flowed smoothly. Based on my review of the pretest, I will either conclude that the survey instrument was reliable, or make any survey question wording changes to the survey questionnaire indicated by the pretest prior to conducting the full study.

**Conjoint Survey: Sample**

47. The sample will be drawn from U.S. residents, age 18+, who had purchased or considered purchasing at The Shade Store or on The Shade Store's website product during the


ECONOMICS AND
TECHNOLOGY, INC.

class period. Typically, conjoint surveys collect data from around 300 respondents if the goal of the research is to conduct robust quantitative research.[27]  Another rule of thumb for selecting a conjoint survey sample size is to set:

$$\frac{nta}{c} \geq 500$$

where $n$ is the number of respondents, $t$ is the number of tasks, $a$ is the number of alternatives per task (not including the none alternative), and $c$ is the number of analysis cells.[28]  For any such survey, I will sample at least $n=300$ respondents or more if necessary to match the formula above.  In general, respondents will answer $t=12$ randomized choice tasks of $a=3$ alternatives per task.  Typically, the highest number of levels is $c=7$ analysis cells.  The formula in this instance would evaluate to 1,543; well in excess of the minimum recommended amount.

**Conjoint Survey: Administration and Data Collection**

48.  I will use Sawtooth Software[29] for the programming of the questionnaire, data collection, and analysis of the survey results.  Sawtooth Software is the leading provider of conjoint analysis survey software.  The Sawtooth Lighthouse Studio program is widely used by academics and professionals around the world.

49.  I will retain Dynata[30] to provide me with the online survey vendor service of providing the respondent sample.  Based on my experience in the industry, the Dynata online panel sample is regarded as one of the most credible and reliable non-probability online panels

---

[27] *Getting Started with Conjoint*, at 69.

[28] *Id.*, at 68-69.  When considering main effects, $c$ is equal to the largest number of levels for any one attribute.

[29] https://sawtoothsoftware.com.

[30] "Dynata helps with every step of your research and marketing journey. Our dataset of more than 62 million consumers and business professionals, fully-permissioned with billions of verified data points, gives you access to a wide variety of audiences.  We can connect our data with your own and other sources, revealing the holistic picture of your customer and your market. Real people, ready to share their attitudes, behaviors and insights – the cornerstone for precise and trustworthy high-quality data." https://www.dynata.com/about/ (last accessed December 3, 2024).



ECONOMICS AND
TECHNOLOGY, INC.

having the necessary scale for this study.[31]  Dynata will refer respondents to the survey hosted through the Sawtooth Software survey system.

**Conjoint Survey: Analysis**

50.  The results of the survey will be first analyzed using Hierarchical Bayes regression analysis performed by the Sawtooth survey software to determine the "partworths" that are later used in the market simulation (which I discuss below).  This Bayesian analysis enhances predictive ability, making the conjoint analysis more reliable and valid.  It is the most commonly used estimation method for CBC analysis.  Hierarchical Bayes makes use of data from the overall sample of respondents when estimating the partworths.  Bayesian partworth estimates are best suited for calculating statistics at the market level, such as the average or median value of certain variables of interest, and for simulating the overall, aggregate behavior of the market.

51.  In this analysis, I will impose a constraint that the pricing data be monotonic, which is to say that there will be a negative slope to the utility for price: economic theory dictates that all else equal, people prefer to pay less than to pay more.

52.  Following the regression analysis, the results will be checked to determine the appropriateness of using the partworths to forecast market behavior, and for their predictive behavior.

53.  One such method is to determine the holdout performance, which measures how well the partworth estimates predict the actual choices made by survey respondents when looking at a subset of the choice sets not used in the estimation.  In other words, if the model is able to predict product choices for the one choice set that is "held out" from the data used for estimation, we can be more confident in the validity of the model.  In very simple terms, we ask the model, "Given the information obtained from the partworths estimated from the 12 randomized choice sets, how

---

[31] The Sawtooth Software Annual User Survey finds that a plurality of users selected Dynata for their primary online panel/web samples.



well can you predict the product choice in the holdout choice?" To get a valid indicator of holdout performance, I will use the Hierarchical Bayes analysis of the 12 randomized choice sets to predict the choices in the holdout set. A purely random guess would predict choices correctly one third of the time (given a choice of three products in the choice task). A hit rate in excess of double the chance rate (i.e., 66.67% in this instance) indicates exceptional performance.

54. I will also measure the holdout performance of this survey using mean absolute error ("MAE").

55. After the data have been processed by the regression analysis, and those results have been tested as described above, the results will be used in a market simulation.

**Conjoint Survey: Market Simulation**

56. After the data is processed by the regression analysis and checked for predictive power, I will conduct the measurement of the overpayment using a market simulation tool produced by Sawtooth Software.

57. The president of Sawtooth Software explains that:

> [T]he simulator is used to convert raw conjoint (partworth utility) data into something much more managerially useful: simulated market choices. Products can be introduced within a simulated market scenario and the simulator reports the percentage of respondents projected to choose each product. A market simulator lets an analyst or manager conduct what-if games to investigate issues such as new product design, product positioning, and pricing strategy. Market simulators are commercially available or can be constructed using spreadsheet programs.[32]

---

[32] Bryan Orme, Sawtooth Software, on "Market Simulators for Conjoint Analysis." https://www.sawtoothsoftware.com/download/techpap/introsim.pdf. *See also* Joel Huber et al., 2006. "Dealing with Product Similarity in Conjoint Simulations."


ECONOMICS AND TECHNOLOGY, INC.

58.  In short, a market simulation tool is a "choice laboratory" for estimating consumers' utilities for multiple real-world possibilities (e.g., any market overpayment paid as a result of a challenged misrepresentation).

59.  Forecasts based on such market simulations are sufficiently accurate such that firms routinely make decisions based on the results of these simulations.[33]

60.  The market simulation provides a statistically robust estimate of any price premium that purchasers paid solely as a result of the challenged Sales Discounts.  The market simulation enables the calculation of the economic market value of the Sales Discounts by simulating the market scenario where the purchase price is stated without a reference List Price and Sales Discount.  The results of the simulator are a market-wide result, not an average of individual preferences.

61.  The price premium is expressed as the percentage or amount of the sales price that is solely attributable to the Sales Discount.  For instance, an overpayment of 10% for a product with the Sales Discount sold for $500 is the same as stating that $50 is the price premium attributable to the Sales Discount.

62.  I will ground my analysis of the conjoint data in market reality by relying on the actual prices advertised and actual sales price data in selecting a market-based product price point for the simulation analysis.

63.  For the market simulation, I will compare a benchmark The Shade Store's class Product with a Sales Discount to an otherwise identical Product without.  I will then use the market simulator to simulate a condition where the price of the second product is reduced to the level where both products obtain equal market acceptance.  At this market equilibrium, the market is indifferent as between the Product with the Sales Discount at a higher price, and the Product without a discount at a lower price.  The overpayment will equal the difference between

---

[33] *Getting Started with Conjoint*, Chapter 10: Market Simulators for Conjoint Analysis.


ECONOMICS AND
TECHNOLOGY, INC.

the price in the real world and the but-for price that compensates for the removal of the Sales

Discount.[34]  The simulation will be run using the randomized first choice model.

64.  I will calculate the overpayment attributable to the Sales Discount as a percentage of

the total price of the Products to be applicable to the various retail price points in the

marketplace.

65.  The price premium can be applied to every sale of the product, and to every Class

Member, respectively.  In competitive markets for consumer goods like this one, the prices are

set by the market.  Just as a rising tide lifts all boats, a reduction in demand reduces prices

market-wide.  This is why the price premium percentage calculated by the conjoint survey will

apply to all Class Members market-wide regardless of the absolute price they paid, and

regardless of any individual Class Member's subjective valuation of the products.

**Conjoint Survey: Supply-Side Considerations**

66.  I considered supply-side factors when developing the conjoint survey.  First, unlike

in a Lanham Act or intellectual property litigation where a but-for quantity of sales may need to

be determined, in this litigation, the historic number of units sold is a fact, and in this litigation, it

would be antithetical to the concept of class definition to suggest that the quantity supplied be

anything other than the actual number of units sold by Defendant.  In other words, the conjoint

analysis will allow me to determine what the price would have been in a but-for world where

The Shade Store sold the same number of products it in fact sold to class members, but without

offering the accused Sales Discount, taking into account the existing, real-world, supply-side

considerations that actually existed during the class period.

67.  Furthermore, if one were to assume, *arguendo*, that Defendant would not have

lowered their price in the face of declining demand (indicating that Defendant priced above the

---

[34] This overpayment will be converted to a percentage for application to the sales of the Products.


ECONOMICS AND
TECHNOLOGY, INC.

market-clearing price), then the economic outcome would be that many or all of the purchases would not have taken place at all. As such, the overpayment determined using conjoint analysis are inherently conservative measures.

68. It is also an economic perversion for a defendant engaged in a litigation (with obvious conflict of interest) to simply state that it would never have adjusted its prices or would not have adjusted them enough so as to meet demand, and therefore damages should be set at zero or something less than actual economic damages. If this were permitted, any defendant could simply postulate its way out of economic damages.

