LATHAM & WATKINS LLP
Steven N. Feldman (Bar No. 281405)
 *steve.feldman@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone: +1.213.485.1234

Johanna Spellman (*pro hac vice*)
 *johanna.spellman@lw.com*
Kevin Jakopchek (*pro hac vice*)
 *kevin.jakopchek@lw.com*
330 N. Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: +1.312.876.7700

Shlomo Fellig (*pro hac vice*)
 *shlomo.fellig@lw.com*
200 Clarendon Street
Boston, MA 02116
Telephone: +1.617.948.6000

*Attorneys for Defendant*
*The Shade Store, LLC*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| SHARON CROWDER, JOEL LUMIAN, ROBERT SMITH, AMANDA GOLDWASSER, and MARK ELKINS, each individually and on behalf of all others similarly situated,<br><br>             Plaintiffs,<br><br>        v.<br><br>THE SHADE STORE, LLC,<br><br>             Defendant. | Case 5:23-cv-02331-NC<br><br>**DEFENDANT THE SHADE STORE, LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date: June 11, 2025<br>Time: 11:00 a.m.<br>Ctrm: 5<br>Judge: Hon. Nathanael M. Cousins |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL BACKGROUND ...................................................................................... 3

    A.    TSS Provides Customers With High-Quality, Custom Window
         Treatment Products Based on Individualized Preferences.................................. 3

    B.    TSS Publicly Advertises Discounts, Which TSS's Customers
         Learn About During Their Lengthy Purchase Process. ..................................... 4

    C.    TSS Has A Separate Sales Program For Trade Customers................................. 5

    D.    Plaintiffs Purchased TSS Products While Aware That Discounts
         Are Frequently Available And Are Happy With Their Purchases. ...................... 5

    E.    Related Washington Case Plaintiffs................................................................... 8

    F.    Plaintiffs File Suit Claiming They Believed TSS's List Price Was
         The "Market Value" Of TSS's Unique, Custom Products. ................................. 9

III.  LEGAL STANDARD................................................................................................ 11

IV.   ARGUMENT............................................................................................................ 11

    A.    Plaintiffs Have Not Established Predominance For Any Of Their
         Claims. .......................................................................................................... 12

         1.    Individualized Inquiries Are Necessary To Determine
              Whether Members Of The Proposed Class Were Likely To
              Be Deceived For Purposes Of Plaintiffs' Deception Claims. .................. 12

         2.    Individual Inquiries Are Required To Determine
              Materiality, Reliance, Causation, and Injury For Purposes
              Of Plaintiffs' Deception Claims.............................................................. 18

         3.    Individualized Inquiries Would Be Necessary To
              Determine Who Is A "Consumer" With Standing To Assert
              A CLRA Claim. ...................................................................................... 22

         4.    FAL Section 17501 Claim ...................................................................... 23

         5.    Plaintiffs' Unfairness Claims.................................................................. 24

          6.    Breach of Contract and Warranty Claims ............................................... 25

    B.    Plaintiffs Cannot Prove Damages on a Classwide Basis. ................................ 25

         1.    "Rescission and Full Refund" (Restitution)............................................ 26

          2.    "Expectation Damages" (Damages) ....................................................... 27

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

i

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

3. "Price Premium" (Restitution and Damages) .......................................... 28

C. Plaintiffs Fail To Satisfy Commonality. ................................................................. 29

D. Plaintiffs Do Not Satisfy Typicality Because They Only Purchased A Subset of Class Products, Had Varying Purchase Experiences, And Are Subject To Unique Defenses. .................................................. 30

E. The Trade Subclass Cannot Be Certified ................................................................ 32

1. Smith, the Only Plaintiff Who Used a Trade Discount, Is Not Typical of Other Trade Customers. .................................................. 32

2. Plaintiffs' Trade Subclass Poses More Individualized Issues. ........................................................................................................ 33

F. Plaintiffs' Resale Exclusion Is Not Workable. ..................................................... 35

G. Rule 23(b)(2) – Injunctive Relief ........................................................................... 35

V. CONCLUSION ................................................................................................................. 35

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

**CASES**

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp., L.P.*,
247 F.R.D. 156 (C.D. Cal. 2007) ................................................................................31, 33

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .........................................................................................................12

*Arabian v. Sony Elecs. Inc.*,
2007 WL 627977 (S.D. Cal. Feb. 22, 2007) ...................................................................23

*Astiana v. Ben & Jerry's*,
2014 WL 60097 (N.D. Cal. Jan. 7, 2014) .......................................................................26

*Astiana v. Kashi Co.*,
291 F.R.D. 493 (S.D. Cal. 2013) .....................................................................................19

*Berger v. Home Depot USA Inc. ("Berger I")*,
2011 WL 13224881 (C.D. Cal. Mar. 18, 2011) ........................................................31, 32

*Berger v. Home Depot USA, Inc.*,
741 F.3d 1061 (9th Cir. 2014) .........................................................................................13

*Blain v. Liberty Mut. Fire Ins. Co.*,
2025 WL 886966 (S.D. Cal. Mar. 21, 2025) ...................................................................28

*Broomfield v. Craft Brew All., Inc.*,
2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) ................................................................18

*Caldera v. J.M. Smucker Co.*,
2014 WL 1477400 (C.D. Cal. Apr. 15, 2014) ..................................................................26

*Calderon v. Kate Spade & Co., LLC*,
2020 WL 1062930 (S.D. Cal. Mar. 5, 2020) ...................................................................26

*Chowning v. Kohl's Dep't Stores, Inc.*,
734 F. App'x 404 (9th Cir. 2018) ...............................................................................26, 32

*Circle Click Media LLC v. Regus Mgmt. Grp., LLC*,
2016 WL 1048046 (N.D. Cal. Mar. 11, 2016)............................................................13, 18

*Circle Click Media LLC v. Regus Mgmt. Grp., LLC*,
2016 WL 2593654 (N.D. Cal. May 5, 2016) ...................................................................18

*Clevenger v. Welch Foods Inc.*,
2022 WL 18228293 (C.D. Cal. Dec. 28, 2022) ..........................................................13, 22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

*Clevenger v. Welch Foods Inc.*,
342 F.R.D. 446 (C.D. Cal. 2022)..................................................................................14

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)..............................................................................................11, 25

*Dukes v. Wal-Mart Stores, Inc.*,
603 F.3d 571 (9th Cir. 2010), *rev'd on other grounds sub nom. Wal-Mart*
*Stores v. Dukes*, 564 U.S. 338 (2011) ...........................................................................12

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) .............................................................................11, 31

*Ewert v. eBay, Inc.*,
2010 WL 4269259 (N.D. Cal. Oct. 25, 2010).............................................................23

*Fitzgerald v. The Shade Store, LLC*,
No. 2:23-cv-01435 (W.D. Wash. Nov. 21, 2024), ECF No. 54.....................................8

*Forrett v. Gourmet Nut, Inc.*,
634 F. Supp. 3d 761 (N.D. Cal. 2022) .........................................................................12

*Gallegos v. Saul*,
2020 WL 13925332 (N.D. Cal. Nov. 27, 2020) ...........................................................25

*Gross v. Vilore Foods Co.*,
2022 WL 1063085 (S.D. Cal. Apr. 8, 2022)...........................................................14, 25

*Hadley v. Kellogg Sales Co.*,
324 F. Supp. 3d 1084 (N.D. Cal. 2018) .................................................................14, 19

*Handloser v. HCL Techs., Ltd.*,
2021 WL 879802 (N.D. Cal. Mar. 9, 2021)............................................................29, 35

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ......................................................................................31

*Hart v. TWC Prod. & Tech. LLC*,
2023 WL 3568078 (N.D. Cal. Mar. 30, 2023)..............................................................25

*Hawkins v. Kroger Co.*,
337 F.R.D. 518 (S.D. Cal. 2020) .................................................................................26

*Hilario v. Allstate Ins. Co.*,
642 F. Supp. 3d 1048 (N.D. Cal. 2022) .......................................................................35

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013) ....................................................................................22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
2017 WL 2559615 (C.D. Cal. June 7, 2017) .................................................................19, 20, 21

*In re Graphics Processing Units Antitrust Litig.*,
253 F.R.D. 478 (N.D. Cal. 2008)....................................................................................................21

*In re PFA Insurance Marketing Litigation*,
696 F. Supp. 3d 788 (N.D. Cal. 2021) .........................................................................................26

*In re POM Wonderful LLC Mktg. & Sales Pracs. Litig.*,
2014 WL 1225184 (C.D. Cal. Mar. 5, 2014)..........................................................................21, 26

*Jacobs v. La-Z-Boy Inc.*,
2024 WL 5194976 (C.D. Cal. Nov. 14, 2024)..............................................................................14

*Johnson v. Harley-Davidson Motor Co. Grp., LLC*,
285 F.R.D. 573 (E.D. Cal. 2012) ...........................................................................................19, 21, 22

*Jones v. ConAgra Foods, Inc.*,
2014 WL 2702726 (N.D. Cal. June 13, 2014).........................................................................13, 20, 21

*Kamakahi v. Am. Soc'y for Reprod. Med.*,
305 F.R.D. 164 (N.D. Cal. 2015).....................................................................................................29

*Klein v. Parker Univ.*,
2021 WL 5414330 (N.D. Cal. July 12, 2021).................................................................................22

*Kramer v. Wilson Sporting Goods, Co.*,
2014 WL 12570919 (C.D. Cal. Mar. 21, 2014)..............................................................................21

*Krommenhock v. Post Foods, LLC*,
334 F.R.D. 552 (N.D. Cal. 2020).....................................................................................................19

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ....................................................................................................................22

*Lavie v. Proctor & Gamble Co.*,
105 Cal. App. 4th 496 (N.D. Cal. 2003) .........................................................................................33

*Lytle v. Nutramax Laby's, Inc.*,
114 F.4th 1011 (9th Cir. 2024) ................................................................................................19, 28

*Mazur v. eBay Inc.*,
257 F.R.D. 563 (N.D. Cal. 2009)....................................................................................................23

*Menagerie Prods. v. Citysearch*,
2009 WL 3770668 (C.D. Cal. Nov. 9, 2009).................................................................................24

*Moore v. Mars Petcare US, Inc.*,
2024 WL 4336602 (N.D. Cal. Sept. 27, 2024) ........................................................................13, 18

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

v

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

*Mueller v. Puritan's Pride, Inc.*,
2021 WL 5494254 (N.D. Cal. Nov. 23, 2021) ...........................................................26, 27, 28

*Munning v. Gap*,
2016 WL 6393550 (N.D. Cal. Oct. 28, 2016)...................................................................14

*Nguyen v. Lovesac Co.*,
2025 WL 950511 (E.D. Cal. Mar. 28, 2025) ...................................................................27

*Norton v. LVNV Funding, LLC*,
2020 WL 5910077 (N.D. Cal. Oct. 6, 2020)....................................................................35

*People v. Macy's*, *Inc.*,
2021 WL 3469996 (Cal. Super. Ct. July 13, 2021) .........................................................20

*Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*,
2016 WL 5920345 (C.D. Cal. June 23, 2016) .................................................................20

*Red v. Kraft Foods, Inc.*,
2012 WL 8019257 (C.D. Cal. Apr. 12, 2012) .................................................................26

*Sanchez v. WalMart Stores, Inc.*,
2009 WL 1514435 (E.D. Cal. May 28, 2009) ............................................................31, 33

*Simon v. Carter's, Inc.,*
2020 WL 13505608 (N.D. Cal. July 13, 2020)................................................................26

*Spann v. J.C. Penney Corp.*,
307 F.R.D. 508 (C.D. Cal. 2015) ....................................................................................14

*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 (9th Cir. 2011) ........................................................................................13

*Stiner v. Brookdale Senior Living, Inc.*,
665 F. Supp. 3d 1150 (N.D. Cal. 2023) .....................................................................21, 30

*Vizcarra v. Michaels Stores, Inc.*,
710 F. Supp. 3d 718 (N.D. Cal. 2024).............................................................................14

*Vizcarra v. Unilever U.S., Inc.*,
339 F.R.D. 530 (N.D. Cal. 2021).........................................................................11, 13, 14

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)......................................................................................................11, 29

*Wiener v. Dannon Co.*,
255 F.R.D. 658 (C.D. Cal. 2009) ....................................................................................30

*Williams v. Apple, Inc.*,
338 F.R.D. 629 (N.D. Cal. 2021) ....................................................................................11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

vi

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

**STATUTES**

Cal. Bus. & Prof. Code
  § 17200...........................................................................................................................10
  § 17500 et. seq. ..............................................................................................................10

Cal. Civ. Code § 1761(d) .......................................................................................................23

**RULES**

Fed. R. Civ. P.  23(a)(2) ........................................................................................................29

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
LOS ANGELES

vii

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

Defendant The Shade Store, LLC ("TSS") submits the following opposition to Plaintiffs' Motion for Class Certification (ECF No. 112) ("Motion").