69. I will take several steps to ensure that this survey is appropriately designed to measure the true market value of the price premium attributable to the Sales Discount, incorporating the supply side.

70. I will conduct research of actual retail sales and market data and include these real-world price points in the survey. These real-world transactions occur at prices that *already* reflect the supply-side factors then extant in the marketplace.

71. Another important supply-side factor that I account for is the fact that the quantity of the Products supplied is a known quantity, and fixed as a matter of history.

72. I also considered that the market for the Products is an "ordinary" market, subject to competitive pressures that manufacturers and retailers have identified as risks to their business. Window treatments are sold by many retailers. These are ordinary, traditional retailers that set their prices based upon current market conditions.

73. Defendant operates in a competitive market subject to competitive pressures. As Defendant's 30(b)(6) witness testified, "the Shade Store has lots of competitors."[35]

---

[35] Dominick Deposition, at 10:18-11-2.


ECONOMICS AND
TECHNOLOGY, INC.

74. Hunter Douglas Holdings Limited, a competitor or The Shade Store and manufacturer of custom window treatments, reports in its 2023 annual report to the UK's Companies House, that its operational success was "sensitive to external factors," including:

> Macroeconomic trends (e.g., interest rates and inflation) and resulting effects on consumer confidence. Generally, these factors impact housing sales, rates of new construction (both residential and commercial) and repair and remodelling activity, which then impacts consumer demand for our products.[36]

75. Home Depot, Inc, a retailer of custom window coverings through its own websites blinds.com, justblinds.com and americanblinds.com, discusses in its 2023 Annual Report the increased competitive pressures they face in the market:

> Our industry is highly competitive, highly fragmented, and evolving. As a result, we face competition for customers for our products and services from a variety of retailers, suppliers, service providers, and distributors and manufacturers that sell products directly to their respective customer bases. These competitors range from traditional brick-and-mortar, to multichannel, to exclusively online, and they include a number of other home improvement retailers; local, regional and national hardware stores; electrical, plumbing and building materials supply houses; and lumber yards. With respect to some products and services, we also compete with specialty design stores, showrooms, discount stores, paint stores, specialty and mass digital retailers, warehouse clubs, MRO distributors, home décor retailers, and other retailers, as well as with providers of home improvement services and tool and equipment rental. The internet facilitates competitive entry, price transparency, and comparison shopping, increasing the level of competition we face. We compete primarily based on customer experience; price; quality; product availability, assortment, and innovation; and delivery options, both in-store and online. We also compete based on store location and appearance, presentation of merchandise, and ease of shopping experience throughout every step of the project, from inspiration and research to any post-purchase support. Our Pros also look for dedicated sales support, competitive credit and pricing options,

---

[36] Hunter Douglas Holdings Limited, Annual report and financial statements Year ended: December 31, 2023, filed with the United Kingdom's Companies House, available at https://find-and-update.company-information.service.gov.uk/company/14453520/filing-history (last accessed December 4, 2024). *See* Deposition of Jorge Mendoza, October 22, 2024, ("Mendoza Deposition"), at 130:15-18.


ECONOMICS AND TECHNOLOGY, INC.

project planning tools, product depth and job lot quantities, particularly for their complex purchase needs. Furthermore, customers are increasingly shopping online and seeking faster and/or guaranteed delivery times, low-price or free shipping, and/or convenient pickup options. Our ability to be competitive on delivery and pickup times, options and costs depends on many factors, including leveraging the momentum of our investments in our supply chain and our interconnected retail capabilities to further enhance the customer shopping experience. Failure to successfully manage these factors and offer competitive delivery and pickup options could negatively impact our profit margins and the demand for our products.[37]

76. The market for window treatments is not price regulated. The market for the Class Products is not restricted.

77. Pricing in the window treatment market operates as in an ordinary market: prices are established in the marketplace, and consumers can choose to buy at the prices set in the market or not; there are no insurance intermediaries, co-payments, or other such complexities.

78. In addition to these factors that influenced the survey design, after the completion of the survey, the results will be calculated using Hierarchical Bayes regression. The use of Hierarchical Bayes regression provides for, amongst other factors, the ability to estimate better market-level results from a conjoint survey.

**Conjoint Attributes and Levels for use in this case**

79. Below I present a collection of product attributes and levels that can be used in a conjoint analysis. To develop these attributes and levels, I reviewed documents produced in the normal course of this litigation, and the Defendant's website, as well as the websites of competitor products and retailers of similar products.

---

[37] Home Depot, Inc., 2023 Annual 10-K, filed with the Securities and Exchange Commission, March 14, 2024.



| Shade Store Conjoint -- Attributes and Levels | |
|---|---|
| Brand | The Shade Store, Hunter Douglas, Smith & Noble |
| Type | Shade, Blind, Drape |
| Material | Cotton, Wool Blend, Linen, Sunbrella, Polyester, Fiberglass Vinyl Blend, Woven Wood |
| Light Control | Light Filtering, Blackout, Solar Shade |
| Operation | Manual Operation, Motorized Operation |
| In Home Services | In Home Design, In Home Measuring, [Blank] |
| Delivery | Free Delivery, Free Delivery and Installation, [Blank] |
| Guarantee | Guaranteed Fit, [Blank] |
| Warranty | Installation Only, Lifetime Limited, 3-Year Limited, [Blank] |
| Discount | Example: Prices From $XX, 15/20% off; [Blank] |
| Price | From $XX-XX (Range of list prices, Sales discounts, and prices paid to be determined when discovery is complete, and the precise class definition is know) |

80. A price calculator, similar to that offered by Defendant on its website, will be made available so that respondents will be able to see the impact on price of their own specific window size. The data to support such a feature can come from a review of Defendant's website, the pricing data provided by Defendant (which includes sizing data); and/or Defendant's own pricing algorithm if so provided during the course of discovery.

**Calculation of Price Premium Damages**

81. After completing all of the work described above, calculating total Price Premium Damages in this litigation will be straightforward.

82. With the price difference due to the Deceptive Sales Discount determined on a percentage basis, the calculation of class-wide damages for any Product will be:



ECONOMICS AND
TECHNOLOGY, INC.

$$\% Price\ Premium: \times \$Units\ Sold\ = Damages$$

83. These calculations can be performed on a class-wide basis, across different geographies, and for any defined time period, including the proposed Class Period(s) in this litigation.

## VI. EXPECTATION DAMAGES

84. I have been advised that Plaintiffs seek expectation damages in connection with the Deceptive Sales Discounts. I understand that Plaintiffs allege that class members expected to receive a product with the "list price" value with at least 15% or 20% savings, but due to the alleged deception, class members did not receive the benefit of the true percentage savings they expected. To that end, Plaintiffs have asked me whether it would be possible to calculate the difference between the "list price" and the price with either a 15% or 20% discount applied, or a combination of both based upon a date range. Such expectation damages can be calculated with the formula:

$$List\ Price\ x\ \%Discount\ = Expectation\ Damages$$

85. Based upon my review of the Complaint and the documentary evidence, it will be possible to perform such calculations on a class-wide basis using the Defendant's own business records.[38] Defendant's line item reports include all of the information needed to perform this calculation for each product sold to class members, including the date of the order and the list price for each product in the order. It also includes information showing whether a discount was applied to the order.

---

[38] *See, e.g.,* TSS 0012284; TSS 0038115.


ECONOMICS AND
TECHNOLOGY, INC.

## VII.  PRODUCT RETURN MODEL

86.  I understand that Plaintiffs allege that, as an alternative method of restitution damages, class members should be able to return products for a refund.  For this model, I can calculate, on a classwide basis, the original purchase prices that class members paid and that would need to be refunded to each class member who returns the products using The Shade Store's line item reports, which include this information as discussed above.

## VIII.  ADDITIONAL CALCULATIONS

87.  I was asked whether, I could calculate the following metrics using Defendant's data: (a) the median, average, and modal historical discount off of the list price applied to class products; (b) any of the forgoing metrics for a subset of class products, such as Roller Shades or Flat Roman Shades of a particular fabric or color; (c) the proportion of consumers that received at least a 15% or 20% discount.  Using Defendant's data, for any given transaction or set of transaction, I can calculate each of these metrics for a look-back period of 3 months or any other time period available in the transactional data.

88.  At this stage of the case, I was asked to compile summary statistics responsive to items (a) and (c) above based upon the Shade Store's data production as discussed above.  In conducting my analysis, I relied on testimony by The Shade Store's 30(b)(6) representative that the data field "ProductTotal" was the list price of the product, and that the data field "SubTotal," minus the fields "Shipping" and "Surcharge," would reflect the discounted amount paid (the "Adjusted Subtotal").[39]  In conducting my analysis, I was asked to exclude observations where the "ProductTotal" and the "Adjusted Subtotal" were both $0.  Attached hereto as Exhibit 3 are the summary statistics that resulted from my analysis subject to the assumptions noted above.