<h2 align="center">I.     INTRODUCTION</h2>

Plaintiffs ground their Motion on the false premise that they and each member of the proposed class purchased TSS products with the understanding that the list price on their purchase orders represented the price at which the products typically sold and the "market value" of the products. Because the products were frequently sold at a discount, Plaintiffs claim, they and members of the proposed class were deceived into believing they received a discount that was actually "fake." Plaintiffs' premise falters, however, because TSS customers do not buy products "off-the-rack"; they instead engage in a lengthy design, selection, and purchase process during which they work with TSS's design consultants and measurement professionals to select and customize individualized, hand-crafted custom window treatments tailored to the individual customer's unique preferences and space. During that process, many of the customers visit the TSS website, receive marketing emails, and speak with various TSS personnel. Through those interactions, which can go on for weeks or months before an order is placed, customers come to understand that TSS frequently offers discounts. After completing their purchase, the vast majority of TSS customers are pleased with their new window treatments.

Plaintiffs' own experiences bear this out. Various Plaintiffs admitted, *inter alia*, that they: (i) did not expect their unique products had been sold before (implying they did not expect the products had a "typical" price); (ii) were aware TSS products were frequently discounted; (iii) received the product quality they expected; (iv) would have made their purchase regardless of the discount; (v) believe the TSS products are worth at least what they paid; and (vi) continued recommending TSS to others ***even after being involved in this litigation***. And Plaintiffs' own expert admitted that where customers are aware a retailer frequently discounts, they do ***not*** believe list prices are a "market value" or even ***material***, but regard them as "***meaningless***."

The unique purchase experiences of the proposed class raise a host of individualized issues that preclude class certification, and Plaintiffs' Motion should be denied for the following reasons.

***First***, individualized questions predominate in determining whether members of the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

proposed class were likely to be deceived by the list price and discount on their purchase orders. The mix of information provided to each customer regarding TSS's pricing and discounts throughout the lengthy customization and purchase process necessarily affects how each customer understood the list price and discount on their purchase order. Thus, Plaintiffs cannot satisfy predominance under Rule 23(b)(3) or commonality under Rule 23(a).

*Second*, individualized inquiries are required to determine materiality, reliance, causation, and injury. Plaintiffs rely on the opinions of Bruce Silverman as common evidence of these elements, but as set forth in TSS's concurrently-filed Daubert motion, Mr. Silverman failed to consider the evidence in this case and his opinions are outweighed by TSS's expert evidence and Plaintiffs' own admissions which demonstrate that individualized inquiries are required.

*Third*, because some customers purchase TSS products for business purposes, individualized inquiries would be required to determine whether a putative class member is a "consumer" with standing to assert a claim under California's Consumer Legal Remedies Act.

*Fourth*, Plaintiffs' False Advertising Law ("FAL") Section 17501 claim cannot be certified, as individualized inquiries would be required to determine customers' understanding of TSS's list prices and the prevailing market price of their product at the time of their purchase. Individualized inquiries are also required to adjudicate Plaintiffs' Unfair Competition Law ("UCL") unfairness, unjust enrichment, breach of contract, and warranty claims.

*Fifth*, Plaintiffs fail to demonstrate a viable model for calculating classwide damages.

*Sixth*, Plaintiffs fail to satisfy typicality. Variations in their purchase experiences, and the very nature of TSS's customization and sales processes, mean there is no "typical" experience that can be extrapolated classwide. Plaintiffs are also subject to unique defenses that render them poor standard bearers for the proposed class.

*Finally*, Plaintiffs' proposed trade subclass suffers from even more profound predominance and typicality problems than the non-trade subclass. Further, while Plaintiffs propose excluding from the proposed class and subclass definitions individuals who purchased TSS products for resale, there is no classwide method to identify such individuals.

As set forth further below, Plaintiffs' Motion should be denied.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

## II. FACTUAL BACKGROUND

### A. TSS Provides Customers With High-Quality, Custom Window Treatment Products Based on Individualized Preferences.

TSS manufactures, sells, and installs custom, hand-made, premium window treatments and accessories. Decl. of Gregory Spatz in Supp. of TSS's Opp. & Mot. to Exclude ("Spatz Decl.") ¶ 4; Decl. of Suzanne Dominick in Supp. of TSS's Opp. and Mot. to Exclude ("Dominick Decl.") ¶ 3; Ex. 2 to the Omnibus Decl. of Kevin Jakopchek in Supp. of TSS's Opp. & Mot. to Exclude ("Dominick Dep.") at 10:22-11:2.[1] TSS designs each product to meet the customer's preferences in terms of style, material, features, components, size, and other options. Dominck Decl. ¶ 3. Given TSS offers hundreds of available products, add-on options, materials, styles, colors, and sizes, there are over a million different window treatment options available to customers *before* accounting for further bespoke customization. Spatz Decl. ¶ 7.

Customers typically interact with TSS multiple times throughout the purchase process. Some customers visit the website to order free material swatches or book in-home measurements. *See* Ex. 1 ("Spatz Dep.") at 163:24-165:5. Others speak with TSS representatives over the phone to schedule a measurement or discuss their purchase. Dominick Decl. ¶ 9. After receiving swatches and measurements, customers usually visit TSS showrooms. *Id*. This process is designed to connect customers with TSS design consultants who provide tailored recommendations. Spatz Dep. 163:24-165:9; Dominick Dep. 13:21-14:6, 15:9-18; Decl. of Jorge Mendoza in Supp. of TSS's Opp. & Mot. to Exclude ("Mendoza Decl.") ¶¶ 3-4. Indeed, approximately 91% of TSS orders are placed through its design consultants. Spatz Decl. ¶ 14(b).

TSS's products are also available for purchase through Restoration Hardware, a luxury home furnishings retailer with showrooms across the country, including 19 locations in California. Dominick Dep. 14:7-15; Ex. 66 (Composite Exhibit of Quotes from Restoration Hardware). The TSS products that Restoration Hardware sells are the same or virtually the same as the window treatment products that TSS sells directly, including identical hard window treatment products

---

[1] Unless otherwise specified, all exhibit citations are references to exhibits to the Omnibus Declaration of Kevin Jakopchek in Support of TSS's Opposition and Motion to Exclude ("Jakopchek Declaration").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

(*e.g.,* roller shades and blinds) and virtually identical soft window treatments (*e.g.*, drapery). Typically, Restoration Hardware offers TSS's products for sale at or above the list price associated with purchasing them directly from TSS. *See* Dominick Decl. ¶ 8.

### B. TSS Publicly Advertises Discounts, Which TSS's Customers Learn About During Their Lengthy Purchase Process.

Because TSS products are customized, the purchase process often takes weeks or months from the time a customer first contacts TSS to the day they place their order. *See* Ex. 4 ("Strombom Rep.") at Ex. 8A; Strombom Rep. ¶ 133 n.194; Spatz Decl. ¶ 14(f); Mendoza Decl. ¶ 5. ██████ of customers place an order ████████████ after first engaging with TSS; approximately ████ take up to ███████████████. Strombom Rep. Ex. 8A. Throughout this process, design consultants discuss, and often negotiate, pricing with customers—including to apply private additional discounts, such as a special promotional code or custom discount amount. Dominick Dep. 33:15-22; Mendoza Decl. ¶ 7. When a customer is ready to make their purchase, they receive a price quote that shows each item, the item's specification, the item's list price, and any discount, shipping, customization, and installation costs. *See, e.g.*, Dominick Dep. 67:1-11; Ex. 62 (TSS0012144-146).

TSS displays discounts by reference to its list prices. Because TSS's products are custom, those list prices are determined through internally developed pricing matrices that consider TSS's costs, desired profit margin, and competitive benchmarks. Dominick Dep. 92:18-93:15. These list price matrices were in existence before the putative class period and challenged discount practices. Dominick Decl. ¶ 5. Potential discounting is not taken into account when setting or adjusting those pricing matrices. Dominick Dep. 94:3-13. TSS's list price simply represents the output of those pricing matrices prior to the application of any discount. Dominick Decl. ¶ 5. TSS does not represent that this list price represents a "market value." *Id.* ¶ 6.

During the class period, TSS publicly and prominently advertised frequent discounts off of TSS's list prices. TSS advertised a variety of different discounts on its website. During the class period, the TSS website advertised sitewide discounts and a promotion in which individuals who sign up to receive TSS's marketing emails receive a discount code for 15% or 20% off their next

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

TSS purchase. Spatz Decl. ¶ 12; *see, e.g.*, Ex. 3 (CROWDER000404-405). In addition, TSS sends marketing emails and written materials (including direct mailers) advertising discounts. Dominick Decl. ¶ 4. Finally, during the purchase process, customers will often be provided rough quotes that will reflect available discounts. Spatz Decl. ¶ 17. By the time the typical TSS customer completes their fifty-to-one-hundred-day (or more) purchase process, they have repeatedly been informed of the wide availability of discounts off of TSS's list prices throughout that time.

**C.      TSS Has A Separate Sales Program For Trade Customers.**

TSS's customers generally fall into two categories: retail and trade. Retail customers include individuals and businesses who purchase products from TSS for use in their own home or businesses (*i.e.*, in their own business office) and represent approximately ▮▮▮ of TSS customers. *See* Strombom Rep. Ex. 1C. The other ▮▮▮ are "trade" customers—predominantly consisting of interior designers, home builders, and other home professionals—who enroll in the company's "Design Trade Program" to purchase window treatments for or on behalf of their clients. *See* Mendoza Decl. ¶¶ 12-19; Dominick Decl. ¶¶ 10-14.

Trade customers receive various incentives to buy window treatments from TSS, including the ability to supply their own fabrics and trims for custom window treatment products and a "trade discount" of 25% to 30% on every purchase, regardless of whether or not TSS is running a promotion available to the general public. Mendoza Decl. ¶¶ 14-15.

TSS's customers are overwhelmingly satisfied with their purchases: 93% of TSS survey respondents would refer TSS to friends or family. Spatz Decl. ¶ 18. And approximately 40% of TSS's California retail customers are repeat buyers. *See id.* ¶ 19. Approximately 67% of TSS's California trade customers are repeat customers. *Id.*.

**D.      Plaintiffs Purchased TSS Products While Aware That Discounts Are Frequently Available And Are Happy With Their Purchases.**

Plaintiffs' experiences highlight the individualized nature of a TSS purchase.