---

[39] Dominick Deposition, at 134:2-5; 135:19-136:24.



ECONOMICS AND
TECHNOLOGY, INC.

## IX.  RESERVATION OF RIGHTS

89.  My testimony is based upon the information and data presently available to me. Additional, different and/or updated data including market research data may be obtained in advance of trial.  I therefore reserve the right to amend or modify my testimony.


### VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief, and that this declaration was executed at Boston, Massachusetts this 23rd day of January 2025.

_____

Colin B. Weir



**Exhibit 1**

**Statement of Qualifications
of**

**COLIN B. WEIR**

**Statement of Qualifications**

**COLIN B. WEIR**

Colin B. Weir is President at Economics and Technology, Inc. Mr. Weir conducts economic, statistical, and regulatory research and analysis, and testifies as an expert witness. Mr. Weir's work involves econometric and statistical analysis, multiple regression, surveys, statistical sampling, micro- and macroeconomic modeling, accounting and other economic analysis. Such analysis often involves analysis of databases, call detail records, and other voluminous business records. Mr. Weir is familiar with common statistical and econometric software packages such as STATA and Sawtooth Software. Mr. Weir assists with analysis of economic, statistical and other evidence; and preparation for depositions, trial and oral examinations. Mr. Weir has provided expert testimony before federal and state courts, the FCC, and state regulatory commissions, and has contributed research and analysis to numerous ETI publications and testimony at the state, federal, and international levels. Prior to joining ETI, Mr. Weir worked at Stop and Shop Supermarkets as a cash department head, grocery/receiving clerk, and price-file maintenance head.

Mr. Weir's experience includes work on a variety of issues, including: economic harm and damage calculation; liquidated damages provisions; lost profits; false claims; diminution in value; merger/antitrust analysis; Early Termination Fees (ETFs); Late Fees; determination of Federal Excise Tax burden; and development of macroeconomic analyses quantifying the economic impact of corporate actions upon the US economy and job markets.

Mr. Weir has conducted research and analysis in numerous litigation and regulatory matters on behalf of corporate, government and individual clients, including AT&T, MTS Allstream (Canada), The US Department of Justice, Office of the Attorney General of Illinois, Pennsylvania Department of Revenue, Thomas v. Global Vision, (class action litigation, Superior Court, County of Alameda), Ayyad v. Sprint (class action litigation, Superior Court, County of Alameda), Forcellati v. Hylands (class action, U.S. District Court, Central District of California), and Ebin v. Kangadis Foods (class action, U.S. District Court, Southern District of New York).

Mr. Weir holds an MBA with honors from Northeastern University. He also holds a Bachelor of Arts degree *cum laude* in Business Economics from The College of Wooster.

Mr. Weir is a member of the Boston Economic Club, and a business member of the Boston Bar Association. Mr. Weir has served on the Board of Trustees of the Waring School, and served as the comptroller for the Sybaris Investment Partnership.

ECONOMICS AND TECHNOLOGY, INC.

**Publications and Testimony of Colin B. Weir**

Mr. Weir has co-authored the following:

*Interoperability and Spectrum Efficiency: Achieving a Competitive Outcome in the US Wireless Market* (with Lee L. Selwyn) Economics and Technology, Inc., prepared on behalf of United States Cellular Corporation, July 2012.

*The Price Cap LECs' "Broadband Connectivity Plan": Protecting Their Past, Hijacking the Nation's Future* (with Lee L. Selwyn and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of United States Cellular Corporation, September 2011.

*Regulation, Investment and Jobs: How Regulation of Wholesale Markets Can Stimulate Private Sector Broadband Investment and Create Jobs* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of Cbeyond, Inc., Covad Communications Company, Integra Telecom, Inc., PAETEC Holding Corp, and tw telecom inc., February 2010.

*Revisiting Us Broadband Policy: How Re-regulation of Wholesale Services Will Encourage Investment and Stimulate Competition and Innovation in Enterprise Broadband Markets*, (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, February 2010.

*Longstanding Regulatory Tools Confirm BOC Market Power: A Defense of ARMIS* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of the AdHoc Telecommunications Users Committee, January 2010.

*Choosing Broadband Competition over Unconstrained Incumbent Market Power: A Response to Bell and TELUS* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, April 2009.

*The Role of Regulation in a Competitive Telecom Environment: How Smart Regulation of Essential Wholesale Facilities Stimulates Investment and Promotes Competition* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, March 2009.

*Special Access Overpricing and the US Economy: How Unchecked RBOC Market Power is Costing US Jobs and Impairing US Competitiveness* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of the AdHoc Telecommunications Users Committee, August 2007.

*The AWS Spectrum Auction: A One-Time Opportunity to Introduce Real Competition for Wireless Services in Canada* (with Lee L. Selwyn and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, June 2007.

*Comparison of Wireless Service Price Levels in the US and Canada* (with Lee L. Selwyn) Economics and Technology, Inc., prepared on behalf of MTS Allstream, May 2007.



*Hold the Phone! Debunking the Myth of Intermodal Alternatives for Business Telecom Users In New York* (with Susan M. Gately and Lee L. Selwyn) Economics and Technology, Inc., prepared for the UNE-L CLEC Coalition, August 2005.


Mr. Weir has submitted the following testimony during the last four years:

**Superior Court of the State of California, County of Santa Clara,** *Makenzie Smith, individually and on behalf of all others similarly situated, v. LinkedIn Corporation*, Case No. 22CV404069, on behalf of Bursor & Fisher, P.A., Declaration submitted on January 13, 2025.

**United States District Court, Eastern District of Virginia, Richmond Division,** *James Dolan and James Morris, individually and on behalf of all others similarly situated, v. Ford Motor Company*, Case No. 1:19-cv-05045-REP, on behalf of Consumer Litigation Associates, PC, Declaration submitted on January 3, 2025.

**United States District Court, Northern District of California,** *Nea Vizcarra, individually and on behalf of all others similarly situated, v. Michaels Stores, Inc.*, Case No. 5:23-cv-468-PCP, on behalf of Dovel & Luner, LLP, Declaration submitted on November 15, 2024; Deposition on January 8, 2025.

**Superior Court of the State of California, for the County of Alameda,** *David Livingston, individually and on behalf of all other persons similarly situated, v. Mercedes-Benz USA, LLC,* Case No. RG21109711, on behalf of Bursor & Fisher, P.A., Declaration submitted on November 14, 2024; Deposition on December 16, 2024.

**United States District Court, for the Northern District of California,** *Melissa Sanchez, Beverly Cassel, as individuals, on behalf of themselves, the general public and those similarly situated, v. Nurture, Inc.*, Case No. 5:21-cv-08566-EJD, on behalf of Gutride Safier, LLP, Declaration submitted on October 25, 2024; Deposition on December 12, 2024.

**United States District Court, Northern District of California,** *Colby Tunick, individually and on behalf of all others similarly situated, v. Takara Sake USA Inc.*, Case No. 3:23-cv-00572-TSH, on behalf of Clarkson Law Firm, Declaration submitted on October 17, 2024; Deposition on November 22, 2024.

**United State District Court, Northern District of California,** *Venus Yamasaki, on behalf of herself and all others similarly situated, v. Natrol, LLC*, Case No. 3:23-cv-00182-JD, on behalf of Spangenberg Shibley & Liber LLP, Declaration submitted on October 11, 2024; Deposition on December 2, 2024.



**United States District Court, Northern District of California,** *Jennifer Vlacich, Brenda Robert, Elena Nacarino, Ana Krstic, Christina Vink, Lora Grodnick, Lisa Malara, and Teena Stambaugh, individually and on behalf of all others similarly situated, v. Del Monte Foods, Inc.*, Case No. 4:22-cv-00892-JST, on behalf of Dovel & Luner, LLP, Declaration submitted on August 30, 2024; Deposition on October 8, 2024.

**United States District Court, Northern District of Georgia, Atlanta Division,** *Kellie Carder et al., on behalf of themselves and all others similarly situated, v. Graco Children's Products, Inc.*, Case No. 2:20-cv-00137-LMM, on behalf of Milberg Coleman Bryson Phillips Grossman, LLC, Declaration submitted on August 16, 2024; Supplemental Declaration submitted on January 17, 2025.

**United States District Court, Northern District of California,** *Krystal Lopez and Damany Browne, individually and on behalf of all others similarly situated, v. Zarbee's Inc.*, Case No. 3:22-04465-CRB, on behalf of Dovel & Luner, LLP, Declaration submitted on August 2, 2024; Deposition on August 27, 2024.

**United States District Court, Southern District of New York,** *Tanysha Newman, individually and on behalf of all others similarly situated, v. Bayer Corporation and Bayer Healthcare, LLC*, Case No. 7:22-cv-07087-KMK-AEK, on behalf of Bursor & Fisher, P.A., Declaration submitted on July 18, 2024; Deposition on September 9, 2024.

**In the United States District Court, for the Northern District of Oklahoma,** *In re: Genentech, Inc. Herceptin (Trastuzumab) Marketing and Sales Practices Litigation*, MDL Docket No. 16-MD-2700, on behalf of GableGotwals, Declaration submitted on July 15, 2024; Deposition on September 4, 2024.