***Sharon Crowder.*** In November 2021, Crowder visited the TSS website and received a 20% off discount code, with no expiration date. *See* Ex. 5 ("Crowder Dep.") at 94:4-95:18; s*ee* Ex. 6 (CROWDER000230). She recalled visiting the website a few times thereafter (Ex. 7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

(Crowder Sec. Am. Resp. to Rog. No. 3)), during which a 20% discount was featured. *See* Crowder Dep. 101:21-103:24; Exs. 8-10 (CROWDER000193; CROWDER000030; CROWDER000032). On January 20, 2022, Crowder ordered free swatches from TSS. *See* Ex. 11 (CROWDER000209). Six days later, Crowder purchased two sets of roller shades from TSS's website for 20% off. *See* Ex. 12 (CROWDER000210). Crowder testified that she is happy with the quality of her TSS shades, received value from them, does not want to return them, and would be willing to pay the same amount again for her shades. Crowder Dep. 21:23-24, 53:21-24, 56:23-57:3, 90:12-14. Crowder did not have any expectation that TSS had ever before sold a product with the exact specifications she ordered, and had no expectation she would ever financially recoup the difference between the discount and list price. *Id*. at 37:14-21, 84:14-18.

*Joel Lumian*. Lumian ordered swatches from TSS in December 2020. *See* Ex. 13 (LUMIAN000001). Four months later, Lumian scheduled an in-home measurement appointment and ordered more swatches. *See* Exs. 14-15 (LUMIAN000097; LUMIAN000065). On August 18, 2021, Lumian emailed a TSS design consultant that he was ready to move forward with his project. *See* Ex. 16 (LUMIAN000103). Two days later, Lumian received a quote reflecting a 20% discount. *See* Ex. 17 (LUMIAN000094-95). Lumian accepted this quote and asked his design consultant to schedule an installation appointment. *See* Ex. 18 (TSS0008341). He purchased four roller shades on August 20, 2021, as a gift for his mother. *See* Ex. 19 (TSS0008337); Ex. 20 ("Lumian Dep.") at 39:24-40:1.

Between the time he began his search in December 2020 and made his purchase in August 2021, Lumian visited TSS's website twelve times—during which a 20% discount was showcased each time. Lumian Dep. 139:11-13. Lumian acknowledged that he ultimately chose TSS over its competitors, even though it was more expensive, because the shades were custom and high-quality, and because TSS offered installation services. *Id*. at 69:6-12. He and his mother are satisfied with the quality of the shades. *Id*. at 82:3-25. He has not had issues with these shades and does not intend to return them. *Id.* at 191:24-192:7, 193:1-19. He would have purchased the shades even if there was no advertised discount. *Id.* at 190:14-25.

*Amanda Goldwasser*. On October 25, 2021, Goldwasser requested a showroom

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
LOS ANGELES

6

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

appointment with TSS and later visited a showroom. *See* Ex. 21 (TSS0008370); Ex. 22 ("Goldwasser Dep.") at 96:3-6. Goldwasser connected with a design consultant, and in early November 2021, exchanged multiple emails. *See, e.g.*, Ex. 23 (GOLDWASSER000034-38). On November 2, Goldwasser received a quote from 3 Day Blinds (a TSS competitor) for $14,608. Ex. 24 (GOLDWASSER000115). On November 6, she placed an order with TSS for roller shades, roman shades, and tailored drapes for $13,564. *See* Ex. 25 (GOLDWASSER000105-112). Goldwasser admitted that she selected TSS because of its wide selection and the aesthetics of the window treatments. Goldwasser Dep. 135:13-21. Goldwasser is "satisfied with the aesthetics, [] as well as the material" of her purchase. *Id*. at 41:8-11.

On June 23, 2024 (three months after sending TSS a letter accusing TSS of offering deceptive discounts, Ex. 26 (March 7, 2024 Demand Letter)), Goldwasser received a message from a friend who asked where she bought her shades, since they "looked really stylish" and he was hoping to get similar ones; Goldwasser responded, "The [S]hade Store! Pricey but better quality"—she did not mention anything about TSS's allegedly deceptive discounting practices. Goldwasser Dep. 142:5-9, 149:18-23; Ex. 27 (GOLDWASSER000171).

***Mark Elkins***. Mark Elkins first contacted TSS by submitting a measurement request for shades in late December 2022. *See* Ex. 28 (ELKINS000001). Elkins became interested in TSS due to the variety of product options available. Ex. 29 ("Elkins Dep.") at 19:15-22. In December 2022, he visited the TSS website and recalled seeing a 15% off discount. *Id.* at 32:22-25. On December 24, 2022, Elkins emailed a TSS design consultant specifications for the shades he wanted. *See* Ex. 30 (ELKINS000002). The design consultant shared links to images of products for Elkins to consider. *Id.* On January 24, 2023, Elkins visited a TSS showroom. Elkins Dep. 51:3-10. He then placed an order for roller shades at a 15% discount. Ex. 31 (ELKINS000026). Elkins is satisfied by the quality of his shades, has benefited from his shades, and does not want to return them. Elkins Dep. 60:25-61:11, 61:21-23, 117:13-15.

***Robert Smith.*** Robert Smith is a real estate agent who purchased TSS shades for his own home. Ex 32 ("Smith Dep.") at 14:23-15:1; Ex. 65 (Smith Am. Resp. to Rog. No. 6). In July 2021, Smith scheduled a measurement appointment with a TSS design consultant. *See* Ex. 33

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

7

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

(TSS0008253). On July 6, 2021, Smith wrote to TSS that he wanted to make sure he could take advantage of the current sale, and the design consultant responded, "[d]on't worry about the sale, I am happy to hold that for you." *See* Ex. 34 (TSS0008263). Thereafter, the design consultant told Smith that because he was in the home business, he could receive a trade discount on his purchase. Smith Dep. 43:8-9. On July 13, 2021, Smith ordered nine roller shades, receiving a 30% trade discount. *See* Ex. 35 (SMITH000030-33).

Smith prioritized functionality, quality and aesthetics when making his TSS purchase. *See* Smith Dep. 23:3-12. Smith did not give "a thought" to whether or not anyone had previously purchased the same products. *Id*. at 198:11-20. He viewed the list price as representing "the value of the materials that went into it, the value of the labor that went into it, and the profit that The Shade Store wanted to make." *Id.* at 218:7-13. Smith testified that price can be a signal of quality and that there was nothing "else that the price is signifying that is important to [his] purchase process." *Id.* at 30:7-12. As to quality, Smith testified that "overall, [he was] actually very satisfied with [the shades]." *Id*. at 101:20-21. Smith wrote online reviews for his TSS purchase nearly a year after they were installed, referring to TSS's products as "just made better" and TSS as "the company to go with." *Id.* at 100:17-105:20; Exs. 36-37 (SMITH000007; SMITH000008). Smith does not want to return his shades. Smith Dep. 113:9-11. Smith let four others use his trade discount, and continued recommending TSS to others after contacting his lawyers regarding this case. *See* Dominick Decl. ¶ 12; Smith Dep. 85:16-20.

### E.     Related Washington Case Plaintiffs.

Plaintiffs' counsel represent two plaintiffs in a parallel litigation in the Western District of Washington ("*Fitzgerald* Litigation"). *See* Sec. Am. Class Action Compl., *Fitzgerald v. The Shade Store, LLC*, No. 2:23-cv-01435 (W.D. Wash. Nov. 21, 2024), ECF No. 54. Like this case, the claims in the *Fitzgerald* Litigation are premised on allegations that ***all*** TSS customers during the proposed class period were exposed to the same allegedly misleading marketing practices regarding list price and discounts. Those plaintiffs' purchase experiences further illustrate that certification is inappropriate.[2]

---

[2] The parties agreed that discovery can be used across both cases.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

8

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

***Katherine Adler***. Adler first visited TSS's website in spring or summer of 2023. Ex. 38 ("Adler Dep.") at 74:4-13. At that time, the website was advertising a sale. *Id.* at 75:11-16. Adler then met with a TSS design consultant at a TSS showroom where Adler discussed her project, reviewed materials, and ordered swatches. *Id.* at 77:13-21; Ex. 39 (ADLER000001). Over the next five months, Adler and her design consultant exchanged multiple emails and met in person to finalize the design details of Adler's first order of wood blinds and shades, which she placed on November 22, 2023. *See* Exs. 40-42 (TSS0038350; ADLER000304; ADLER000329). Prior to placing her first order, Adler visited the TSS website "maybe 20 to 30 times" and "every time [she] looked at the website, there was a mention of a sale." Adler Dep. 57:4-58:6. On February 13, 2024, Adler had an in-home consultation with her design consultant for a second project. *See* Ex. 43 (ADLER000217). After over three months of further design discussions, Adler placed her second order (consisting of roman and roller shades) with TSS on May 24, 2024. *See* Ex. 44 (ADLER000275). Based on her interactions with TSS throughout the design process, Adler believed that there was "always a sale" on TSS's products. Adler Dep. 204:15-21 ("Q. And you were aware . . . that The Shade Store ran this back-to-back sale at this time? A. . . . I was aware there was always a sale whenever I would be interacting.").

***Lee Fitzgerald.*** Lee Fitzgerald purchased a set of cellular shades from TSS's website on February 27, 2022. *See* Ex. 45 (FITZGERALD000002). Fitzgerald decided on TSS after conducting online research into different companies and shades. Ex. 46 ("Fitzgerald Dep.") at 71:24-72:24. When she placed her order, she received a discount of 20% off the list price and paid $512, pretax. *See* Ex. 45 (FITZGERALD000002). Fitzgerald testified that she is happy with the quality of her TSS shades. Fitzgerald Dep. 12:7-18, 29:12-14. Fitzgerald testified that the shades are worth "at least . . . over $500." *Id.* at 29:18-21.

> **F.  Plaintiffs File Suit Claiming They Believed TSS's List Price Was The "Market Value" Of TSS's Unique, Custom Products.**

Plaintiffs allege that they and members of the proposed class purchased window treatment products, and before placing their order, received quotes showing discounts of at least 15% or 20%

off the list price. TAC ¶¶ 10, 12.[3] Plaintiffs allege that TSS deceived customers by providing quotes that included a list price in strikethrough font and a final, discounted price beside it. *Id.* ¶ 10. Plaintiffs claim that they understood the strikethrough list price to be the "regular price and/or market value" of the products. *See id.* ¶ 50. According to Plaintiffs, because TSS "always" sold its products at a discount during the proposed class period, the list prices and the discounts were "false." *See id.* ¶¶ 12, 39. Plaintiffs allege that if they had known TSS frequently offered discounts, they would not have purchased from TSS or would have paid less. *Id.* ¶ 14.

Plaintiffs assert eight causes of action: (i) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 et. seq.; (ii) violation of California's Consumer Legal Remedies Act ("CLRA"); (iii) violation of California's Unfair Competition Law ("UCL");[4] (iv) breach of contract; (v) breach of express warranty; (vi) breach of implied warranty; (vii) quasi-contract / unjust enrichment; and (viii) intentional misrepresentation.

Plaintiffs seek to certify of a 23(b)(2) injunctive class and a 23(b)(3) damages class composed of: "All persons who, from May 21, 2020, until the date class notice is disseminated, purchased one or more The Shade Store products advertised at a discount from Defendant while in the State of California."[5] Mot. at 4-5. Plaintiffs also seek to certify two subclasses: (i) a "Trade Discount" Subclass comprising "[a]ll Class Members who received a trade discount;" and (ii) a "Public Discount" Subclass comprising "[a]ll Class Members who received a discount available to the general public (*i.e.*, any discount other than a trade discount)." *Id.* at 5.[6] Plaintiffs seek (i) recission and a full refund of the purchase price; (ii) "expectation damages," which Plaintiffs describe as the difference between the list price and purchase price; and (iii) "price premium" damages, which Plaintiffs describe as the premium TSS allegedly charged for its products based

---

[3] Plaintiffs refer to the quotes and invoices as "order summar[ies]." Mot. at 4:1-10.