**United States District Court, Southern District of New York,** *Casey E. Hall-Landers, individually and on behalf of all others similarly situated, v. New York University*, Case No. 1:20-cv-03250, on behalf of Bursor & Fisher, P.A., Declaration submitted on June 21, 2024; Reply Declaration submitted on October 30, 2024.

**United States District Court for the Central District of California, Eastern Division,** *Steven Hernandez, individually and on behalf of all others similarly situated, v. Radio Systems Corporation*, Case No.: 22-cv-01861-JGB-KK, on behalf of Schubert Jonckheer & Kolbe, Declaration submitted on June 17, 2024; Declaration submitted on July 31, 2024; Deposition on November 1, 2024.

**United States District Court for the Southern District of California,** *Linda Sunderland and Benjamin Binder, individually and on behalf of all others similarly situated, v. Pharmacare U.S., Inc., a Delaware Corporation*, Case No.: 3:23-cv-01318-JES-BGS, on behalf of Milberg Coleman Bryson Phillips Grossman, LLC, Declaration submitted on June 3, 2024.


ECONOMICS AND TECHNOLOGY, INC.

**United States District Court for the Northern District Of California,** *Martha Valentine, Ruby Cornejo, and Tiffany Avino, each an individual, on behalf of themselves, the general public, and those similarly situated, v. Crocs, Inc.*, Case No. 3:22-cv-07463-TLT, on behalf of Gutride Safier, LLP, Declaration submitted on May 31, 2024; Reply Declaration submitted on August 21, 2024.

**In the United States District Court for the Northern District of California,** *David Wallenstein, Montgomery Summa, individually and on behalf of all others similarly situated, v. Mondelez International, Inc., a Virginia corporation, Mondelez Global, LLC, a Delaware limited liability company, and Nabisco, Inc., a New Jersey corporation*, Case No. 3:22-cv-6033, on behalf of Fox Law APC, Declaration submitted on May 24, 2024; Deposition on June 27, 2024; Reply Declaration submitted on July 12, 2024; Reply Declaration submitted on August 9, 2024.

**United States District Court, Western District of Wisconsin,** *John Bankhurst, Pamela Anderson, Jonathan Zang, and Jesse Karp, individually and on behalf of all others similarly situated, v. Sub-Zero Group, Inc. and Wolf Appliance, Inc.*, Case No. 3:23-cv-253, on behalf of Dovel & Luner, LLP, Declaration submitted on May 17, 2024; Deposition on June 18, 2024.

**United States District Court, Eastern District of New York,** *Claudia Newton and Brandy Leandro, on behalf of themselves and all others similarly situated, v. R.C. Bigelow, Inc., and Does 1 through 10*, Case No.: 2:22-cv-05660-LDH-SIL, on behalf of The Wand Law Firm, Declaration submitted May 16, 2024; Rebuttal Declaration submitted on August 8, 2024.

**United States District Court, Northern District of Illinois, Eastern Division,** *Charlotte Willoughby, Lakendrea Camille Mcnealy, Shaylynn Doxie, Brittney Gray, Kataleena Helmick, Lani Johnston, Ashley Popa And Deniege Revord, individually and on behalf of a class of similarly situated individuals, v. Abbott Laboratories*, Case No. 1:22-cv-01322, on behalf of Lockridge Grindal Nauen P.L.L.P., Declaration submitted on April 12, 2024; Deposition on May 15, 2024; Reply Declaration submitted July 31, 2024.

**In the United States District Court, Northern District of California**, *Aaron Brand, John Flodin, individually and on behalf of all others similarly situated, v. Central Garden & Pet Company, a Delaware corporation, Breeder's Choice Pet Foods, Inc., and Does 1-50, inclusive*, Case No.: 4:21-cv-01631-JST, on behalf of Fox Law APC, Declaration submitted on March 15, 2024; Deposition on June 11, 2024; Reply Declaration submitted on August 20, 2024.

**United States District Court, Central District of California**, *Tristan Hurd and Ken Dimicco, individually and on behalf of all others similarly situated, v. G.Skill International Enterprise Co., LTD., G.Skill USA, Inc., Racerspeed, Inc., and Neuteck, Inc.*, Case No. 2:22-cv-00685-SSS-MAR, on behalf of Dovel & Luner, LLP, Declaration submitted on March 15, 2024.

ECONOMICS AND TECHNOLOGY, INC.

**In the United States District Court for the Western District of Virginia**, *Wendy Prince, individually and on behalf of all others similarly situated, v. Johnson Health Tech Trading, Johnson Health Tech Retail, Inc., and Johnson Health Tech, Inc.*, Civil Action No. 5:22-cv-00035, on behalf of Milberg Coleman Bryson Phillips Grossman, LLC, Declaration submitted on February 29, 2024; Deposition on June 7, 2024.

**In the United States District Court, for the Southern District of Ohio, Eastern Division,** *Judy Kirkbride and Beeta Lewis, individually and on behalf of all others similarly situated, v. The Kroger Co.*, Case No. 2:21-cv-00022-ALM-EPD, on behalf of Bursor & Fisher, P.A., Declaration submitted on February 23, 2024; Deposition on May 2, 2024; Reply Declaration submitted on July 25, 2024.

**United States District Court, for the Southern District of New York,** *Joseph Wolf, Carmen Wolf, on behalf of themselves and those similarly situated, v. Dolgen New York LLC*, Case No.: 7:23-cv-00558-PMH, Milberg Coleman Bryson Phillips Grossman, LLC, Declaration submitted on February 9, 2024; Supplemental Declaration filed March 20, 2024; Deposition on March 25, 2024.

**United States District Court, Southern District of California,** *Heather Turrey, Oliver Fiaty, Jordan Hernandez, and Jeffrey Sazon, individually, and on behalf of all others similarly situated, v. Vervent, Inc. fka First Associates Loan Servicing, LLC; Activate Financial, LLC; David Johnson; and Laurence Chiavaro*, Case No. 3:20-cv-00697-DMS-AHG, on behalf of Blood, Hurst, & O'Reardon, LLP, Declaration submitted on February 2, 2024.

**United States District Court, Southern District of California,** *William Lessin and Carol Smalley et al, on behalf of themselves and all others similarly situated, v. Ford Motor Company*, Case No. 19-cv-1082-AJB-WVG , on behalf of McCune Law Group, Declaration submitted on December 1, 2023; Deposition on January 19, 2024; Reply Declaration submitted on April 12, 2024.

**United States District Court, Northern District of California,** *Thomas Iglesias, David Salazar, Olivia Thurman, and Bethany Torbert, individually and on behalf of all others similarly situated, v. For Life Products, LLC*, Case No. 3:21-cv-01147-TSH, on behalf of Clarkson Law Firm, Declaration submitted on November 29, 2023; Deposition on January 4, 2024.

**United States District Court, Northern District of California,** *Matthew Sinatro and Shane Winkelbauer, individually and on behalf of all others similarly situated, v. Welch Foods Inc., A Cooperative and Promotion in Motion, Inc.*, Case No. 22-cv-07028-JD, on behalf of Clarkson Law Firm, Declaration submitted on November 20, 2023; Reply Declaration submitted on December 14, 2023; Deposition on December 20, 2023; Supplemental Declaration filed March 5, 2024.

ECONOMICS AND TECHNOLOGY, INC.

**United States District Court, Northern District of California,** *David Swartz, as an individual, on behalf of himself, the general public and those similarly situated, v. Dave's Killer Bread, Inc., and Flowers Foods, Inc.*, Case No.: 4:21-cv-10053-YGR, on behalf of Gutride Safier, LLP, Declaration submitted on November 17, 2023; Deposition on January 23, 2024; Reply Declaration submitted on March 22, 2024.

**United States District Court, District of New Jersey,** *Thomas Niemczyk, individually, and on behalf of a class of similarly situated individuals, Pro Custom Solar LLC, D/B/A Momentum Solar*, Case No. 2:19-cv-07846-ES-MAH; *Herbert Walters, Rick Hill, and Barry Wolford, individually, and on behalf of a class of similarly situated individuals, v. Pro Custom Solar LLC, D/B/A Momentum Solar*, Case No. 2:22-cv-00247-ES-MAH, on behalf of Bursor & Fisher, P.A., Declaration submitted on October 16, 2023.

**United States District Court, Northern District of California,** *Steven C. Johnson, an individual, on behalf of himself and all others similarly situated, v. GLOCK, INC., a Georgia Corporation; Glock Ges.m.b.H, an Austrian entity; John and Jane Does I through V; ABC Corporations I-X, XYZ Partnerships, Sole Proprietorships and/or Joint Ventures I-X, Gun Component Manufacturers I-V*, CASE NO.: 3:20-cv-08807-WHO, on behalf of Lewis and Lewis Trial Lawyers, PLC, Declaration submitted October 12, 2023; Reply Declaration submitted on April 11, 2024.