[4] The UCL has three prongs: that the practice was (i) unlawful; (ii) deceptive; and (iii) unfair. *See* Cal. Bus. & Prof. Code § 17200. Plaintiffs maintain Defendant's conduct was unlawful under each prong. *See* TAC ¶¶ 127-36.

[5] Plaintiffs propose certain exclusions, including customers who received full refunds or purchased for resale. Mot. at 5.

[6] As discussed *supra* at Section II(B), TSS offered non-trade, non-public, custom negotiated discounts, and so this definition is incoherent and unclear as to which TSS's discounts are within its scope.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

on the challenged pricing practices. *See* TAC ¶¶ 101, 150.

### III. LEGAL STANDARD

A party seeking class certification must "affirmatively demonstrate his compliance" with Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). First, the party seeking certification must demonstrate that the plaintiff's claims satisfy each of the four requirements of Rule 23(a)—"numerosity, commonality, typicality, and adequate representation." *Id.* at 349. Second, after satisfying Rule 23(a), plaintiff must also establish "through evidentiary proof" that the proposed class falls within one or more of Rule 23(b)'s provisions. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

Certification is proper only if, after a "rigorous analysis," the court is satisfied that a class meets Rule 23 prerequisites and adjudicating plaintiff's claims will fully and fairly resolve the claim of the proposed class. *Wal-Mart*, 564 U.S. at 350-51. Because Rule 23 "does not set forth a mere pleading standard," a plaintiff may not rest on the allegations in his pleadings or conclusory statements but, instead, must put forth sufficient evidence to demonstrate class certification is appropriate. *Comcast*, 569 U.S. at 33.[7] Where "there is conflicting evidence presented for and against a requirement for class certification[,]" a "court must judg[e] the persuasiveness of the evidence presented and resolve any factual disputes necessary to determine whether" Rule 23's requirements "have been satisfied." *Vizcarra v. Unilever U.S., Inc.*, 339 F.R.D. 530, 546 (N.D. Cal. 2021) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982-83 (9th Cir. 2011)). A district court that "has doubts about whether the requirements of Rule 23 have been met" should deny certification. *Williams v. Apple, Inc.*, 338 F.R.D. 629, 636 (N.D. Cal. 2021).

### IV. ARGUMENT

As set forth below, there are several insurmountable obstacles to Rule 23(b)(3) predominance in this case, as an array of individualized issues predominate over common ones. Moreover, Plaintiffs cannot satisfy Rule 23(a)(3) as they are atypical. And because typicality and commonality are not satisfied, a 23(b)(2) injunctive class cannot be certified. Class certification

---

[7] Internal alterations, citations, and quotation marks are omitted from citations unless otherwise noted.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

11

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

should be denied in its entirety.

**A. Plaintiffs Have Not Established Predominance For Any Of Their Claims.**

As discussed *infra* in Section IV.C, Plaintiffs have failed to identify a common question sufficient to satisfy commonality. But to certify a class under Rule 23(b)(3), Plaintiffs must prove not just commonality, they must also prove that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). While related to commonality, predominance is "far more demanding," and intended to ensure that a class is sufficiently cohesive to overcome the due process concerns in representative litigation. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). The Ninth Circuit has explained that "Rule 23(b)(3) requires a district court to formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 579 (9th Cir. 2010), *rev'd on other grounds sub nom. Wal-Mart Stores v. Dukes*, 564 U.S. 338 (2011).

Plaintiffs have failed to establish predominance because individualized inquiries will be required to determine: (i) whether the "reasonable consumer" is "likely to be deceived;" (ii) materiality, reliance, causation, and injury; (iii) whether a class member is a "consumer" under the CLRA; (iv) whether TSS's advertised list prices were the "prevailing market price" in the three months preceding the representation; and (v) whether classwide relief is appropriate for Plaintiffs' "unfairness" claims (*i.e.,* its UCL and unjust enrichment / quasi contract claims) and its breach of contract / warranty claims.

**1. Individualized Inquiries Are Necessary To Determine Whether Members Of The Proposed Class Were Likely To Be Deceived For Purposes Of Plaintiffs' Deception Claims.**

To prevail on their FAL, CLRA, UCL fraud claims, and intentional misrepresentation claims (the "deception claims"), Plaintiffs must show that a "reasonable consumer would likely be deceived" by the alleged misrepresentations (*i.e.*, the strikethrough list price and discounts on quotes). *Forrett v. Gourmet Nut, Inc.*, 634 F. Supp. 3d 761, 765 (N.D. Cal. 2022). Plaintiffs allege that TSS's strikethrough list prices and discounts are deceptive because reasonable consumers are likely to believe the list prices represent the "regular price and/or market value" of the products.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

12

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

*See* TAC ¶ 50. Plaintiffs assert that the products were always on sale, so "instead of receiving a significant discount, Plaintiffs and the class received little or no discount." *Id.* ¶¶ 50-51.

Although the "reasonable consumer" standard is an objective test, Plaintiffs bear the burden of showing with common evidence that "it is probable that a significant portion of the consuming public could be confused by the allegedly misleading [representation]." *Vizcarra*, 339 F.R.D. at 548 (denying certification); *see also Moore v. Mars Petcare US, Inc.*, 2024 WL 4336602, at *4 (N.D. Cal. Sept. 27, 2024) (quoting *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014)) (denying certification and noting likelihood of deception "does not automatically translate into a classwide question"). Here, Plaintiffs rely on (i) the alleged uniformity of the purported misrepresentations, and (ii) the opinions of their proffered expert Bruce Silverman. *See* Mot. at 9.[8] Plaintiffs' argument fails both as a matter of law and fact.

As to the law, allegedly uniform representations are not enough if there are variations in customer experiences and information that affect how a reasonable consumer would view such a representation: "[e]ven where purchasers have been exposed to uniform written materials, courts have found predominance is not satisfied where putative class members' experiences varied," thereby "causing those class members' understanding of the [alleged misrepresentation], *i.e.* whether a class member is likely to be deceived, to vary as well." *Moore*, 2024 WL 4336602, at *6-7; *see also Clevenger v. Welch Foods Inc.*, 2022 WL 18228293, at *3 (C.D. Cal. Dec. 28, 2022) ("*Clevenger II*") (noting "contextual factors could [] prevent a reasonable consumer from being deceived") (collecting cases); *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *14 (N.D. Cal. June 13, 2014) (quoting *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011)) (predominance not satisfied where class members "were exposed to quite disparate information from various representatives of the defendant").

Where the alleged misrepresentation is included in a "mix of information" presented to customers, "the mix of information … presented to the class is a critical factor in the predominance analysis." *Circle Click Media LLC v. Regus Mgmt. Grp., LLC*, 2016 WL 1048046, at *11 (N.D.

---

[8] TSS has concurrently filed a Motion to Exclude the Testimony of Plaintiffs' Experts, Mr. Bruce Silverman and Mr. Colin B. Weir ("Motion to Exclude").

Cal. Mar. 11, 2016) ("*Circle Click I*") (denying certification despite uniform representations due to variations in how salespersons presented the information to class members).[9]

The facts show those legal principles apply here. As an initial matter, the conclusory testimony of Plaintiffs' expert Mr. Silverman is unreliable for the reasons explained in TSS's Motion to Exclude: it is based on undisclosed "focus groups" unrelated to custom goods and services or frequent discounts and ignores the facts of the case. *See* Mot. to Exclude at 1, 6, 8-11. This supports denial of certification. *Gross v. Vilore Foods Co.*, 2022 WL 1063085, at *6 (S.D. Cal. Apr. 8, 2022) (denying certification where plaintiffs' expert report failed to "establish [a] likelihood of deception on a classwide basis" and plaintiffs "pointed to [no other] common evidence capable of resolving on a classwide basis whether a reasonable consumer would have been deceived"); *Vizcarra*, 339 F.R.D. at 543-48, 552 (no commonality or predominance as to likelihood of deception where plaintiffs' expert opinion was "negate[d] or at the very least undermine[d]" by defendant's rebuttal expert and plaintiffs "pointed to no other common evidence that could establish likelihood of deception").

Moreover, Plaintiffs' admissions (which Silverman ignored) undermine any notion that TSS's list prices have a universal meaning to customers. Three Plaintiffs admitted that at the time of their TSS purchases, they understood list prices do not always reflect the market value of a product.[10] Three others admitted they do not recall "ever thinking about" whether a list price

---

[9] Plaintiffs are wrong to suggest that the reasonable consumer standard obviates the need to account for variations in class members' circumstances. Mot. at 9-10. Such a rule would gut Rule 23's requirements for deception-based claims. Further, several decisions Plaintiffs cite simply find allegations of deception plausible at the pleadings stage. *See Jacobs v. La-Z-Boy Inc.*, 2024 WL 5194976, at *4-5 (C.D. Cal. Nov. 14, 2024); *Munning v. Gap*, 2016 WL 6393550, at *4-5 (N.D. Cal. Oct. 28, 2016); *Vizcarra v. Michaels Stores, Inc.*, 710 F. Supp. 3d 718, 726-30 (N.D. Cal. 2024). The others are distinguishable fact-bound decisions. *See Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 520-23 (C.D. Cal. 2015) (uniform customer experiences purchasing off-the-rack department store clothing and accessories); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1114-17 (N.D. Cal. 2018) (uniform customer experiences purchasing grocery store cereal); *Clevenger v. Welch Foods Inc.*, 342 F.R.D. 446, 460 (C.D. Cal. 2022) ("*Clevenger I*") (finding predominance satisfied in case involving nonfunctional slack-fill and contrasting with cases where extrinsic evidence is required to show reasonable consumer's understanding of "subjective marketing misrepresentation").

[10] *See* Ex. 47 (Crowder Am. Resp. to RFA No. 64); Ex. 48 (Fitzgerald Am. Resp. to RFA No. 64); Ex. 49 (Lumian Am. Resp. to RFA No. 64); *see also* Lumian Dep. 110:21-25 (agreeing that "bottom line, a list price is not the same thing as the market value of a product").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

represents a product's market value at all.[11] Two Plaintiffs admitted they did not even consider whether the products they purchased had ever been sold before, *see* Crowder Dep. 37:16-21; Smith Dep. 198:11-20, which undermines any suggestion they considered the list price to represent either a market value or the price at which a product was usually sold. When pressed, Smith admitted he simply viewed the list price as representing "the value of the materials that went into it, the value of the labor that went into it, and the profit that [TSS] wanted to make from a sale" which was, at most, a signal of quality. Smith Dep. 218:7-15. Further, other customers may understand TSS's list price to reflect a comparison to the price at which other retailers, like Restoration Hardware, offer the same product for sale; indeed, Washington-case plaintiff Fitzgerald testified that were TSS's list prices the same as the prices offered at Restoration Hardware for similar TSS products (TSS's list prices are the same, if not lower), she would not view TSS's strikethrough pricing as deceptive. *See* Fitzgerald Dep. 100:22-101:12.

Given the lack of universal understanding, Plaintiffs' focus on allegedly universal representations inappropriately glosses over differences in class members' experiences ***before*** they place their order—*i.e.*, the "mix of information" about prices and discounts presented to the proposed class. Here, the TSS purchase process can last several months, during which time customers receive varied information regarding TSS's pricing and the frequency, duration, and amount of TSS's discounts. Strombom Rep. ¶ 133 n.194 (explaining that from December 31, 2018, through October 13, 2024, about 35% of orders were completed within 25 days, while over 25% took more than 200 days); *see also* Strombom Rep. at Exs. 8A, 8B.