**United States District Court, Northern District of California,** *Kenneth Glassman, individually and on behalf of all others similarly situated, v. Edgewell Personal Care, LLC*, Case No. 3:21-cv-07669-RS, on behalf of Bursor & Fisher, P.A., Declaration submitted on September 14, 2023; Deposition on November 8, 2023; Reply Declaration submitted on February 12, 2024.

**United States District Court, for the Northern District of California, San Francisco,** *Tracy Howard, Adina Ringler, and Trecee Artis on behalf of themselves and those similarly situated, v. Hain Celestial Group, Inc., d/b/a Earth's Best*, Case No. 3:22-cv-00527-VC, on behalf of Gutride Safier LLP, Declaration submitted on September 5, 2023; Deposition on October 12, 2023; Reply Declaration submitted on December 13, 2023.

**Superior Court of the State of California, for the County of Alameda, Northern Division,** *Patricia Bland and Edward White, individually and on behalf of all others similarly situated, v. Premier Nutrition Corporation; and DOES 1-25, inclusive*, Case No. RG19002714, on behalf of Blood, Hurst, & O'Reardon, LLP, Deposition on September 1, 2023.

**United States District Court, Northern District of California,** *Antonio Mckinney, Clint Sundeen, and Joseph Alcantara, each individually and on behalf of all others similarly situated, v. Corsair Gaming, Inc.*, Case No. 3:22-cv-00312-CRB, on behalf of Dovel & Luner, LLP, Declaration submitted on September 1, 2023; Deposition on January 9, 2024.

ECONOMICS AND TECHNOLOGY, INC.

**United States District Court, Northern District of California,** *Matthew Sinatro, and Jessica Prost, individually and on behalf of all others similarly situated, v. Barilla America, Inc.*, Case No: 4:22-cv-03460, on behalf of Clarkson Law Firm, Declaration submitted on August 30, 2023; Reply Declaration submitted on February 7, 2024.

**United States District Court, for the Central District of California,** *Kathleen Cadena, et al., v. American Honda Motor Company, Inc.*, Case No. 2:18-cv-04007-MWF-MAA, on behalf of Gibbs Law Group, LLP, Declaration submitted on August 11, 2023; Deposition on September 27, 2023; Declaration submitted on December 23, 2024.

**United States District Court, for the Eastern District of Michigan,** *Edward Pistorio, Paul Murdock, Daniel Przekop, Hasan Aktulga, Sandra and Thomas Kloszewski, Randall Courtney, Corey Gerritsen, Sara Elice, Justin Bagley and Elizabeth Bagley, and Marcus Swindle on behalf of themselves and all others similarly situated, v. FCA US LLC*, Case No.: 2:20-cv-11838-SFC-RSW, on behalf of Capstone Law APC, Declaration submitted on July 31, 2023; Deposition on September 13, 2023.

**United States District Court, District of Minnesota,** *Teeda Barclay, Jay Ovsak, and Nicole Nordick, individually, and on behalf of others similarly situated, v. iFIT Health & Fitness, Inc. f/k/a Icon Health & Fitness, Inc., and Nordictrack, Inc.*, Case No. 0:19-cv-02970-ECT-DTS, on behalf of Markovits, Stock & DeMarco, LLC, Declaration submitted on July 14, 2023; Deposition on August 9, 2023; Declaration submitted on January 2, 2024.

**United States District Court, Eastern District of Michigan, Southern Division,** *Bobby Roe, et al., individually and on behalf of all others similarly situated, v. Ford Motor Company*, Case No. 2:18-cv-12528-LGM-APP, on behalf of Kessler Topaz Meltzer & Check LLP, Declaration submitted on June 28, 2023.

**United States District Court, for the Central District of California, Eastern Division**, *Sarah McCracken, Individually and on behalf of all others similarly situated, v. KSF Acquisition Corporation*, Case No. 5:22-cv-01666, on behalf of Schubert Jonckheer & Kolbe, Declaration submitted on May 24, 2023.

**United States District Court, Northern District of California, Oakland Division,** *Jonathan Rusoff and Joseph Gambino, on behalf of themselves and all others similarly situated, v. The Happy Group, Inc., a corporation; and DOES 1 through 10, inclusive*, Case No.: 4: 21-cv-08084-YGR, on behalf of The Wand Law Firm, Declaration submitted on April 11, 2023; Deposition on May 10, 2023; Reply Declaration submitted on July 18, 2023.

ECONOMICS AND
TECHNOLOGY, INC.

**United States District Court, Northern District of Illinois,** *Justin O'Connor, Stanislaw Zielinski, Daniel Fair, Bryan Smith, Jason Steen, William Fiedler, Michael Barcelona, Robert Marino, Brian Dougherty, Susan Heller, Victor M. Orndorff, and Michael McDonald on behalf of themselves and all others similarly situated, v. Ford Motor Company*, Case No. 1:19-cv-05045, on behalf of Milberg Coleman Bryson Phillips Grossman, LLC, Declaration submitted on March 30, 2023; Reply Declaration submitted on June 1, 2023; Deposition on June 15, 2023.

**United States District Court, Northern District of California, Oakland Division,** *In re: Plum Baby Food Litigation*, Case No. 21-cv-00913-YGR, on behalf of Lockridge Grindal Nauen P.L.L.P., Declaration submitted on December 20, 2022; Deposition on February 27, 2023; Declaration submitted on September 29, 2023.

**United States District Court, Northern District of California,** *Lisa M. Moore, individually and on behalf of all others similarly situated, v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC; Pfizer Inc.*, Case No. : 4:20-cv-09077-JSW, on behalf of Clarkson Law Firm and Moon Law APC, Declaration submitted on December 7, 2022; Deposition on April 13, 2023.

**United States District Court, Southern District of California,** *Montiqueno Corbett, Damaris Luciano, and Rob Dobbs, individually and on behalf of all others similarly situated, v. Pharmacare U.S., Inc.*, Case No.: 3:21-cv-00137-GPC-AG, on behalf of Milberg LLC, Declaration submitted on September 30, 2022; Declaration submitted on March 22, 2023; Deposition on April 10, 2023; Supplemental Declaration submitted on April 24, 2023; Declaration submitted on October 30, 2024.

**In the United States District Court, for the Eastern District of Texas, Sherman Division,** *William Squires, Jesse Badke, Ahmed Khalil, Michelle Nidever, John Murphy, Kevin Neuer, Nicholas Williams and Donna Sue Scott, on behalf of themselves and all others similarly situated, v. Toyota Motor Corp, Toyota Motor North America, Inc. and Toyota Motor Sales, U.S.A., Inc.*, Case No.: 4:18-cv-00138, on behalf of Berger Montague, P.C., Declaration submitted September 29, 2022; Deposition on October 27, 2022; Reply Declaration submitted December 21, 2022.

**United States District Court, Northern District of California,** *Anthony Bush, individually and on behalf of all others similarly situated, v. Rust-Oleum Corporation* Case No.: 3:20-cv-03268-LB, on behalf of Clarkson Law Firm and Moon Law, Declaration submitted on September 27, 2022; Deposition on February 8, 2023.

**United States District Court, Southern District of California,** *William D. Petterson, individually and on behalf of all others similarly situated, v. Circle K Stores Inc.*, Case No. 3:21-cv-00237-RBM-BGS, on behalf of Bursor & Fisher, P.A., Declaration submitted on September 22, 2022; Deposition on October 11, 2022.


ECONOMICS AND TECHNOLOGY, INC.

**Superior Court of the State of California, For the County Of Santa Clara,** *Elizabeth J. VanCleave, and Katherine Hassan, individually and on behalf of a class of similarly situated individuals, v. Abbott Laboratories*, Case No. 19CV345045, on behalf of Goldstein, Borgen, Dardarian & Ho, Declaration submitted on September 19, 2022; Reply Declaration submitted on January 10, 2023; Deposition on February 1, 2023; Declaration submitted on August 29, 2024; Deposition on October 22, 2024; Supplemental Declaration submitted on October 31, 2024.

**United States District Court, Southern District of New York,** *Asher Haft, Robert Fisher, and Cheryl Jones, individually and on behalf of all others similarly situated, v. Haier US Appliance Solutions, Inc. d/b/a GE Appliances*, Case No.: 1:21-cv-00506-GHW, on behalf of Milberg LLC, Declaration submitted on August 12, 2022.

**United States District Court for the District of Delaware,** *Michael Ninivaggi, Jake Mickey and Cailin Nigrelli, individually and on behalf of all others similarly situated, v. University of Delaware,* Case No. 20-cv-1478-SB, and *Hannah Russo, individually and on behalf of all others similarly situated, v. University of Delaware*, Case No. 20-cv-1693-SB, on behalf of Bursor & Fisher, P.A., Declaration submitted on July 1, 2022; Declaration submitted on August 1, 2022; Deposition on August 19, 2022; Reply Declaration submitted September 30, 2022.