The mix of information that customers were actually exposed to in this extended purchase process would alter how a reasonable consumer perceives TSS's discounts. As TSS's marketing expert Dr. Itamar Simonson explains: "[G]iven the complex, high consumer involvement nature of the purchase, marketing materials (*e.g.*, emails, store signs), and the typically lengthy purchase process, proposed class representatives and similar consumers had a great deal of information about the frequency, duration, and magnitude of the presented discounts and a great deal of time

---

[11] *See* Ex. 50 (Smith Am. Resp. to RFA No. 64); Ex. 51 (Goldwasser Am. Resp. to RFA No. 64); Ex. 52 (Adler Am. Resp. to RFA No. 64).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

15

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

to contemplate their purchase." *See* Ex. 53 ("Simonson Rep.") ¶ 38. In his deposition, Mr. Silverman actually agreed, testifying that "[i]f [customers] feel that a company is always discounting . . . then their expectation is that the list price is . . . kind of meaningless and that what matters is the discount price." Ex. 54 ("Silverman Dep.") at 80:22-81:9, 195:8-13. Here, the facts show there are at least four aspects of TSS customers' varied experiences that would materially affect how a reasonable consumer understood TSS's discounts and require individualized inquiry.

**TSS's Public Promotion Of Its Sitewide Discounts.** During Adler's months-long purchase process, she visited TSS's website "a whole bunch of times" and received marketing emails from TSS "at least twice a week"—"very possibl[y]" more than fifty emails in total. *See* Adler Dep. 60:16-18, 61:6-11, 212:19-23. She noticed that discounts were advertised "every time" she looked at the TSS website and in "all" of the marketing emails she received. *Id.* at 213:15-18, 216:24-217:5. Similarly, between the time he began his search in December 2020 and made his purchase in August 2021, Lumian visited TSS's website twelve times—during which a 20% discount was showcased each time. Lumian Dep. 139:11-13. Crowder recalled visiting the TSS website a few times before her purchase (Ex. 7, Rog. No. 3), during which a 20% discount was showcased each time. *See* Crowder Dep. 101:21-103:24; Exs. 8-10. And Elkins discussed visiting TSS's website in December before his purchase at the end of January, and that to his best recollection, he saw "something about a sale on there." Elkins Dep. 52:14-18.

Consistent with both marketing experts' opinions, Plaintiffs admitted that this exposure to TSS's frequent discounts affected how they understood them. Adler admitted that when she placed her orders, she understood that TSS was "having frequent sales" and believed it was very "unlikely that anyone would be paying [the] full [list] price" for TSS's products. Adler Dep. 151:10-18, 213:15-18. Lumian similarly testified that it was "possible" he concluded that TSS customers often pay less than list price. Lumian Dep. 139:11-13, 140:4-11. Not only does this testimony raise standing issues, these examples show that individualized inquiry into customer experience would be necessary to understand whether a reasonable consumer in the shoes of a class member would have viewed TSS's list prices as the "regular price and/or market value" of the products as Plaintiffs allege. *See* TAC ¶ 50.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

16

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

**TSS's Public Offering Of Widely Available Discount Codes.** Throughout the proposed class period, TSS's website included an email sign-up field inviting people to provide an email address in exchange for a non-expiring discount. Spatz Decl. ¶ 12. Crowder herself received an email with a non-expiring 20% discount code. Ex. 3. Again, both marketing experts agree that awareness of these promotions would affect how a reasonable consumer understood discounts. Simonson Rep. ¶ 40 ("[A] customer who noticed a 20% discount might perceive it as routine or standard, given the perpetual availability of similar offers for email subscribers"); Silverman Dep. 143:18-144:2 ("If Shade Store's consumers believed that everybody who gives them an e-mail address automatically gets 20 percent off, I guess in perpetuity, that's going to negate their list price[.]").

**TSS Design Consultants' One-on-One Interactions With Customers.** Because customers' design needs and preferences evolve throughout the customization process, customers often request and receive multiple quotes. *See* Spatz Decl. ¶ 14. If the promotion displayed on one price quote expires before the customer receives their next quote, yet their next quote displays another promotion with a new expiration date, the customer is alerted that TSS is running back-to-back discounts. For example, in the three weeks leading up to her first order, Adler received "at least four price quotes and invoices," "every price quote that [she] received [during that period] had a discount," and those discounts were in "different amounts." Adler Dep. 213:2-9, 213:22-214:12. This was enough to let Adler know that "there were multiple sales occurring in rapid succession," and that TSS had "frequent sales." *Id*. at 132:2-5.

TSS's design consultants also regularly assure customers that sales will continue to be available. Adler, for example, testified that she was "reassured" through many conversations with a design consultant that she would get a discount no matter when she placed her order. *Id*. at 99:13-18, 118:2-7. Smith was also assured by his design consultant that he did not need to rush to place his order; she told him, "Don't worry about the sale, I am happy to hold that for you." Ex. 55 (SMITH000045). This was consistent with TSS's design consultants' standard practice to let customers know that discounts would continue to be available. Mendoza Dec. ¶ 9. Again, individualized inquiries into customers' discussions with TSS's design consultants would be

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

17

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

necessary to evaluate the potential for deception. *See Circle Click Media LLC v. Regus Mgmt. Grp., LLC*, 2016 WL 2593654, *3 (N.D. Cal. May 5, 2016) ("*Circle Click II*") (finding individualized issues predominated because plaintiff could not "simply ignore" evidence that, in some instances, salespersons "affirmatively informed" customers of disputed fees).

**TSS Customers' Negotiation of Pricing.** Finally, Mr. Silverman testified that his opinion of customers' understanding of TSS's discounts was based on the assumption that TSS's prices were not negotiable. He also testified that where it is undisputed that prices *are* negotiable, customers do *not* necessarily view a product's list price as the regular price. Silverman Dep. 220:19-23, 221:20-23. But the evidence shows that TSS prices *are* negotiable: many TSS customers negotiate pricing and obtain discretionary discounts from TSS design consultants. *See* Mendoza Decl. ¶ 7. Indeed, when Goldwasser informed her design consultant that 3 Day Blinds offered a lower quote, her TSS design consultant agreed to requote her and to find "cost saving opportunities." *See* Exs. 63-64 (TSS0008396, TSS0008403). Moreover, Plaintiffs concede that discounts varied. *See* Franzini Decl. ¶ 22.

Because class members' experiences and the information conveyed to them by TSS varies in ways that would affect how a reasonable consumer understands TSS's discounts, "fact-based determinations as to each class member" would be required "to resolve whether the particular mix of information presented would likely deceive the consumer," precluding certification. *See Circle Click*, 2016 WL 1048046, at *13; *Moore*, 2024 WL 4336602, at *6-7 (finding plaintiff "failed to show common questions predominate" as to "likelihood of deception" due to "variation" in class members' experiences and the information conveyed to them regarding defendants' products).[12]

### 2. Individual Inquiries Are Required To Determine Materiality, Reliance, Causation, and Injury For Purposes Of Plaintiffs' Deception Claims.

Individualized inquiries would also be required to determine the materiality, reliance, causation, and injury elements of Plaintiffs' deception claims. *See Broomfield v. Craft Brew All.,*

---

[12] Plaintiffs' proffered common proof of "falsity" does not suggest a different result. Mot. at 10-11 (discussing line-item reports and promotional calendars). Even assuming those documents show TSS "consistently offered" discounts, *id.* at 10, Plaintiffs still have not presented common evidence of how reasonable customers interpreted them.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

18

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

*Inc.*, 2018 WL 4952519, at *10-13 (N.D. Cal. Sept. 25, 2018); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 504-06 (S.D. Cal. 2013). Plaintiffs present no classwide evidence of reliance, causation, or injury and simply assert they may be inferred from a showing of materiality. Mot. at 13-14. Although such an inference can be "*available*" for statutory claims, Plaintiffs are not "*entitled* to the presumptions" unless they establish that the alleged misrepresentation was "material to the class." *In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, 2017 WL 2559615, at *7 (C.D. Cal. June 7, 2017) (emphasis in original) (denying certification). "If the misrepresentation or omission is not material to all class members, the issue of reliance would vary from consumer to consumer and the class should not be certified." *Lytle v. Nutramax Laby's, Inc.*, 114 F.4th 1011, 1034-35 (9th Cir. 2024).

Plaintiffs have failed to establish classwide materiality. Plaintiffs' only evidence of materiality is the unreliable and inadmissible declaration of their expert, Mr. Silverman. *See* Mot. at 14 (citing Silverman ¶¶ 79-84); Mot. to Exclude at 8-16.[13] And even if Mr. Silverman's opinion could carry any weight, it is persuasively rebutted by the testimony of Dr. Simonson, Mr. Silverman's own deposition admissions, and the facts of the case. *Johnson v. Harley-Davidson Motor Co.*, 285 F.R.D. 573, 581 (E.D. Cal. 2012) (finding "materiality is not an issue subject to common, rather than individualized proof" where "[d]efendants offer persuasive evidence" that the challenged claims "would not be material to many of their consumers").

Dr. Simonson opines that classwide materiality cannot be assumed in part based on literature related to the concept of "persuasion knowledge," in which customers who are "exposed to frequent price discounts by retailers" can understand that the "focus of their purchasing decisions should be on their assessment of the value they get rather than on the presented discounts." Simonson Rep. ¶ 36. In his deposition, Mr. Silverman admitted this point, testifying that when customers become aware that a product is repeatedly discounted, they no longer attach

---

[13] Plaintiffs cite two cases in which Mr. Silverman opined on materiality and the courts found predominance satisfied. *See* Mot. at 14-15 (citing *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2018); *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552 (N.D. Cal. 2020)). But Silverman's opinions in those grocery items cases had nothing to do with frequent discounts on custom products, which is what Silverman purports to opine on here, and which he testified customers may see as "meaningless." Silverman Dep. 195:8-13.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

19

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

importance to the advertised list price—which becomes "meaningless." Silverman Dep. 80:22-81:9, 195:8-13.

Dr. Simonson further supported his opinions with specific reference to *People v. Macy's* where the court found—based on Dr. Simonson's "exemplary" survey—that Macy's use of reference prices did not "have any noticeable impact on consumers' price and value perceptions nor do those terms have a noticeable impact on consumers' purchasing decisions. Macy's customers appear to largely ignore them and perceive them as uninformative." *People v. Macy's, Inc.*, 2021 WL 3469996, at *5 (Cal. Super. Ct. July 13, 2021). Dr. Simonson explained why this conclusion would be more applicable here: *Macy's* involved a "relatively low-priced product, with a short decision-to-purchase time, such as a shirt," whereas here, TSS's customers "had a great deal of information about the frequency, duration, and magnitude of the presented discounts and a great deal of time to contemplate their purchase." Simonson Rep. ¶¶ 37-38.

In total, this expert evidence underscores that materiality cannot be assumed, and along with the rest of the record evidence shows that individualized inquiries would be required to determine materiality. Two additional points reinforce this conclusion.

***First***, in order to show materiality is subject to common proof, Plaintiffs must show a common understanding of the alleged misrepresentations (the strikethrough price and discount). *See, e.g.*, *Jones*, 2014 WL 2702726, at *14-16 (holding individualized materiality inquiries predominated as where plaintiffs failed to show a "single, controlling definition of" allegedly deceptive term); *see also In re 5-Hour Energy*, 2017 WL 2559615, at *7-8 ("Where plaintiffs fail to establish a controlling definition for . . . [the] alleged misstatement . . . materiality is not susceptible to common proof."). As discussed above, the evidence shows there is no common understanding of TSS's discounts. *See supra* Section IV.A.1.