**United States District Court, Central District of California,** *Kimberly Banks and Carol Cantwell, on behalf of themselves and all others similarly situated, v. R.C. Bigelow, Inc., a corporation; and DOES 1 through 10, inclusive,* Case No.: 20-cv-06208-DDP (RAOx), on behalf of The Wand Law Firm, Declaration submitted on June 17, 2022; Rebuttal Declaration submitted October 3, 2022; Declaration submitted on March 6, 2024; Deposition on May 30, 2024.

**United States District Court, Central District of California,** *Mocha Gunaratna and Renee Camenforte, individually and on behalf of all others similarly situated, v. Dr. Dennis Gross Skincare, LLC, a New York Limited Liability Company*, Case No. 2:20-cv-02311-MWF-GJS, on behalf of Clarkson Law Firm, P.C.; Declaration submitted on March 30, 2022; Deposition on May 20, 2022; Reply Declaration submitted on September 22, 2022.

**Superior Court of the State of California, County of Santa Clara,** *Lance Dutcher, individually and on behalf of all others similarly situated, v. Google LLC, d/b/a YouTube, and YouTube LLC,* Case No. 20CV366905, on behalf of Bursor & Fisher, P.A., Declaration submitted on March 2, 2022; Deposition on May 17, 2022; Reply Declaration submitted on August 2, 2022; Declaration submitted on May 2, 2023.

**United States District Court, Middle District of Tennessee, Nashville Division,** *In re Nissan North America, Inc. Litigation; Lakeita Kemp, individually and on, behalf of all others similarly situated v. Nissan North America, Inc., and Nissan Motor Co., Ltd.*, Cases Nos. 3:19-cv-00843, Case No. 3:19-cv-00854, on behalf of DiCello Levitt Gutzler, Declaration submitted February 28, 2022; Deposition on August 25, 2022; Reply Declaration submitted on November 15, 2022.



**In the Court of Claims, for the State of Ohio,** *Autumn Adams, individually and on behalf of all others similarly situated v. University of Cincinnati*, Case No. 2021-00458JD, on behalf of Bursor & Fisher, P.A., Declaration submitted February 11, 2022; Deposition on August 10, 2022; Reply Declaration submitted on November 16, 2022.

**United States District Court, Northern District of California, San Francisco Division,** *Eric Fishon, individually and on behalf, of all others similarly situated, v. Premier Nutrition Corporation f/k/a Joint Juice, Inc.*, Case No. 3:16-cv-06980-RS, on behalf of Blood, Hurst, & O'Reardon, LLP, Expert Report submitted January 24, 2022; Deposition on March 11, 2022; Oral Testimony and Cross Examination on May 31, 2022.

**Superior Court for the State of California, for the County of Alameda,** *Michelle Moran, an individual on behalf of herself and all others similarly situated, v. S.C. Johnson & Son, Inc.*, Case No.: RG20067897, on behalf of Clarkson Law Firm, P.C.; Declaration submitted on November 12, 2021.

**United States District Court, Eastern District of Michigan,** *Chapman, et al., v. General Motors, LLC*, Case No. 2:19-cv-12333-TGB-DRG, on behalf of Hagens Berman Sobol Shapiro LLP, Declaration submitted on November 10, 2021; Declaration submitted on March 1, 2022; Deposition on April 13, 2022; Reply Declaration submitted on June 16, 2022.

**United States District Court, Central District of California,** *Terry Sonneveldt, Esther Wright Schneider, Michael Bibbo, Alan Meshberg, Brian Hume, Amie Levasseur, Jean Levasseur, Christopher Lacasse, Beth Pickerd, Dan Pickerd, Tim Halwas, Erin Matheny, Lewis Delvecchio, Jon Sowards, Lawrence Bohana, Monika Bohana, David Dennis, Jacqueline S. Aslan, Michael Gilreath, and Renatta Gilreath, individually and on behalf of all others similarly situated, v. Mazda Motor of America, Inc. D/B/A Mazda North American Operations and Mazda Motor Corporation*, Case No.: 8:19-cv-01298-JLS-KES, on behalf of Kessler Topaz Meltzer & Check, LLP, Declaration submitted on November 3, 2021; Declaration submitted on March 11, 2022; Deposition on April 4, 2022; Declaration submitted July 26, 2022.

**United States District Court, Southern District of Texas, Corpus Christi Division,** *Tyler Allen Click, Troy Bowen, Bailey Henderson, Ethan Galan, Luis G. Ochoa Cabrera, Homero Medina, Michael Guidroz, Scott A. Hines, Bryan J. Tomlin, Quentin Alexander, and Jacqueline Bargstedt, individually and on behalf of all others similarly situated, v. General Motors LLC*, Case No. 2:18-cv-00455-NGR, on behalf of Hagens Berman Sobol Shapiro LLP, Declaration submitted on October 12, 2021.

**In the Court of Claims, for the State of Ohio,** *Lawrence Keba, individually and on behalf of all others similarly situated v. Bowling Green University*, Case No. 2020-00639JD, on behalf of Bursor & Fisher, P.A., Declaration submitted September 29, 2021; Reply Declaration submitted on November 26, 2021; Declaration submitted on March 31, 2023.



**In the Court of Claims, for the State of Ohio,** *Mackenzie Weiman and Sarah Baumgartner, on behalf of themselves and all others similarly situated v. Miami University*, Case Nos. 2020-00614JD and 2020-00644JD, on behalf of Bursor & Fisher, P.A., Declaration submitted September 29, 2021; Reply Declaration submitted on November 10, 2021.

**United States District Court, Southern District of New York,** *Eric Fishon and Alicia Pearlman, individually and on behalf of all others similarly situated, v. Peloton Interactive, Inc.*, Case No. 1:19-cv-11711-LJL, on behalf of DiCello Levitt Gutzler and Keller Lenkner, Declaration submitted September 15, 2021; Deposition on October 12, 2021; Reply Declaration submitted on November 1, 2021; Declaration submitted on October 17, 2022; Reply Declaration submitted on November 30, 2022.

**In the Court of Claims, for the State of Ohio,** *Caitlyn Waitt and Jordan Worrell v. Kent State University*, Case No. 2020-00392JD, on behalf of Bursor & Fisher, P.A., Declaration submitted September 15, 2021; Reply Declaration submitted on November 11, 2021.

**United States District Court, Northern District of California,** *Christopher Julian, Mark Pacana, Paul Fiskratti, and Wayne Lewald, on behalf of themselves and all others similarly situated, v. TTE Technology, Inc., dba TCL North America*, Case No. 3:20-cv-02857-EMC, on behalf of Milberg LLC, Declaration submitted on August 27, 2021; Deposition on October 2, 2021.

**United States District Court for the Northern District of California,** *Sherris Minor, as an individual, on beha1f of herself, the general public and those similarly situated, v. Baker Mills, Inc.; and Kodiak Cakes, LLC*, Case No. 20-cv-02901-RS, on behalf of Gutride Safier, LLP, Declaration submitted August 2, 2021; Deposition on September 2, 2021; Reply Declaration submitted on October 18, 2021.

**In the Court of Claims, for the State of Ohio,** *Lily Zahn v. Ohio University*, Case No. 2020-00371JD, and *Gila Duke, individually and on behalf of all others similarly situated, v. Ohio University*, Case No. 2021-00036JD, on behalf of Bursor & Fisher, P.A., Declaration submitted July 30, 2021; Deposition on October 6, 2021; Reply Declaration submitted on December 2, 2021; Oral Testimony and Cross Examination on January 18, 2022.

**In the Court of Claims, for the State of Ohio,** *Brooke Smith, individually and on behalf of all others similarly situated, v. The Ohio State University*, Case No. 2020-00321JD, on behalf of Bursor & Fisher, P.A., Declaration submitted June 24, 2021; Deposition on August 26, 2021; Reply Declaration submitted on September 29, 2021.

**United States District Court, Eastern District of California,** *Felix Obertman, individually and on behalf of all others similarly situated, v. Electrolux Home Products, Inc.*, Case No. 2:19-cv-02487-KJM-AC, on behalf of Bursor & Fisher, P.A., Declaration submitted on June 14, 2021; Reply Declaration submitted on November 18, 2021.

ECONOMICS AND TECHNOLOGY, INC.

**United States District Court, Central District of California,** *Delaney Sharpe, Erin Weiler, Jenna Leder, and Adriana DiGennaro, on behalf of themselves and all others similarly situated, v. GT's Living Foods, LLC*, Case No. 2:19-cv-10920-FMO-GJS, on behalf of Bursor & Fisher, P.A., Declaration submitted on June 2, 2021; Deposition on June 30, 2021.

**United States District Court, Southern District of New York,** *In re: Elysium Health - ChromaDex Litigation*, Case No. 1:17-cv-07394-LJL, on behalf of Frankfurt Kurnit Klein & Selz PC, Declaration submitted on April 20, 2021; Deposition, on April 26, 2021; Declaration submitted on June 4, 2021.

**United States District Court, Southern District of Texas, Corpus Christi Division,** *Darren Fulton and Craig Jude Broussard, each plaintiff is a citizen of the State of Texas, and each plaintiff individually and on behalf of all others similarly situated, v. Ford Motor Company*, Case No. 2:18-cv-00456, on behalf of Hagens Berman Sobol Shapiro LLP, Declaration submitted on March 15, 2021; Deposition on April 16, 2021; Reply Declaration submitted on July 21, 2021.