***Second***, materiality is subject to individualized inquiry where purchasers consider a "variety of facts" and may have made their purchase regardless of the challenged representation. *See Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*, 2016 WL 5920345, at *8 (C.D. Cal. June 23, 2016) (denying certification where customers purchased the products "based on a variety of factors, including their own research, speaking with sales people, comparison shopping, or

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

20

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

recommendations from family, friends, or co-workers"); *Jones*, 2014 WL 2702726, at \*14-16 (finding individualized inquiries predominated where plaintiffs' own expert "acknowledged in her deposition that some customers" would "buy a product regardless of" the alleged statement).[14]

Here, the evidence shows customers consider a variety of factors and purchase TSS's products for their quality, aesthetics, customizability, customer service, functionality, and brand. *See* Simonson Rep. ¶ 23. In fact, Lumian's and Crowder's testimony firmly establishes the discounts were not material to their purchases. Lumian admitted he would have made his purchase regardless of the advertised discount.[15] Crowder testified she was focused on the bottom-line price.[16] Both testified that the products they received were worth the bottom-line price they paid.[17] And in addition to materiality, these admissions show individualized inquiries predominate as to injury, too. *In re POM Wonderful LLC Mktg. & Sales Pracs. Litig.*, 2014 WL 1225184, at \*4-5 (C.D. Cal. Mar. 5, 2014) (decertifying FAL, CLRA, and UCL claims and noting "where, as here, consumers buy a product for myriad reasons, damages resulting from the alleged misrepresentations will not possibly be uniform or amenable to class proof"); *cf. Stiner v. Brookdale Senior Living, Inc.*, 665 F. Supp. 3d 1150, 1211 (N.D. Cal. 2023) (finding "reasonable

---

[14] *See also Kramer v. Wilson Sporting Goods, Co.*, 2014 WL 12570919, at \*2, 6 (C.D. Cal. Mar. 21, 2014) (denying certification where customers' tennis racquet purchase decisions were motivated by "many different factors," including "technology updates, the right price point, and the need to replace a broken or worn out racquet"); *In re 5-Hour Energy*, 2017 WL 2559615, at \*7-8 (denying certification where customers had "numerous reasons" for making their purchases); *Johnson*, 285 F.R.D. at 581 (finding materiality not subject to common proof where there were "multiple factors affecting what reasonable consumers would consider material when purchasing one of the class [products]"); *see also In re Graphics Processing Units Antitr. Litig.*, 253 F.R.D. 478, 490-91 (N.D. Cal. 2008) (denying certification and finding no predominance where "myriad of factors played a role" and "influenced the final sales price" of transactions, and many sales were made "after customized negotiations," "time constraints" may not have been important for some customers, and many products were "customized" to each purchaser's needs).

[15] Lumian Dep. 190:14-19 ("Q: . . . [I]f it did not say thing about a sale here [on your invoice], all it showed you was a bottom-line price of 2286.70, would you have purchased the product? [A:] I think so.").

[16] Crowder Dep. 89:5-12 ("[A:] Again, it was the discount that was important, not the original price[] . . . . [Q:] Okay. And when you say 'the discount,' you're talking about the price that you ended up actually paying; correct? A. Yes.").

[17] *See* Crowder Dep. 56:23-57:3 (Q: "[I]n terms of the functionality you've received and the aesthetics that you're happy with, would you pay [the same price that you paid] for those blinds? [A:] Yes."); Lumian Dep. 191:24-192:4 (agreeing that "everything" about the shades he received "was consistent with [his] expectation, given the price at which [he] paid for the product").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

consumer standard cannot paper over the reality that the specifics of the promises made to class members and whether they suffered any injury in light of those promises would predominate").

To combat this evidence, Plaintiffs argue that *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013), stands for the proposition that TSS's strikethrough prices were *per se* material because there are state and federal laws that prohibit retailers from advertising false sales. Mot. at 15. But *Hinojos* made no such holding and did not address class certification—it analyzed standing allegations on a motion to dismiss. The Ninth Circuit held only that the existence of these statutes meant that at the pleadings stage, the plaintiff had plausibly alleged that price representations could have been material. *Hinojos*, 718 F.3d at 1107.[18] But the *Hinojos* ruling on the sufficiency of pleadings does not mean "that a legislative decision that a practice is misleading must be treated as dispositive regarding materiality and thus shut the door on any further evidence or inquiry." *Clevenger II*, 2022 WL 18228293, at *4. Instead, "numerous courts post-*Hinojos* also have made it clear" that claims predicated on a statutory violation are "still subject to the reasonable consumer test and cannot be resolved as a matter of law without consideration of the circumstances surrounding the [challenged representation]." *Id.* (collecting cases).

The law says the court still must consider the evidence, and the evidence shows that TSS's advertised list prices "would not be material to many of [TSS's] consumers," and therefore materiality "is not an issue subject to common, rather than individualized proof." *Johnson*, 285 F.R.D. at 581 (finding materiality not subject to common proof where defendants offered evidence that motorcycles' excessive heat "would not be material to many of [defendant's] consumers") .

### 3. Individualized Inquiries Would Be Necessary To Determine Who Is A "Consumer" With Standing To Assert A CLRA Claim.

Plaintiffs' CLRA claim also cannot be certified for the independent reason that individualized inquiries are required to determine whether a putative class member is a "consumer" with standing under the CLRA. *See Klein v. Parker Univ.*, 2021 WL 5414330, at *1 (N.D. Cal.

---

[18] *Hinojos* cited *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 329 (2011), for this proposition. In *Kwikset*, the court did not hold that a legislature's prohibition of certain practices conclusively establishes materiality to reasonable customers regardless of surrounding context; rather, the court merely noted that "[t]he legislature evidently recognized . . . that *some* consumers *might* be deceived by and rely on" a particular representation. *Id.*

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
LOS ANGELES

22

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

July 12, 2021) (CLRA plaintiffs must "persuasively demonstrate their status as consumers"). An individual who purchases goods for use in her business is not a consumer. Cal. Civ. Code § 1761(d) (limiting consumers to those who purchase "for personal, family, or household purposes"). Predominance is not satisfied where a plaintiff fails "to suggest any potentially viable means for determining the consumer status of class members without engaging in individualized inquiry into the circumstances of each class member." *Ewert v. eBay, Inc.*, 2010 WL 4269259, at *9 (N.D. Cal. Oct. 25, 2010) (denying certification); *Arabian v. Sony Elecs. Inc.*, 2007 WL 627977, at *14 (S.D. Cal. Feb. 22, 2007) (denying certification and finding predominance not satisfied because CLRA claim required individualized inquiries into whether class members purchased for personal or professional use); *Mazur v. eBay Inc.*, 257 F.R.D. 563, 572 (N.D. Cal. 2009) (same).

Here, Plaintiffs' proposed class and subclasses include customers who purchased TSS products for business purposes (*e.g.*, shades for an office window). Spatz Decl. ¶ 20.[19] There is no way to identify on a classwide basis putative class members who ordered window treatments for business purposes, nor have Plaintiffs suggested (much less shown) there is. *See* Dominick Decl. ¶ 15. Plaintiffs' proposed "trade discount" and "public discount" subclasses do not solve this problem, since non-trade customers purchased window treatments for business purposes. *See id.*; Spatz Decl. ¶ 20. Because individualized inquiries would be required to determine whether class members are consumers, the CLRA claim should not be certified.

### 4. FAL Section 17501 Claim

Section 17501 of the FAL prohibits advertising a price as a "former price" of a product "unless the alleged former price was the prevailing market price" within the three months "immediately preceding the publication of the advertisement." Cal. Bus. & Prof. Code § 17501. Thus, to prevail on their Section 17501 claim, Plaintiffs must show that TSS advertised a "former price" that was not the "prevailing market price" within the three preceding months. *Id.* Individualized inquiries would be required to resolve these questions, precluding certification.

---

[19] Plaintiffs' counsel know this, since in 2019, Plaintiffs' counsel purchased window treatments from TSS for their law firm's offices. *See* Ex. 56 (TSS0011619—TSS0011620).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

23

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

*First*, Plaintiffs argue that their Section 17501 claim is subject to common proof regarding whether a reasonable consumer interprets TSS's strikethrough list prices as "former prices." Mot. at 12. But the reasonable consumer's understanding of TSS's list prices requires individualized inquiries, for the reasons discussed above. *See supra* Section IV.A.1. While courts have, in other contexts, found strikethrough prices to qualify as "former prices," those cases differ from TSS's lengthy, highly custom products, which are subject to price negotiation. *See id.*

*Second*, Plaintiffs are incorrect that "prevailing market prices" for each and every product can be determined classwide using TSS's "transaction data." Mot. at 12. During the class period, Restoration Hardware (a third-party retailer) offered many of TSS's products for sale at prices at or above TSS's list prices. Dominick Decl. ¶ 8. This included identical hard window treatment products (*e.g.*, shades and blinds), and virtually identical soft window treatments (*e.g.*, drapery). *Id.* To determine a "prevailing market price" for any specific product, a product-by-product analysis would have to consider the price at which Restoration Hardware offered the product for sale. Further, TSS's transaction data cannot be analyzed in a uniform way, since there were periods during the proposed class period when TSS's products were offered and sold at the list price and *not* at a discount—which would require unique calculations. *See* Spatz Decl. ¶ 13. Consequently, to determine whether the list price for a given class member's product was the prevailing price during the preceding three-month period, individualized inquiries would be necessary.

### 5. Plaintiffs' Unfairness Claims

Plaintiffs' claims under the UCL's unlawful and unfair prongs, as well as their unjust enrichment / quasi contract claims (the "Unfairness Claims"), also require individualized inquiry. Plaintiffs' UCL claims are based on alleged predicate violations of the CLRA and FAL (TAC ¶¶ 127, 132), and individual issues predominate for the same reasons discussed above with respect to those predicate claims. *See supra* Sections IV.A.1-2; *see also Menagerie Prods. v. Citysearch*, 2009 WL 3770668, at *14 (C.D. Cal. Nov. 9, 2009) (finding common issues did not predominate for plaintiff's unfairness claim because "individual expectations about the business practice are

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

24

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

relevant to determining the extent of [plaintiff's] harm").[20]

Furthermore, the "majority view is that unjust enrichment claims usually are not amenable to class treatment." *Hart v. TWC Prod. & Tech. LLC*, 2023 WL 3568078, at *11-12 (N.D. Cal. Mar. 30, 2023). In particular, where "individualized inquiries [a]re necessary to determine the equitable circumstances between each class member and the defendant," class certification should be denied. *Id.* Here, the equitable circumstances regarding what class members knew about the frequency of TSS's discounts require individualized inquiries. *See supra* Section IV.A.1.

### 6.     <u>Breach of Contract and Warranty Claims</u>

Plaintiffs' breach of contract and warranty claims are predicated on an alleged promise to provide customers with window treatments worth a "particular regular listed price" and breach of that promise by delivering products worth less than that price. *See* TAC ¶¶ 73, 141-67. Plaintiffs contend predominance is satisfied because this promise is governed by the objective, reasonable consumer standard. But as set forth above, determining whether a customer interpreted the "regular price" on a price quote to be what their purchased product was "worth" would require individualized inquiries. *See supra* Section IV.A.1; Elkins Dep. 105:14-106:14 (acknowledging the value of window treatments is subjective to each person). And materiality would require individualized inquiries, too. *See supra* Section IV.A.2; *Gross*, 2022 WL 1063085, at *8 ("[C]lass treatment of breach of express warranty claims is only appropriate if plaintiffs can demonstrate that the alleged misrepresentation would have been material to a reasonable consumer.").

### B.     **Plaintiffs Cannot Prove Damages on a Classwide Basis.**

A party seeking class certification bears the burden of "establishing that damages are capable of measurement on a classwide basis" through use of a "common methodology." *Comcast*, 569 U.S. at 34. To certify a class, Plaintiffs must proffer evidence "demonstrating the existence of a classwide method of awarding relief that is consistent with the plaintiffs' theory of

---

[20] Although Plaintiffs also purport to base their UCL unlawful and unfair prong claims on alleged predicate violations of the FTC Act and regulations (TAC ¶¶ 127, 132), Plaintiffs did not base their certification arguments on such violations and, thus, those arguments have been waived. *See Gallegos v. Saul*, 2020 WL 13925332, at *2 (N.D. Cal. Nov. 27, 2020) (finding argument "not properly raised" in motion "waived" in the reply). In any event, even if FTC regulation violations could qualify as UCL violations, whether the alleged practice was "unfair" under the FTC Act will require individualized inquiries.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

25

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

liability." *Astiana v. Ben & Jerry's*, 2014 WL 60097, at \*12 (N.D. Cal. Jan. 7, 2014).