**United States District Court, Southern District of California,** *Michael Testone, Collin Shanks, and Lamartine Pierre, on behalf of themselves, all others similarly situated, and the general public, v. Barlean's Organic Oils, LLC,* Case No. 3:19-cv-00169-JLS-BGS, on behalf of Law Offices of Jack Fitzgerald, Declaration submitted on March 1, 2021; Reply Declaration submitted on May 27, 2021; Declaration submitted on February 11, 2022; Deposition on March 25, 2022.

**In The United States District Court, For the District of New Hampshire,** *Derick Ortiz, individually and on behalf of all others similarly situated, v. Sig Sauer, Inc.*, Case No.: 1:19-cv-01025-JL, on behalf of Bursor & Fisher, P.A., Declaration submitted on February 26, 2021; Rebuttal Declaration submitted on July 28, 2021; Supplemental Declaration submitted on August 6, 2021; Declaration submitted on August 13, 2021; Oral Testimony and Cross Examination on May 4, 2022.

**United States District Court, Western District of Washington,** *Tamara Lohr and Ravikiran Sindogi, on behalf of themselves and all others similarly situated, v. Nissan North America, Inc., and Nissan Motor Co., LTD.*, Case No.: 2:16-cv-01023-RSM and United States District Court, Northern District of California, San Francisco Division, *Sherida Johnson, Subrina Seenarain, Chad Loury, Linda Spry, Lisa Sullivan, and April Ahrens on behalf of themselves and all others similarly situated, v. Nissan North America, Inc.*, Case No.: 3:17-cv-00517-WHO, on behalf of Simmons Hanly Conroy LLC; Declaration submitted on February 16, 2021; Deposition on May 5, 2021; Reply Declaration submitted on August 13, 2021.

**Superior Court of the State of California, County of Alameda,** *Donna Connary, Zoriana Pawluk-Florio, Adrienne Andry, and Paul Terrecillas, on behalf of themselves and all others similarly situated, v. S.C. Johnson & Son, Inc.*, Case No. RG20061675, on behalf of Feinstein Doyle Payne & Kravec, LLC; Settlement Declaration submitted on February 16, 2021.



**United States District Court, Western District of New York,** *In re: Rock 'N Play Sleeper Marketing, Sales Practices, and Products Liability Litigation*, Case MDL No. 1:19-md-2903, on behalf of Beasley Allen Law Firm, Declaration submitted on February 8, 2021; Deposition on March 11, 2021; Brief Reply Declaration submitted on September 24, 2021; Oral Testimony and Cross Examination on September 27, 2021; Reply Declaration submitted on October 13, 2021.

**Superior Court for The State of California, County of Los Angeles,** *Daniel Prescod, individually and on behalf of all others similarly situated, v. Celsius Holdings, Inc. and Does 1 through 10, inclusive*, Case No. 19STCV09321, on behalf of Clarkson Law Firm, P.C.; Deposition on April 14, 2021; Reply Declaration submitted on July 1, 2021.

**United States District Court, Central District of California,** *Sharon Willis, individually and on behalf of all others similarly situated, v. Colgate-Palmolive Co.*, Case No. 2:19-cv-08542-JGB-RAOx, on behalf of Bursor & Fisher, P.A.; Deposition on March 30, 2021; Reply Declaration submitted on July 15, 2021.

**In the United States Court of Federal Claims,** *Bryndon Fisher, individually and on behalf of all others similarly situated, v. The United States of America,* Case No. 15-1575C, on behalf of Schubert Jonckheer & Kolbe, Reply Declaration submitted on October 29, 2021.

**United States District Court, for the Southern District of Ohio, Western Division,** *Laura Bechtel and Troy Thoennes, on behalf of themselves and all others similarly situated, v. Fitness Equipment Services, LLC, dba SOLE Fitness*, Case No. 1:19-cv-00726-MRB, on behalf of Markovits, Stock & DeMarco, LLC, Reply Declaration submitted on June 14, 2021.

**United States District Court, Northern District of California,** *Thomas Bailey, on behalf of himself and all others similarly situated, v. Rite Aid Corporation*, Case No. 4:18-cv-06926-YGR, on behalf of Greg Coleman Law, Reply Declaration submitted on March 16, 2021; Declaration submitted on May 3, 2022.

**United States District Court, Southern District of Florida,** *Javier Cardenas, Rodney and Pamela Baker, Michelle Monge, and Kurt Kirton, individually and on behalf of all others similarly situated, v. Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., Toyota Motor Engineering & Manufacturing North America, Inc., and Southeast Toyota Distributors, LLC*, Case No.: 18-cv-22798-CIV-FAM, on behalf of Kessler Topaz Meltzer & Check, LLP, Supplemental Declaration submitted on February 17, 2023; Oral Testimony and Cross Examination on March 7, 2023.

**United States District Court, Northern District of California,** *Ralph Milan, Sarah Aquino, and Elizabeth Arnold, on behalf of themselves, those similarly situated and the general public, v. Clif Bar & Company,* Case No. 3:18-CV-02354-JD, on behalf of Law Office of Paul K. Joseph, PC, Declaration submitted on March 2, 2021; Declaration submitted on April 9, 2021; Deposition on May 7, 2021.



**Superior Court of the State of California, County of Los Angeles,** *Jeffrey Koenig, on behalf of himself and all others similarly situated, v. Vizio, Inc*., Case No. BC 702266, on behalf of Greg Coleman Law, Declaration submitted on August 31, 2021; Deposition on October 15, 2021; Supplemental Declaration submitted on May 2, 2022; Deposition on May 12, 2022; Supplemental Declaration submitted January 16, 2023; Deposition on February 13, 2023.

**United States District Court, for the Central District of California, Western Division,** *Toya Edwards, on behalf of herself and all others similarly situated, v. Walmart Inc*., Case No. 1:18-cv-9655, on behalf of Simmons Hanly Conroy LLC, Reply Declaration submitted on June 28, 2021.

**United States District Court, Southern District of California,** *Patrick McMorrow, Marco Ohlin and Melody DiGregorio, on behalf of themselves, all others similarly situated and the general public, v. Mondelez International, Inc*., Case No. 3:17-cv-02327-BAS-JLB, on behalf of Law Offices of Jack Fitzgerald, Declaration submitted on May 14, 2021; Rebuttal Declaration submitted on July 2, 2021.

**United States District Court, Southern District of New York,** *Anne De Lacour, Andrea Wright, and Loree Moran individually and on behalf of all others similarly situated, v. Colgate-Palmolive Co., and Tom's of Maine Inc.*, Case No. 1:16-cv-08364-RA, on behalf of Bursor & Fisher, P.A., Declaration submitted on July 22, 2022; Deposition on September 9, 2022.

**United States District Court, Northern District of California,** *Stephen Hadley, on behalf of himself, all others similarly situated, and the general public, v. Kellogg Sales Company*, Case No. 5:16-cv-04955-LHK-HRL, on behalf of Law Offices of Jack Fitzgerald, PC, Declaration submitted on March 10, 2021.

**United States District Court, Northern District of California,** *Sandra McMillion, Jessica Adekoya and Ignacio Perez, on Behalf of Themselves and all Others Similarly Situated, v. Rash Curtis & Associates*, Case No. 16-cv-03396-YGR, on behalf of Bursor & Fisher, P.A., Oral Testimony and Cross Examination May 7 - 8, 2019.

**United States District Court, Eastern District Of New York, Brooklyn Division,** *Reply All Corp., v. Gimlet Media, Inc.,* Case No. 15-cv-04950-WFK-PK, on behalf of Wolf, Greenfield & Sacks, P.C., Deposition on October 16, 2019.

Mr. Weir has provided expert testimony since 2007, served as a consultative expert in numerous proceedings that did not result in testimony, and has contributed research and analysis to numerous additional projects, publications and testimony at the state, federal, and international levels.



# Exhibit 2


# Documents Reviewed

- Class Action Complaint, filed May 12, 2023

- Third Amended Class Action Complaint, filed in *Crowder et al. v. The Shade Store, LLC*, Case No. 5:23-cv-2331-NC on December 6, 2024.

- Second Amended Class Action Complaint, filed in *Fitzgerald et al. v. The Shade Store, LLC*, Case No. 2:23-cv-01435-RSM on November 21, 2024.

- Sawtooth Software technical papers, available online at http://www.sawtoothsoftware.com/support/technical-papers.

- *When "All Natural" May Not Be*, Analysis Group Forum (Winter 2013). https://www.analysisgroup.com/Insights/ag-feature/analysis-group-forum/winter-2013-forum/when-all-natural-may-not-be/

- *Applying Conjoint Analysis to Legal Disputes: A Case Study*, Wind, Yoram, *et al*.