Plaintiffs seek two measures of damages: restitution (under their UCL, FAL, CLRA, and Unjust Enrichment / Quasi Contract Claims) and "expectation damages" (under their CLRA, Contract, Warranty, and Misrepresentation claims). They rely on the declaration of Colin B. Weir to propose three different methodologies to calculate those measures: (i) rescission and total refund (restitution); (ii) "expectation damages" (damages), and (iii) "price premium" (restitution and damages). All three models fail, defeating class certification. *See Mueller v. Puritan's Pride, Inc.*, 2021 WL 5494254, at \*6 (N.D. Cal. Nov. 23, 2021) (denying certification of 23(b)(3) class).

### 1.     "Rescission and Full Refund" (Restitution)

Plaintiffs propose that putative class members should be able to return the products they purchased and receive a full refund of their purchase price. *See* Mot. at 21-22. But "[a] party seeking restitution must generally return any benefit that it has received." *In re POM Wonderful*, 2014 WL 1225184, at \*3. Thus, full refund models are improper where "class members undeniably received some benefit from the products." *Caldera v. J.M. Smucker Co.*, 2014 WL 1477400, at \*1 (C.D. Cal. Apr. 15, 2014) (denying certification). For class certification purposes, "predominance is not satisfied [by a full refund model] if the named plaintiff or class members received some value from the product." *Hawkins v. Kroger Co.*, 337 F.R.D. 518, 542 (S.D. Cal. 2020); *see also Red v. Kraft Foods, Inc.*, 2012 WL 8019257, at \*11 (C.D. Cal. Apr. 12, 2012).

Here, Plaintiffs admitted that they received value as they were satisfied with their purchases. *See supra* Section II.D. Indeed, they have enjoyed the use of their window treatments since their purchase. Plaintiffs' "rescission and full refund" ignores the value that TSS's products provided. Strombom Rep. ¶ 136. It is not an appropriate classwide damages model.[21]

---

[21] Plaintiffs' cited cases are distinguishable. Mot. at 22-23. *Calderon v. Kate Spade & Co., LLC* and *Simon v. Carter's, Inc.*, simply declined to dismiss claims on the pleadings. *Calderon*, 2020 WL 1062930 (S.D. Cal. Mar. 5, 2020); *Simon*, 2020 WL 13505608 (N.D. Cal. July 13, 2020). *Spann* was decided before the Ninth Circuit held that a full refund is not available where the plaintiff received value. *See Chowning v. Kohl's Dep't Stores, Inc.*, 734 F. App'x 404, 925 (9th Cir. 2018) (affirming grant of summary judgment where rescission was not available because plaintiff received value from the product). And the *In re PFA Insurance Marketing Litigation*, plaintiffs did not seek a "full refund," but rather a partial refund of "premium payments paid, *minus any offsets for benefits or commissions received*." 696 F. Supp. 3d 788, 818 (N.D. Cal. 2021) (emphasis added). Plaintiffs here do not propose any method to offset benefits received.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

26

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

### 2. **"Expectation Damages" (Damages)**

Plaintiffs also purport to seek "expectation damages" or the "the difference between what class members were promised and expected and what they actually got." Mot. at 19. Plaintiffs contend this is equal to the advertised discount, calculated by taking the difference between the (i) list price, and (ii) the bottom-line price paid, on each class member's purchase order. *Id*. at 20-21. Weir opines that he can calculate this number, but has no opinion as to whether it actually measures class members' expectations. Ex. 59 ("Weir Dep.") 116:9-12, 116:20-23.

Courts have held that such an "expected discount" model is "unsound" where plaintiffs "do not dispute that they received . . . exactly the products they expected to get for the price they paid." *Mueller*, 2021 WL 5494254, at *6 (rejecting model where plaintiffs were not "deprived . . . of the substantive products they paid for"); *cf. Nguyen v. Lovesac Co.*, 2025 WL 950511, at *6 (E.D. Cal. Mar. 28, 2025) ("Pricing about the product alone cannot constitute a representation or statement about the product.") (collecting cases).

But even if Plaintiffs' version of an "expectation" theory could be legally cognizable, it would still require a classwide expectation that TSS's products had a market value of the list price. Plaintiffs' own marketing expert, Mr. Silverman, testified that where (i) where customers recognized that a retailer had frequent sales, and (ii) customers negotiated price, they do not see the list price as the market value. Silverman Dep. 195:6-13, 221:20-23. And testimony from Plaintiffs and other customers contradicts the notion there was any such classwide expectation. Adler Dep. 151:14-18 ("Q. So did you believe that anyone was actually paying this full list price if the products were always on sale? A. I think it's pretty unlikely that anyone would be paying that full price."); Lumian Dep. 128:11-15 ("Q. Is it reasonable to you to have an expectation that a product is worth whatever the list price is no matter what the list price is? A. I don't think that that statement is always true."); Crowder Dep. 83:6-14 ("Q. . . . [Y]ou had no intention to sort of -- to resell The Shade Store shades when you were purchasing them; correct? A. Correct. Q. And -- and it's my understanding that you are testifying that you didn't – don't really have an idea one way or the other as to market value of the shades; correct? A. Correct."); *see* Ex. 50 (Smith Am. Resp. to RFA No. 64) (Smith did not recall "ever thinking about" whether a list price represents a

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

27

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

product's market value); Ex. 51 (Goldwasser Am. Resp. to RFA No. 64) (same).

Indeed, to the extent that Plaintiffs suggested that list price was an indicator of "value," they explained that it was simply a potential indicator of quality. Smith Dep. 28:24-30:10 ("Q. When you say price can be sort of an indicator of value, you're saying that the price is one indication of the quality of the product that you would receive; is that correct? A. Yes. . . . Q. Besides the quality, is there anything else that the price is signifying that is important to your purchase process? A. Not – not really."). And Plaintiffs largely admitted receiving the quality they expected. *See* Lumian Dep. 82:6-8 ("Q. Was the quality of the shades in line with what you expected? A. From what I recall, yes.").[22] Because there were no classwide expectations consistent with Plaintiffs' "expectation" theory, it is not a viable measure of damages. *Mueller*, 2021 WL 5494254, at *7 (rejecting damages method "not tethered to the consumer evidence in this case").

### 3. "Price Premium" (Restitution and Damages)

Finally, Plaintiffs also advance a price premium theory of damages, which presumes that TSS's alleged pricing practices artificially increased demand for its products, allowing TSS "to charge more than it otherwise could." *See* Mot. at 16-19. To calculate these damages, Weir proposes conducting a conjoint survey to calculate how TSS's alleged discounting would purportedly affect customers' willingness-to-pay for TSS's products, and then, holding supply constant, using those results to calculate a single alleged "price premium" for all TSS's products. *See generally* Ex. 61 ("Weir Decl.").

Relying on *Lytle*, Weir does not attempt to execute any step of the proposed methodology. 114 F.4th at 1031; Mot. at 17, n.8. But *Lytle* does not give class-action plaintiffs carte blanche to rely on just any damages model proposed by an expert. *Lytle* held that (i) a Rule 23 analysis "still requires determining whether the expert's methodology is reliable," (ii) "to be sure, the fact the model has not been executed remains relevant," and (iii) "the fact that a model is underdeveloped may weigh against a finding that it will provide a reliable form of proof." 114 F.4th at 1031-32; *see also Blain v. Liberty Mut. Fire Ins. Co.*, 2025 WL 886966, at *19 (S.D. Cal. Mar. 21, 2025)

---

[22] *See also, e.g.*, Smith Dep. 25:3-9; Fitzgerald Dep. 12:7-10; Crowder Dep. 90:12-14; Elkins Dep. 61:21-23.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

28

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

(applying *Lytle*, finding proposed expert damages methodology unreliable, and denying class certification).

As explained in TSS's Motion to Exclude, Weir's price premium model is not a reliable form of proof. His proposed conjoint survey (i) is a novel and unsupported attempt to run a survey where economic value is ***both*** an input and an output; (ii) does not account for the primary attributes that drive purchases of TSS products; and (iii) does not account for the information mix TSS's customers receive regarding the availability of discounts. *See* Mot. to Exclude at 16-22; Strombom Rep. ¶¶ 16(d), 55, 62, 68-73; Simonson Rep. ¶¶ 20-60. Moreover, Weir's proposed method for converting the results of that survey into a single price premium (i) does not account for different products having different demand elasticities, and (ii) does not meaningfully take into account supply-side considerations. *See* Mot. to Exclude at 7, 16-18; Strombom Rep. ¶¶ 83-122.

Without a reliable method to calculate classwide damages, the Court should deny Plaintiffs' request to certify a class under 23(b)(3). *Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 187 (N.D. Cal. 2015) (excluding damages methodology as unreliable and denying Rule 23(b)(3) class).

### C. Plaintiffs Fail To Satisfy Commonality.

Rule 23(a)(2) requires the party seeking certification to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). However, "[t]he mere existence of a common question does not satisfy Rule 23(a)(2)'s commonality requirement;" rather, a plaintiff must identify common questions whose answers will "drive the resolution of the litigation." *Handloser v. HCL Techs., Ltd.*, 2021 WL 879802, at *5 (N.D. Cal. Mar. 9, 2021) (denying certification) (quoting *Wal-Mart*, 564 U.S. at 350). Further, to satisfy commonality, a plaintiff must also "demonstrate that the class members have suffered the same injury," not "merely that they have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 350-51.

Here, Plaintiffs argue that their claims will turn on (i) "what [TSS's] advertising conveys (*i.e.*, whether it conveys that the advertised list prices are the prices at which [TSS] usually sells its products and that consumers are getting a genuine a [sic] discount off those regular prices)" and (ii) "whether this is true or not." Mot. at 9. Neither question can be resolved by common proof.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
LOS ANGELES

29

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

*First*, as discussed above, a reasonable consumer's understanding of TSS's advertised list prices and discounts cannot be resolved by common proof. *See supra,* Section IV.A.1.

And *second*, because there is no common understanding of TSS's list prices, any question as to whether one such understanding is "false" is not a common question that will drive resolution of the litigation. If there was not a classwide expectations that list prices were the price at which TSS's products were typically sold and their market value, then whether the list prices in fact did represent those things is not a question that will "drive the resolution" of the case, but rather merely a threshold question constituting "the first lap of what would be a very long race"; the "harder questions, like [deception, materiality, causation, and injury], would remain." *Stiner*, 665 F. Supp. 3d at 1187 (finding commonality requirement not met, even though "important threshold issue" of statute's applicability to defendant's facilities could be resolved by common proof).

### D. Plaintiffs Do Not Satisfy Typicality Because They Only Purchased A Subset of Class Products, Had Varying Purchase Experiences, And Are Subject To Unique Defenses.

Rule 23(a) also requires that Plaintiffs establish that their claims are typical of those of the proposed class. Plaintiffs suffer from three typicality problems.

*First*, in "cases involving a variety of products, courts, emphasizing that different products have different functions and different consumers, have held that a named plaintiff that purchased a different product than that purchased by unnamed plaintiffs fails to satisfy" typicality. *Wiener v. Dannon Co.*, 255 F.R.D. 658, 665-66 (C.D. Cal. 2009) (denying certification and collecting cases). Except for Goldwasser, Plaintiffs exclusively purchased roller shades. Goldwasser purchased roman shades and tailored drapes. No Plaintiff purchased any other type of shade, blind, or drapery. As described *supra* at Section IV(A)(1), Restoration Hardware offered these very products for sale at or above TSS's strikethrough price, mandating product-specific inquiries of core elements of the class's claims, for which Plaintiffs' claims are not typical. Further, the prices customers paid for each product varies "considerably," based on type of product, size, materials chosen, and when the product was purchased. Strombom Rep. ¶¶ 115-22, Figs. 6-8. Each of these products will result in different supply-side dynamics and demand elasticities. *Id.* ¶ 96.