- *Microsoft v. Motorola, Inc.*, 904 F.Supp.2d 1109, 1119-20 (W.D. Wash. 2012)

- *Khoday v. Symantec Corp.*, Civil No. 11-180 (JRT/TNL), 2014 WL 1281600, at *10 (D. Minn. Mar. 13, 2014)

- *Guido v. L'Oreal, USA, Inc.*, Nos. 2:11-cv-01067-CAS (JCx), 2:11-cv-05465-CAS (JCx), 2014 WL 6603730, at *5, *10-*14 (C.D. Cal. Jul. 24, 2014)

- *Brown v. Hain Celestial Group, Inc.*, No. C 11-03082 LB, 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18, 2014)

- *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413-15 (S.D.N.Y. 2015)

- *Sanchez-Knutson v. Ford Motor Company*, 310 F.R.D. 529, 538-39 (S.D. Fla. 2015)

- *In re: Lenovo Adware Litigation*, Case No. 15-md-02624-RMW, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016)

- *Dzielak v. Maytag*, Civ. No. 2:12-0089 (KM)(JBC), 2017 WL 1034197, at *6 (D.N.J. Mar. 17, 2017)

- *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1022, n.6 (N.D. Cal. 2013)

- *Dei Rossi v. Whirlpool Corp.*, No. 2:12-cv-00125-TLN-CKD, 2015 U.S. Dist. LEXIS 55574 (E.D. Cal. Apr. 27, 2015)

- *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017)

- *Fitzhenry-Russell v. Dr Pepper Snapple Group, Inc.*, 326 F.R.D. 592, 602-606, 611-612, 614-616 (2018)

-  *In Re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 367-374 (2018)

- *Hadley v. Kellogg Sales Co.*, 324 F.Supp.3d 1084, 1103-1110 (2018)

- *Martinelli v. Johnson & Johnson*, No. 2: 15-cv-01733-MCE-DB, 2019 WL 1429653, at *3-4 (E.D. Cal. Mar. 29, 2019)

- *de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 344-345 (2021)

- *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 403-404, 408-411 (2021)

- *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 563-567 (2020)

- *Hudock v. LG Elecs. USA, Inc.*, Civil No. 16-1220 (JRT/KMM), 2020 WL 1515233, at *15 (D. Minn. Mar. 30, 2020)

- *Banh v. American Honda Motor Co.*, Inc., Case No. 2:19-cv-05984-RGK-AS, 2020 WL 4390371, at *17-*19 (C.D. Cal. Jul. 28, 2020)

- *Koenig v. Vizio, Inc.*, Case No. BC702266 (Cal. Super. Ct. Cnty. L.A. Aug. 24, 2020)

- *Kaupelis v. Harbor Freight Tools, Inc.*, Case No. 19-1203-JVS (DFMx), 2020 WL 5901116, at *5-*6 (C.D. Cal. Sep. 23, 2020)

- *McMorrow v. Mondelez Int'l Inc.*, Case No. 17-cv-2327-BAS-JLB, 2021 WL 859137, at *3-*7 (S.D. Cal. Mar. 8, 2021)

- *Prescod v. Celsius Holdings, Inc.*, Case No. 19STCV09321 (Cal. Super. Ct. Cnty. L.A. Aug. 2, 2021)

- *Cardenas v. Toyota Motor Corp.*, Case No.: 18-cv-22798, 2021 U.S. Dist. LEXIS 152920, at *21-*23, *52-*65 (S.D. Fla. Aug. 12, 2021)

- *Bechtel v. Fitness Equipment Svcs., LLC*, No. 1:19-CV-726, 2021 WL 4147766, at *2, *16-*17 (S.D. Ohio Sep. 12, 2021)

- *Milan v. Clif Bar & Co.*, Case No. 18-cv-02354-JD, 2021 WL 4427427, at *6-*7 (N.D. Cal. Sep. 27, 2021)

- *Testone v. Barlean's Organic Oils*, Case No. 19-cv-169-JLS (BGS), 2021 WL 4438391, at *5-*6, *15-*17 (S.D. Cal. Sep. 28, 2021)

- *Johnson v. Nissan N. Am., Inc.,* 2022 WL 2869528, at *5 (N.D. Cal. July 21, 2022)

- *Sonneveldt v. Mazada*, 2022 WL 17357780 (C.D. Cal. Oct. 21, 2022)

- *Willis v. Colgate Palmolive Co.*, No. CV 19-8542 JGB (RAOx) (C.D. Cal Jan. 5, 2023), ECF No. 105

- *Chapman v. General Motors*, Case No. 2:19-CV-12333-TGB-DRG, 2023 WL 2745161 (E.D. Mich. Mar. 31, 2023)

- *Gunaratna v. Dennis Gross Cosmetology LLC*, Case No. CV 20-2311-MWF (GJSx), 2023 WL 2628620 (C.D. Cal. Mar. 15, 2023)

- *Banks v. R.C. Bigalow, Inc.*, No. 20-CV-06208 DDP (RAOx) (C.D. Cal. Jul. 31, 2023)

- *Bush v. Rust-Oleum Corp.*, Case No. 3:20-cv-03268-LB (N.D. Cal. Feb. 5, 2024), ECF No. 189, Amended Order Granting Motion for Class Certification

- *Corbett v. Pharmacare U.S. Inc.*, No. 21-cv-137-JES (AHG) (S.D. Cal.) March 29, 2024 Order

- *Vancleave v. Abbott Laboratories*, Case No. 19CV345045 (Cal. Super. Ct., Santa Clara County Apr. 5, 2024)

- *Sinatro v. Barilla America, Inc.*, No. 22-cv-03460-DMR, Dkt. No. 78 (N.D. Cal. May 28, 2024)

- *Cadena v. Am. Honda Motor Co., Inc.*, No. CV 18-4007-MWF (PJWx), 2024 WL 4005097 (C.D. Cal. Jul. 2, 2024)

- *Swartz v. Dave's Killer Bread, Inc.,* No. 4:21-cv-10053-YGR (N.D. Cal. Sept. 20, 2024) (order granting class certification) (Dkt. No. 193)

- *Wallenstein v. Mondelez Int'l, Inc.*, No. 22-cv-06033-VC, 2024 WL 4293904 (N.D. Cal. Sept. 25, 2024)

- *Lessin, et al. v. Ford Motor Co.*, Case 3:19-cv-01082-AJB-AHG, ECF No. 202 (S.D. Cal. Nov. 7, 2024) (Order re: Summary Judgment and Class Cert)

- *Getting Started with Conjoint Analysis: Strategies for Product Design and Pricing Research*, Bryan K. Orme, Research Publishers 2014

- *Estimating Consumers' Willingness to Pay for Health Food Claims: A Conjoint Analysis*, Mitsunori Hirogaki, International Journal of Innovation, Management and Technology, Vol. 4, No. 6, December 2013

- *Testing Consumer Perception of Nutrient Content Claims Using Conjoint Analysis*, Drewnowski, Adam *et al*., Public Health Nutrition: 13(5), 688–694

- *Evaluation of Packing Attributes of Orange Juice on Consumers' Intention to Purchase by Conjoint Analysis and Consumer Attitudes Expectation*, Gadioli, I. L. et al., Journal of Sensory Studies 28 (2013):57-65

- *Competition and the Regulation of Fictitious Pricing*, Staelin, R. et al., Journal of Marketing 2023, Vol. 87(6) 826-846

- *Comparative Price Advertising: Informative or Deceptive?*, Grewal, D. et al.. Journal of Public Policy & Marketing, Spring 1992, Vol. 11, No. 1, 52-62

- Bryan Orme, Sawtooth Software, on "Market Simulators for Conjoint Analysis."

- Joel Huber et al., 2006. "Dealing with Product Similarity in Conjoint Simulations."

- Sawtooth Software Annual User Survey

- Hunter Douglas Holdings Limited, 2023 Annual report and financial statements, filed with the United Kingdom's Companies House.

- Home Depot, Inc., 2023 Annual 10-K, filed with the U.S. Securities and Exchange Commission.

- theshadestore.com

- blinds.com

- blindstogo.com

- 3dayblinds.com

- americanblinds.com

- hunterdouglas.com

- selectblinds.com

- justblinds.com

- TSS0008879

- TSS0012125

- TSS0012144

- TSS0012284

- TSS0012285

- TSS0038114

- TSS0038115

-SMITH000001

-Deposition Transcript of Jorge Mendoza, October 22, 2024

-Deposition Transcript of Suzanne Dominick, December 4, 2024

-Deposition Transcript of Amanda Goldwasser, November 21, 2024

-Deposition Transcript of Joel Lumian, November 20, 2024

-Deposition Transcript of Katherine Jane Adler, M.D., January 8, 2025

-Deposition Transcript of Lee Fitzgerald, August 14, 2024

-Deposition Transcript of Mark Melvin Elkins, January 3, 2025

-Deposition Transcript of Robert Smith, December 3, 2024

-Deposition Transcript of Sharon Crowder, November 15, 2024

**Exhibit 3**

**Shade Store Sales Data Statistics**

# Shade Store Summary Statistics - Combined





# Shade Store Summary Statistics - Consumer (Excluding Trade Discounts)