*Second*, where a class is likely to have members with materially varying interactions with

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

30

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

the defendant, such variation defeats typicality. *Berger v. Home Depot USA Inc. ("Berger I")*, 2011 WL 13224881, at *6 (C.D. Cal. Mar. 18, 2011) (denying certification and finding that "differences in the [class members'] individual experiences," such as exposure to different representations, precluded a typicality finding); *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp., L.P.*, 247 F.R.D. 156, 178 (C.D. Cal. 2007) (denying certification where "the variability in circumstances and interests of the putative class members invalidates the inference of typicality"). The *Allied Orthopedic* court found "even as between the seven named Plaintiffs there is sufficient heterogeneity to indicate that proof that one Plaintiff was overcharged is not probative of whether other class members were overcharged." 247 F.R.D. at 178; *see also Sanchez v. WalMart Stores, Inc.*, 2009 WL 1514435, at *3 (E.D. Cal. May 28, 2009) (denying certification where "[t]here are innumerable variations in the experiences and information possessed by consumers, in the factors that influence consumers' purchasing decisions, and in the manner by which consumers react to [defendant's representations] . . . . As a result, there is no typical claim or experience, certainly not Plaintiff's experience, that can be extrapolated classwide").

The same is true here. Each Plaintiff's experience with TSS was individualized: whether it be the number and types of contacts they had with TSS marketing and its personnel, the number and features of product(s) they purchased, the discount they received, or the value of their purchase. *See supra* Section II.D. These are not mere "differing factual scenarios resulting in a claim of the same nature," but are variations that go straight to whether Plaintiffs were actually deceived or harmed by TSS's discounts, such that their claims are not probative of other class members' with different experiences. *See Ellis*, 657 F.3d at 985 n.9.

***Third***, where "a putative class representative is subject to unique defenses which threaten to become the focus of the litigation," certification "is inappropriate." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (affirming denial of motion for class certification). Here, the putative class representatives are subject to unique defenses. Plaintiffs allege that reasonable consumers would expect that the strikethrough price represented the "regular price and/or market value" of the product. TAC ¶¶ 50-52. But Plaintiffs Crowder, Lumian, Smith, and Goldwasser admitted that, at the time of their TSS purchase, they did not understand strikethrough prices to

necessarily represent the market value. *See supra* Section IV.A(1).

Additionally, "[u]nder California law, where a plaintiff obtains value from the product, the proper measure of restitution is [t]he difference between what the plaintiff paid and the value of what the plaintiff received." *See Chowning*, 733 F. App'x at 405-06. But Crowder admitted that her shades are worth the price she paid, so there is no difference between what she paid and the value she received. Crowder Dep. 56:23-57:3. And although the class seeks a full refund, Plaintiffs acknowledge receiving value from their products. *See supra* Section II.D.

### E. The Trade Subclass Cannot Be Certified

Plaintiffs also request a subclass specific to customers who received a trade discount from TSS. Mot. at 5. The above individualized inquiries apply with equal force to the trade subclass, but that subclass suffers from two further deficiencies: (i) the only "trade" class representative, Smith, is an atypical trade customer; and (ii) there are individualized fact issues for trade customers that cannot be resolved on a classwide basis.

### 1. <u>Smith, The Only Plaintiff Who Used a Trade Discount, Is Not Typical of Other Trade Customers.</u>

"[A] named plaintiff is not typical where evidence needed to prove his claims is not probative of other class members' claims." *Berger I*, 2011 WL 13224881, at *6. Here, the experience of the only "trade" customer, Plaintiff Smith, is not probative of other trade class members.

TSS's trade customers are typically interior designers who actively work with their clients to customize and buy window treatments for their clients' homes. Simonson Rep. ¶ 86; Mendoza Decl. ¶¶ 12-19. Often, trade members customers are paid "cost, plus" by their end clients, which means that the interior designer pays TSS for the purchase, and the customer pays the interior designer's cost, as well as a percent commission on the total amount the designer spent on the purchase. Mendoza Decl. ¶ 15. As a result, the trade discount has a different import for typical trade customers than it does for a direct customer (like Smith) who bears the ultimate cost of the product. *See id.*; *see* Ex. 57 (TSS0037176) (email noting that "[s]ome designers choose to pay directly and bill their clients the retail price, while others pass the discount along to the client").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

32

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

Moreover, trade customers often shop with TSS repeatedly and on behalf of different clients.  *See* Spatz Decl. ¶ 19; Simonson Rep. ¶ 83.

Smith is not an interior designer; he is a real estate agent who has never purchased window treatments for any of his clients.  Smith Dep. 22:11-15.  He is thus atypical of the majority of members of the sophisticated class of trade members he seeks to represent.  Smith's inexperience and personal purchase creates "sufficient heterogeneity" between himself and his proposed class such that he does not satisfy Rule 23(a)'s typicality requirement.  *Allied Orthopedic*, 247 F.R.D. at 178; *see also Sanchez*, 2009 WL 1514435, at *3 (named plaintiff's experience was not typical when it could not be "extrapolated classwide").

### 2.      **Plaintiffs' Trade Subclass Poses More Individualized Issues.**

Adjudicating the claims of the proposed trade subclass would require still more individualized inquiries that would even further predominate over any common questions.

*First*, there is no evidence to suggest that trade customers, who readily know that TSS's trade customers *always* receive 25–30% discounts (with no expiration), would find material the frequency at which TSS offers non-trade customers 15–20% discounts.  Certification must be analyzed from the viewpoint of a trade customer:

> Where the advertising or practice is targeted to a particular group or type of consumers, either more sophisticated or less sophisticated than the ordinary consumer, the question of whether it is misleading to the public will be viewed from the vantage point of members of the targeted group, not others to whom it is not primarily directed.

*Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 512 (N.D. Cal. 2003);  *see also* ECF No. 89 at 6-7 ("[I]f Smith would like to base his FAL, CLRA, and UCL claims on his allegation that he was deceived by the 30% trade discount, in addition to the reference price, he must establish that *reasonable tradespeople* would also likely be deceived[.]").

As Dr. Simonson explains, trade discounts are common, and trade members understand that the very point of a trade discount is that they are available on every purchase to any trade customer.  Simonson Rep. ¶¶ 58, 86. Moreover, trade clients are more likely to be repeat clients who are familiar with TSS's pricing practices.  *See id*. ¶ 83.  To the extent the presence of customer

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

33

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

discounts would matter at all to trade customers—they were aware of those discounts. Smith even admitted that he was aware at the time he received his trade discount that non-trade customers were also being offered a discount. Smith Dep. 173:15-174:25 (admitting that, when he received his trade discount, he understood that TSS was also offering a 20% off discount to non-trade customers). Any determination of whether trade customers were likely deceived would require individualized inquiries as to whether and to what extent members of the trade subclass were aware of TSS's frequent discounts for retail customers. Simonson Rep. ¶¶ 59-60, 85.

*Second*, whether the trade discount was material to a trade customer necessitates an individualized inquiry. Trade customers receive benefits beyond the trade discount—such as dedicated account support and TSS's expertise—which may lead a trade customer to work with TSS over a competitor. Further, Silverman himself said that TSS's side-wide sales would have been "immaterial" to trade customers, that it is possible they understood the frequency of TSS sales, and that he has no opinion regarding whether they would have. *See* Silverman Dep. 153:20-154:15. Silverman's admissions show that materiality for trade customers necessitates an individualized factual inquiry that cannot be resolved on a classwide basis.

*Third*, with respect to the CLRA claim individualized inquiries would be needed to determine whether trade subclass members purchased their products for business purposes. *See supra* Section IV.A.3. The proposed trade subclass includes any customer who purchased products using a trade discount, regardless of whether they purchased those products for (i) business use (*e.g.*, a home builder who used their trade discounts to purchase products for end customers in connection with their business), or (ii) personal use (*e.g.*, customers like Smith, who used their trade discount to buy shades for their own home, or non-trade customers who were referred by an interior designer and placed an order using the interior designer's trade discount). *See* Mendoza Decl. ¶ 16; Ex. 65 (Smith Am. Resp. to Rog. No. 6). Consequently, individualized inquiries would predominate for the proposed trade subclass, and certification of that subclass should be denied.

*Finally*, Plaintiffs offer no viable damages theory applicable to the trade subclass. Weir does not attempt to screen for trade customers in his conjoint survey or otherwise distinguish between the two classes for any of his proposed damages methodologies. Instead, he assumes that

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

34

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

the same price premium would apply, that trade and non-trade customers understand the discounting practices in the same way, and that both trade and non-trade customers received the same value from their products. Strombom Rep. ¶ 16. Additionally, a full refund theory could not be used for the trade customers whose clients possess the shades. Without any viable damages model behind it, Plaintiffs' trade sub-class cannot be certified.

And for all the reasons that the trade subclass cannot be certified, nor can Plaintiffs' broader class, as it includes trade customers.

**F.      Plaintiffs' Resale Exclusion Is Not Workable.**

Courts "consider administrative feasibility and class identification issues at class certification as part of its Rule 23 analysis." *Norton v. LVNV Funding, LLC*, 2020 WL 5910077, at *5 (N.D. Cal. Oct. 6, 2020); *see also Hilario v. Allstate Ins. Co.*, 642 F. Supp. 3d 1048, 1063 n.5 (N.D. Cal. 2022) (addressing "ascertainability" concerning "likely difficulties in managing a class action" as "part of the Rule 23(b)(3) analysis"). Here, Plaintiffs' proposed classes seek to exclude individuals "who purchased the [] products in question for resale." Mot. at 5. But there is no feasible way to identify such individuals. *See* Mendoza Decl. ¶¶ 20-21; Dominick Decl. ¶¶ 13-14. On reply, Plaintiffs might point to the existence of resale tax certificates, which are used by certain trade clients to pass on the tax to their clients when they resell a product. *Id.* But there is no way to identify the many other trade customers who bought products for resale, as not all trade clients provide TSS with tax resale certificates. *Id.*

**G.      Rule 23(b)(2) – Injunctive Relief**

Plaintiffs also seek to certify an "injunctive class" under Rule 23(b)(2). Although Rule 23(b)(2) certification does not require predominance, it does require Plaintiffs to meet Rule 23(a)'s commonality and typicality requirements. *Handloser*, 2021 WL 879802, at *10 (denying 23(b)(2) class where plaintiffs failed to establish commonality or typicality). Because Plaintiffs have failed to satisfy commonality or typicality, the Court should deny certification of the proposed injunctive relief class as well. *See supra* Sections IV.C-D.

**V.      CONCLUSION**

For the foregoing reasons, TSS respectfully requests that Plaintiffs' Motion be denied.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

35

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC

Dated: April 28, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

By */s/ Kevin Jakopchek*

Steven N. Feldman (Bar No. 281405)
 *steve.feldman@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone: +1.213.485.1234

Johanna Spellman (*pro hac vice*)
 *johanna.spellman@lw.com*
330 N. Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: +1.312.777.7039

Kevin Jakopchek (*pro hac vice*)
 *kevin.jakopchek@lw.com*
330 N. Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: +1.312.876.770

Shlomo Fellig (*pro hac vice*)
 *shlomo.fellig@lw.com*
200 Clarendon Street
Boston, MA 02116
Telephone: +1.617.948.6000

*Attorneys for Defendant*
*The Shade Store, LLC*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

36

THE SHADE STORE'S OPPOSITION TO PLTFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 5:23-cv-02331-NC